**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| SAMIR HADEED, MD and | : No.: 3:15-cv-00022-KRG |
| JOHNSTOWN HEART AND | : |
| VASCULAR CENTER, INC., | : |
| | : |
| Plaintiffs, | : |
| | : |
| v. | : |
| | : |
| ADVANCED VASCULAR | : |
| RESOURCES OF JOHNSTOWN, LLC; | : |
| AVR MANAGEMENT, LLC; | : |
| WASHINGTON VASCULAR | : |
| INSTITUTE, LLC; and MUBASHAR | : |
| CHOUDRY, MD, | : |
| | : |
| Defendants. | : |

### PLAINTIFFS' RESPONSE TO DEFENDANTS' STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON PLAINTIFFS' COMPLAINT

NOW COME, the Plaintiffs, Samir Hadeed, M.D. and Johnstown Heart and Vascular Center, Inc., by and through their Counsel, Spence, Custer, Saylor, Wolfe & Rose, LLC, and file this Response to Defendants' Statement of Undisputed Material Facts in Support of Defendants' Motion for Summary Judgment on Plaintiffs' Complaint:[1]

---

[1] All evidence cited within this Response to Defendants' Statement of Undisputed Material Facts in Support of Defendants' Motion for Summary Judgment on Plaintiffs' Complaint is contained within Plaintiffs' Supplemental Appendix of Documents ("Supplemental Appendix").

## PLAINTIFFS' RESPONSE TO DEFENDANTS'
## UNDISPUTED MATERIAL FACTS

1.      Admitted.

2.      Admitted.

3.      Disputed.  It is disputed that Advanced Vascular Resources of Johnstown, LLC (hereinafter, "AVR-Johnstown") is a "proprietary and confidential business model." On the contrary, AVR-Johnstown does not have a proprietary and confidential business model.  Defendant Mubashar Choudry, M.D. (hereinafter, "Dr. Choudry"), was unable to articulate anything that differentiates AVR-Johnstown's business from other office based vascular labs.[2]  By way of further response, Defendants' approach to business was not unique, AVR-Johnstown did not own any intellectual property, patents, trademarks, or trade secrets,[3] [4] [5] and there was nothing novel about AVR-Johnstown's approach to business.  Both the Chief Executive Officer and Chief Operating Officer had previously worked for companies with the same business model/approach.[6] [7]  It is further disputed that Dr. Choudry developed innovative techniques to treat peripheral artery disease in an outpatient setting.  On the contrary physicians across the United States, including Plaintiff Samir Hadeed, M.D. (hereinafter, "Dr. Hadeed"), have been utilizing these

---

[2] Deposition of Mubashar Choudry, M.D., excerpts of which are attached to the Supplemental Appendix as **Exhibit 1**, at pp. 15-19.

[3] Deposition of Barbara O'Dare, excerpts of which are attached to the Supplemental Appendix as **Exhibit 2**, at p. 19, lines 9-24.

[4] Deposition of Donald Geer, excerpts of which are attached to the Supplemental Appendix as **Exhibit 3**, at p. 42, lines 14-19.

[5] Choudry Depo., Exhibit 1, at p. 15, lines 3-11.

[6] O'Dare Depo., Exhibit 2, at p. 20, lines 1-24, p. 21, lines 1-18.

[7] Geer Depo., Exhibit 3, at p. 42, lines 14-19.

techniques for numerous years in outpatient settings,[8] and Defendants did not train Dr. Hadeed as to any "innovative techniques." In fact, there was "no education required for Dr. Hadeed."[9]

4.      Disputed. It is disputed that Dr. Choudry developed any techniques for the treatment of peripheral artery disease. On the contrary, physicians across the United States, including Dr. Hadeed, have been utilizing these techniques for numerous years in outpatient settings.[10]

5.      Admitted in part, Disputed in part. It is admitted that Advanced Vascular Resources, LLC was formed to develop vascular facilities on a national level. It is disputed that Dr. Choudry developed or tested any innovative techniques in regard to vascular procedures.

6.      Admitted. By way of further response, AVR-Johnstown was a successful vascular center due to Dr. Hadeed's performance as a physician.[11]

7.      Disputed. It is disputed that AVR-Johnstown's "great success" was the cause of AVR-Johnstown's "unexpected short-term cash flow issues." On the contrary, AVR-Johnstown's cash flow issues were directly related to Defendants' failure to properly fund AVR-Johnstown as they were contractually obligated to do under the various agreements.[12] [13] By way of further response, AVR-Johnstown's cash flow

---

[8] Deposition of Samir Hadeed, M.D., excerpts of which are attached to the Supplemental Appendix as **Exhibit 4**, at p. 30, lines 7-25.

[9] Geer Depo., Exhibit 3, at p. 63, lines 21-25, p. 64, lines 1-4.

[10] Hadeed Depo., Exhibit 4, at p. 30, lines 7-25.

[11] Geer Depo., Exhibit 3, at p. 47, lines 11-20.

[12] O'Dare Depo., Exhibit 2, at p. 105, lines 9-21, p. 108, lines 8-16, p. 111, lines 4-12, p. 112, lines 7-11.

[13] Geer Depo., Exhibit 3, p. 14, lines 9-14.

issues were directly related to Defendants' intentional acts of moving, or "loaning", funds from AVR-Johnstown to other entities owned and operated by Defendants.[14][15]

8.    Disputed.   It is disputed that Plaintiffs severed ties with Defendants in December 2014.   On the contrary, Plaintiffs terminated the Physician Agreement pursuant to Paragraph 8.2 of the agreement by providing Defendants with the requisite ninety (90) day notice.[16][17][18]   On or about November 21, 2014, Plaintiffs gave notice that the Sublease would be terminated effective December 1, 2014.[19]   In December 2014, Defendants terminated all employees of AVR-Johnstown, removed their supplies/inventory from the vascular lab, abandoned the premises, and ceased doing business.[20]   Although Plaintiffs changed the locks at the facility, this was due to Defendants' misconduct.   Plaintiffs at all times allowed Defendants to access the Premises during normal business hours.[21]

9.    Disputed.   It is disputed that Plaintiffs have absorbed the vascular center into Plaintiff Johnstown Heart and Vascular Center, Inc. (hereinafter, "JHVC"), taking a premade vascular center for themselves.   On the contrary, everything in the vascular lab was packaged and stored for Defendants.   Defendants and/or their creditors

---

[14] O'Dare Depo., Exhibit 2, at p. 60, lines 13-22.

[15] Geer Depo., Exhibit 3, at p. 13, lines 18-21, p. 14, lines 15-25, p. 15, lines 10-14.

[16] O'Dare Depo., Exhibit 2, at p. 47, lines 12-15.

[17] Choudry Depo., Exhibit 1, at p. 65, lines 5-24.

[18] November 3, 2014 Notice of Termination, attached to the Supplemental Appendix as **Exhibit 5**.

[19] November 21, 2014 Termination of Sublease, attached to the Supplemental Appendix as **Exhibit 6**.

[20] Hadeed Depo., Exhibit 4, at p. 63, lines 5-25, p. 64, lines 1-23.

[21] Hadeed Depo., Exhibit 4, at pp. 67-68.

repossessed the complete contents of the vascular lab. The only thing that was not taken by Defendants from the physical location was the "drywalls and the switches."[22]

10.     Disputed.    It is disputed that Plaintiffs revenues were at the expense of Defendants.   On the contrary, Plaintiffs leased a C-Arm after Defendants' C-Arm was repossessed,[23] renegotiated contracts with suppliers of medical equipment and supplies,[24] [25] and hired a staff to support their medical center.  Plaintiffs did not utilize any of Defendants' equipment or supplies after Defendants terminated the relationship.[26]

11.     Disputed.    It is disputed that Dr. Hadeed is "utilizing what he learned at AVR-Johnstown" to create a larger, competing vascular center in Richland Township. On the contrary, Dr. Hadeed was trained in vascular intervention and performed these procedures in an out-patient setting long before any interactions with Defendants.[27]  By way of further response, Dr. Hadeed is not creating a "competing" vascular center because Defendants are not competing in the marketplace.

12.     Admitted.

13.     Admitted.

14.     Admitted.

15.     Admitted.

16.     Admitted.

---

[22] Hadeed Depo., Exhibit 4, at p. 62, lines 1-23.

[23] Hadeed Depo., Exhibit 4, at p. 63, lines 20-25, p. 64, lines 1-10.

[24] Deposition of Christy Weir, excerpts of which are attached to the Supplemental Appendix as **Exhibit 7**, at p. 37, lines 2-19.

[25] Hadeed Depo., Exhibit 4, at p. 66, lines 16-17.

[26] Hadeed Depo., Exhibit 4, at p. 66, lines 18-25, p. 67, lines 1-3.

[27] Hadeed Depo., Exhibit 4, at p. 6, p. 10, lines 18-25, p. 11, lines 1-2, p. 30, lines 3-19, p. 84, lines 14-20.

17.	Admitted.

18.	Admitted, as qualified. By way of further response, Plaintiffs total capital commitment was $660,000.00.[28]	Plaintiffs invested $36,000.00 as their initial capital investment.

19.	Admitted.

20.	Admitted.

21.	Admitted.	By way of further response, AVR-Management was contractually obligated to, among other things:

a.	Oversee the employment or engagement of all Support Personnel.[29]

b.	Oversee the hiring, supervising, awarding of bonuses, salary adjustments, and/or other matters affecting the terms and conditions of the employment or engagement of Support Personnel.[30]

c.	Provide payroll accounting services and maintain employee records, worker's compensation insurance, unemployment insurance, and employee benefit programs for Support Personnel.[31]

d.	Administer the payment of compensation of the Physicians and/or other Licensed Health Professionals, including providing payroll and accounting services from AVR-Johnstown's funds.[32]

e.	Furnish, supply, dispose and/or replace supplies and equipment, including office supplies, medical supplies, and medical equipment.[33]

f.	Be responsible for leasing and maintaining a Practice Site.[34]

g.	Providing all billing and collection services on behalf of AVR-Johnstown, including preparing patient invoices, input billing

---

[28] Subscription Agreement, attached to the Supplemental Appendix as **Exhibit 8**.

[29] Management Agreement, attached to the Supplemental Appendix as **Exhibit 9**, at p. 2.

[30] Management Agreement, Exhibit 9, at p. 2.

[31] Management Agreement, Exhibit 9, at pp. 2-3.

[32] Management Agreement, Exhibit 9, at p. 3.

[33] Management Agreement, Exhibit 9, at p. 3.

[34] Management Agreement, Exhibit 9, at p. 3.

information, submit bills and claims to patients and third party payors, and diligently pursue collection of unpaid bills for up to 180 days from initial billing.[35]

h. Deposit all payments received through billing into the Operational Account.[36]

24. Admitted.[37]

25. Admitted.

26. Admitted.

27. Admitted. It is admitted that this literal language is contained within the Operating Agreement.

28. Admitted. It is admitted that this literal language is contained within the Operating Agreement.

29. Admitted. It is admitted that this literal language is contained within the Operating Agreement.

30. Admitted.

31. Admitted. It is admitted that this literal language is contained within the Operating Agreement.

32. Admitted. By way of further response, Washington Vascular agreed to provide compensation to Plaintiffs in the amount of $450,000.00 per year. Furthermore, Plaintiffs had the right to terminate the Physician Agreement upon ninety (90) days written notice.

---

[35] Management Agreement, Exhibit 9, at p. 4.

[36] Management Agreement, Exhibit 9, at p. 4.

[37] Defendants' Concise Statement of Facts is errantly numbered. Defendants' Concise Statement of Facts skips from Paragraph 21 to Paragraph 24. Plaintiffs' Response corresponds directly with the errantly numbered paragraphs contained in Defendants' Concise Statement of Facts.

33.    Disputed.  It is disputed that Dr. Hadeed and JHVC ceased operations in November 2014.  On the contrary, Plaintiffs were unable to provide medical services around Thanksgiving of 2014 because they "ran out of essential equipment[]."[38]  By way of further response, around or about December 2014, Defendants terminated all employees of AVR-Johnstown, and ceased doing business.  Defendants removed their supplies and/or inventory from the vascular lab and abandoned the Premises.[39]

34.    Admitted, as qualified.  It is admitted that JHVC was paid up until November 28, 2014.  By way of further response, Plaintiffs gave the requisite ninety (90) day notice of termination of the Physician Agreement on November 3, 2014. Accordingly, Defendants were required to compensate Plaintiffs through at least February 3, 2015.[40] [41] [42]  However, Defendants did not compensate Plaintiffs after November 28, 2014.

35.    Disputed.  It is disputed that Dr. Hadeed resigned as a performing physician under the Physician Agreement as of November 21, 2014.  On the contrary, Dr. Hadeed gave the requisite ninety (90) day notice of termination on November 3, 2014.[43] [44] [45]  By way of further response, around or about December 2014, Defendants terminated all employees of AVR-Johnstown and ceased doing business.  Defendants

---

[38] Hadeed Depo., Exhibit 4, at p. 51, lines 7-10.

[39] Hadeed Depo., Exhibit 4, at p. 63, lines 5-25, p. 64, lines 1-23.

[40] O'Dare Depo., Exhibit 2, at p. 47, lines 12-15.

[41] Choudry Depo., Exhibit 1, at p. 65, lines 5-24.

[42] November 3, 2014 Notice of Termination, Exhibit 5.

[43] O'Dare Depo., Exhibit 2, at p. 47, lines 12-15.

[44] Choudry Depo., Exhibit 1, at p. 65, lines 5-24.

[45] November 3, 2014 Notice of Termination, Exhibit 5.

removed their supplies and/or inventory from the vascular lab and abandoned the Premises.[46]

36. Admitted. By way of further response, Plaintiffs' expert report was filed on July 8, 2016.

37. Admitted, as qualified. Plaintiffs' expert: (1) conducted a review and analysis of AVR-Johnstown's accounting records and system, bank records, and related documentation for the period July 24, 2013 through December 31, 2014; (2) conducted a review of Federal tax returns filed by AVR-Johnstown for the years ending December 31, 2013 and 2014; (3) reviewed AVR-Johnstown's records of total and realized charges for procedures provided for the calendar year ending December 31, 2014; and (4) conducted a review for the existence of fraudulent activity.[47]

38. Admitted.

39. Admitted.

40. Admitted.

41. Disputed, as stated. It is disputed that Plaintiffs' expert "was unable to provide any evidence of fraudulent activity." On the contrary, Plaintiffs' expert opined that it was impossible "to come to any conclusion as to the existence of fraudulent activity given the lack of documentation and support of the journal entries that comprise the records of AVR-Johnstown."[48] By way of further response, Plaintiffs' expert opined

---

[46] Hadeed Depo., Exhibit 4, at p. 63, lines 5-25, p. 64, lines 1-23.

[47] July 6, 2016 Expert Report of the Catanese Group, attached to the Supplemental Appendix as **Exhibit 10**, at p. 1.

[48] Expert Report, Exhibit 10, at p. 5.

that AVR-Johnstown did not utilize traditional methods of accounting and did not provide

sufficient documentation to verify the validity of the numerous journal entries.[49]

Respectfully submitted,

SPENCE, CUSTER, SAYLOR, WOLFE & ROSE, LLC

/s/ Ronald P. Carnevali, Jr.
Ronald P. Carnevali, Jr., Esquire
I.D. No. 47733
rcarnevali@spencecuster.com
Toby D. McIlwain, Esquire
I.D. No. 316074
tmcilwain@spencecuster.com
*Attorneys for Plaintiffs*

1067 Menoher Boulevard
Johnstown, Pennsylvania 15905
(814) 536-0735 (telephone)
(814) 539-1423 (facsimile)

---

[49] Expert Report, Exhibit 10, at p. 5.

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on the 7th day of November, 2016, a certified true and correct copy of the foregoing Plaintiffs' Response to Defendants' Concise Statement of Undisputed Material Facts in Support of Defendants' Motion for Summary Judgment on Plaintiffs' Complaint was forwarded via ECF filing to the following persons:

George M. Medved, Esquire
Jayme L. Butcher, Esquire
Julia M. Tedjeske, Esquire
Blank Rome, LLP
501 Grant Street, Suite 850
Pittsburgh, Pennsylvania 15219

SPENCE, CUSTER, SAYLOR, WOLFE & ROSE, LLC

/s/ Ronald P. Carnevali, Jr.
Ronald P. Carnevali, Jr., Esquire
I.D. No. 47733
rcarnevali@spencecuster.com
Toby D. McIlwain, Esquire
I.D. No. 316074
tmcilwain@spencecuster.com
*Attorneys for Plaintiffs*

1067 Menoher Boulevard
Johnstown, Pennsylvania 15905
(814) 536-0735 (telephone)
(814) 539-1423 (facsimile)