IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SAMIR HADEED, MD and<br>JOHNSTOWN HEART AND<br>VASCULAR CENTER, INC., | : No.: 3:15-cv-00022-KRG<br>:<br>: |
| Plaintiffs, | : |
| v. | : |
| ADVANCED VASCULAR<br>RESOURCES OF JOHNSTOWN, LLC;<br>AVR MANAGEMENT, LLC;<br>WASHINGTON VASCULAR<br>INSTITUTE, LLC; and MUBASHAR<br>CHOUDRY, MD, | :<br>:<br>:<br>:<br>: |
| Defendants. | : |

**PLAINTIFFS' RESPONSE TO DEFENDANTS' ADDITIONAL FACTS
IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT**

NOW COME, the Plaintiffs, Samir Hadeed, M.D. and Johnstown Heart and Vascular Center, Inc., by and through their Counsel, Spence, Custer, Saylor, Wolfe & Rose, LLC, and file this Response to Defendants' Additional Facts in Support of Defendants' Opposition to Plaintiffs' Motion for Summary Judgment:

**Response to Additional Facts in Support of Defendants' Opposition to
Plaintiffs' Motion for Summary Judgment**

121. Admitted in part, Denied in part. It is admitted that Dr. Choudry is not a member or officer of AVR-Johnstown. It is further admitted that Dr. Choudry is the Chief Medical Officer of Advanced Vascular Resources, LLC. It is denied that Dr. Choudry is

not involved in the day-to-day operations of AVR-Management. Dr. Choudry's self-serving testimony does not establish an undisputed, material fact. By way of further response, Dr. Choudry is an owner of AVR-Management.[1]

    122.    Admitted.

    123.    Admitted.

    124.    Denied. It is denied that Dr. Choudry's testimony reflects that "AVR's" educational, outreach, and training efforts are unique features of the "AVR" model. On the contrary, the referenced testimony of Dr. Choudry describes nothing more than a common doctor's referral outreach, which is standard in the business.[2] It is further denied that Ms. O'Dare testified that the marketing approach was novel. On the contrary, Ms. O'Dare merely testified that Defendants had taken a "different approach" to marketing.[3] By way of further response, Defendants' business was in no way proprietary, and they did not own any intellectual property, patents, trademarks, or trade secrets.[4,5,6]

    125.    Admitted, as qualified. It is admitted that Ms. Gosnear testified that she did not know if there were occasions when payments were made promptly after she approached Javed Choudry about payment on accounts with credit holds. However,

---

[1] Deposition of Mubashar Choudry, M.D., excerpts of which are attached hereto as **Exhibit 1**, at p. 31, lines 22-25, p. 32, lines 1-6.

[2] Choudry Depo., Exhibit 1, at pp. 15-19.

[3] Deposition of Barbara O'Dare, excerpts of which are attached hereto as **Exhibit 2**, at p. 22, lines 3-7.

[4] O'Dare Depo., Exhibit 2, at p. 19, lines 9-24.

[5] Deposition of Donald Geer, excerpts of which are attached hereto as **Exhibit 3**, at p. 42, lines 14-19.

[6] Choudry Depo., Exhibit 1, at p. 15, lines 3-11.

the record evidence establishes that payments were not made promptly, and many accounts are still in default.[7] [8] [9]

126.  It is admitted that Ms. O'Dare testified as stated.  By way of further response, Dr. Hadeed testified that Johnstown Construction is still owed a significant balance related to the build out.[10]

127.  Admitted, as qualified.  Dr. Hadeed testified that he believed Green Earth was paid, but he did not know whether Green Earth was paid in full.[11]  Ms. O'Dare testified that she was "uncertain" of whether Green Earth was paid.[12]

128.  Admitted in part, Denied in part.  It is admitted that there were issues with the payment for AVR-Johnstown employees' health care coverage.  It is denied that Ms. O'Dare testified that those problems were resolved and coverage was reinstated.  On the contrary, Ms. O'Dare merely testified that she was told by a third-party that the health coverage was reinstated.  By way of further response, the employees' health care coverage was terminated on or about October 17, 2014, with an effective termination date of August 31, 2014.[13]

129.  Admitted, as qualified.  Although Christy Weir did not recall turning patients away because of lack of supplies, Ms. Weir testified that they were limiting the

---

[7] Geer Depo., Exhibit 3, at p. 18, lines 15-22.

[8] Deposition of Adrienne Gosnear, excerpts of which are attached hereto as **Exhibit 4**, at p. 33, lines 1-11, p. 36, lines 21-24, p. 37, lines 1-6, 14-24, p. 38, lines 1-23, p. 39, lines 1-23, p. 41, lines 18-24, p. 42, lines 1-17, p. 44, lines 8-19, p. 49, lines 6-21.

[9] O'Dare Depo., Exhibit 2, at p. 72, lines 11-21.

[10] Deposition of Samir Hadeed, M.D., excerpts of which are attached hereto as **Exhibit 5**, at p. 49, lines 9-25.

[11] Hadeed Depo., Exhibit 5, at p. 48, lines 14-21.

[12] O'Dare Depo., Exhibit 2, at p. 71, lines 22-24, p. 72, line 1.

[13] Letter from UPMC Health Plan, October 17, 2014, attached hereto as **Exhibit 6**.

number of cases per day due to the lack of medical supplies.[14] By way of further response, Mr. Geer testified that he was aware of multiple occasions that AVR-Johnstown had to cancel patients because they did not have essential medical supplies.[15]

130.   Denied.  The financial documents provided by Defendants in discovery are documents which speak for themselves, and any characterization of those documents is specifically denied.  By way of further response, to the extent the documents indicate a bad debt insurance write off of $287,247.05 in July 2014, AVR-Management was contractually obligated to obtain approval and/or credentialing from UPMC[16] and to diligently pursue collection of unpaid bills for up to 180 days from the initial billing.[17]

131.   Admitted.  By way of further response, the funding had been pulled back or failed to materialize as a result of a report from the Office of Inspector General regarding Dr. Choudry's participation in a Medicare overbilling scheme.[18]  Dr. Choudry's failure to report a probation violation also played a role in the funding being pulled back.[19]

132.   Admitted, as qualified.  It is admitted that Ms. O'Dare testified that billing errors contributed, in part, to cash flow issues.  However, Ms. O'Dare further testified

---

[14] Deposition of Christy Weir, excerpts of which are attached hereto as **Exhibit 7**, at p. 36, lines 1-8.

[15] Geer Depo., Exhibit 3, at p. 18, lines 23-25, p. 19, lines 1-8.

[16] O'Dare Depo., Exhibit 2, at p. 27, lines 14-24.

[17] Advanced Vascular Resources of Johnstown, LLC National Management Services Agreement, attached hereto as **Exhibit 8**, at p. 4.

[18] O'Dare Depo., Exhibit 2, at p. 57, lines 9-20.

[19] O'Dare Depo., Exhibit 2, at p. 57, lines 17-20.

that these errors were rectified and that AVR-Johnstown's lack of initial funding was the main cause of the cash flow issues.[20]

133. Admitted. By way of further response, AVR-Management was contractually obligated to obtain approval and/or credentialing from UPMC[21] and to diligently pursue collection of unpaid bills for up to 180 days from the initial billing.[22]

134. Admitted, as qualified. It is admitted that loans were made from AVR-Johnstown to other entities. It is further admitted that Mr. Gerardi testified that other entities loaned money to back AVR-Johnstown. However, AVR-Trenton and AVR-Jacksonville never loaned money back to AVR-Johnstown, even though AVR-Johnstown loaned money to AVR-Trenton and AVR-Jacksonville.[23] By way of further response, these "loans" from AVR-Johnstown to other entities contributed to AVR-Johnstown's cash flow issues.[24] [25] Furthermore, any such loans were made by Defendants without approval of or notice to Plaintiffs and such loans were not documented in any way other than undocumented journal entries on the general ledger.[26] [27]

135. Denied, as stated. It is denied that Plaintiffs' expert "was unable to provide any evidence of fraudulent activity." On the contrary, Plaintiffs' expert opined that it was impossible "to come to any conclusion as to the existence of fraudulent

---

[20] O'Dare Depo., Exhibit 2, at pp. 102-107.

[21] O'Dare Depo., Exhibit 2, at p. 27, lines 14-24.

[22] Management Agreement, Exhibit 8, at p. 4.

[23] Deposition of Joseph Gerardi, excerpts of which are attached hereto as **Exhibit 9**, at pp. 30-33.

[24] O'Dare Depo., Exhibit 2, at p. 60, lines 13-22.

[25] Geer Depo., Exhibit 3, at p. 13, lines 18-21, p. 14, lines 15-25, p. 15, lines 10-14.

[26] Geer Depo., Exhibit 3, at p. 14, lines 15-22.

[27] July 6, 2016 Expert Report of the Catanese Group, attached hereto as **Exhibit 10**, at p. 5.

activity given the lack of documentation and support of the journal entries that comprise the records of AVR-Johnstown."[28] By way of further response, Plaintiffs' expert opined that AVR-Johnstown did not utilize traditional methods of accounting and did not provide sufficient documentation to verify the validity of the numerous journal entries.[29]

136. Admitted. By way of further response, pursuant to the terms of the Physician Agreement, Defendants were contractually obligated to pay Plaintiffs through at least February 3, 2015.

137. Admitted.

138. Admitted, as qualified. Although Dr. Hadeed testified that operations ceased at AVR-Johnstown in or around November 2014, this was because they "ran out of essential equipment[]."[30]

139. Admitted. By way of further response, although Plaintiffs changed the locks at the facility, this was due to Defendants' misconduct. Plaintiffs at all times allowed Defendants to access the Premises during normal business hours.[31]

140. Admitted. By way of further response, the November 3, 2014 correspondence served as Plaintiffs' ninety (90) day written notice of termination.[32]

141. Admitted. It is admitted that this is the literal language contained in the Sublease.

142. Admitted.

---

[28] Expert Report, Exhibit 10, at p. 5.

[29] Expert Report, Exhibit 10, at p. 5.

[30] Hadeed Depo., Exhibit 5, at p. 51, lines 7-10.

[31] Hadeed Depo., Exhibit 5, at pp. 67-68.

[32] November 3, 2014 Notice of Termination, attached hereto as **Exhibit 11**.

143. Admitted in part, Denied in part. It is admitted that Christy Weir sent the November 13, 2014 electronic mail. It is denied that Ms. Weir was reaching out about "breaking away" from AVR. This allegation is a legal conclusion, not an undisputed, material fact. By way of further response, Ms. Weir was an employee of AVR-Johnstown at the time she sent the November 2013 electronic mail message. Furthermore, Dr. Hadeed had no knowledge that Ms. Weir had sent the e-mail to Cardinal Health.[33] By way of further response, by November 2014, AVR-Johnstown was suffering from a critical shortage of necessary medical equipment and supplies, such that operations were ceased.[34]

144. Denied, as stated. It is denied that AVR-Management was "forced out." The allegation that AVR-Management was "forced out" is a legal conclusion, not an undisputed, material fact. Moreover, to the extent Defendants contend that "the vascular center" is AVR-Johnstown, it is denied that the "vascular center continued to function." On the contrary, any and all procedures performed after Defendants abandoned Johnstown have been performed under the auspices of JHVC, not AVR-Johnstown.

---

[33] Hadeed Depo., Exhibit 5, at p. 106, lines 1-5.

[34] Hadeed Depo., Exhibit 5, at p. 51, lines 7-10.

Respectfully submitted,

SPENCE, CUSTER, SAYLOR, WOLFE & ROSE, LLC


<u>/s/ Ronald P. Carnevali, Jr.</u>
Ronald P. Carnevali, Jr., Esquire
I.D. No. 47733
rcarnevali@spencecuster.com
Toby D. McIlwain, Esquire
I.D. No. 316074
tmcilwain@spencecuster.com
*Attorneys for Plaintiffs*

1067 Menoher Boulevard
Johnstown, Pennsylvania 15905
(814) 536-0735 (telephone)
(814) 539-1423 (facsimile)

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that on the 10th day of November, 2016, a certified true and correct copy of the foregoing Plaintiffs' Response to Defendants' Additional Facts in Support of Defendants' Opposition to Plaintiffs' Motion for Summary Judgment was forwarded via ECF filing to the following persons:

George M. Medved, Esquire
Jayme L. Butcher, Esquire
Julia M. Tedjeske, Esquire
Blank Rome, LLP
501 Grant Street, Suite 850
Pittsburgh, Pennsylvania 15219


SPENCE, CUSTER, SAYLOR, WOLFE & ROSE, LLC


/s/ Ronald P. Carnevali, Jr.
Ronald P. Carnevali, Jr., Esquire
I.D. No. 47733
rcarnevali@spencecuster.com
Toby D. McIlwain, Esquire
I.D. No. 316074
tmcilwain@spencecuster.com
*Attorneys for Plaintiffs*

1067 Menoher Boulevard
Johnstown, Pennsylvania 15905
(814) 536-0735 (telephone)
(814) 539-1423 (facsimile)