# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SAMIR HADEED, MD, and JOHNSTOWN HEART AND VASCULAR CENTER, INC., | Case No. 3:15-cv-22 |
| | JUDGE KIM R. GIBSON |
| Plaintiffs, | |
| v. | |
| ADVANCED VASCULAR RESOURCES OF JOHNSTOWN, LLC, AVR MANAGEMENT, LLC, WASHINGTON VASCULAR INSTITUTE, LLC, and MUBASHAR CHOUDRY, MD, | |
| Defendants. | |

## MEMORANDUM OPINION

Pending before the Court is Defendants' Motion for Preliminary Injunction (ECF No. 48). For the reasons that follow, Defendants' Motion is **DENIED**.

## I.      Background

This case stems from disputes over the operation of a vascular-services center located in Johnstown, Pennsylvania. Plaintiff Samir Hadeed is a licensed physician who owns and operates a cardiology practice in Johnstown: Johnstown Heart and Vascular Center, Inc. ("Johnstown Heart"). (ECF No. 1 ¶¶ 2-3.) In November 2013, Dr. Hadeed and Johnstown Heart partnered with Advanced Vascular Resources Management, LLC ("AVR Management") to open a new vascular-services center in Johnstown under the name Advanced Vascular Resources of Johnstown, LLC ("AVR Johnstown"). (ECF Nos. 1-6 at 2, 30-31; 1-7 at 1, 8.)

Incidental to AVR Johnstown's formation, Dr. Hadeed and Johnstown Heart executed several other agreements. A decision was made to locate AVR Johnstown's vascular-services

center in the same building as Johnstown Heart. Thus, Johnstown Heart and AVR Johnstown entered into a sublease for a portion of Johnstown Heart's building. (ECF No. 1-3 at 2, 11.) Dr. Hadeed and Johnstown Heart also entered into an employment agreement with a separate entity, Washington Vascular Institute, LLC ("Washington Vascular"). (*See* ECF No. 1-5 at 2, 17-18.) Washington Vascular in turn contracted with AVR Johnstown for the medical services at AVR Johnstown; in this way Dr. Hadeed and Johnstown Heart agreed to provide cardiology and vascular services at AVR Johnstown. (*Id.* at 2, 19.) Under AVR Johnstown's Operating Agreement, AVR Management was responsible for managing the business affairs of AVR Johnstown. (ECF No. 1-6 at 6, 12-13.) Stated simply, AVR Management handled the business side of AVR Johnstown while Dr. Hadeed and Johnstown Heart handled the medical side.

The relationships among the parties deteriorated after AVR Johnstown was formed. On January 23, 2015, Dr. Hadeed and Johnstown Heart filed this case against AVR Johnstown, AVR Management, Washington Vascular, and Dr. Mubashar Choudry—who partially owns or operates those entities. (ECF Nos. 1 ¶ 6; 7 ¶ 92.) Plaintiffs' allegations can be summarized as claims of chronic mismanagement of AVR Johnstown by Defendants. Plaintiffs state five counts as grounds for relief: (1) breach of contract based on Defendants' mismanagement of AVR Johnstown; (2) breach of contract based on Defendants' failure to pay Plaintiffs' wages; (3) fraudulent misrepresentation; (4) requesting an accounting; and (5) seeking dissolution/partition. (ECF No. 1 ¶¶ 44-64.) Plaintiffs seek compensatory damages, including lost wages and revenues, as well as attorneys' fees and costs. (*Id.* ¶ 64.)

In their Answer, Defendants deny all liability and state five counterclaims against Plaintiffs, namely (1) breach of contract based on the sublease and Plaintiffs' employment

agreement with Washington Vascular; (2) tortious interference with contractual relations; (3) conversion; (4) unjust enrichment; and (5) breach of fiduciary duty. (ECF No. 10 ¶¶ 114-36.)

Fact discovery closed on January 29, 2016. (ECF No. 28.) Plaintiffs and Defendants moved for summary judgment on October 17, 2016. (ECF Nos. 40, 44.) That same day, Defendants requested leave to amend their Answer to "add and clarify new allegations related to AVR of Johnstown LLC's Operating Agreement, and Plaintiffs' breach of that Operating Agreement." (ECF No. 47 ¶ 9.) And—most relevant for purposes of this Memorandum Opinion—Defendants also filed a Motion for Preliminary Injunction (ECF No. 48). Defendants request broad injunctive relief, but mainly seek to enjoin Plaintiffs "from managing Advanced Vascular Resources of Johnstown, LLC's vascular center in Johnstown, PA" and "from opening and operating a competing vascular center in the Johnstown area." (*See* ECF No. 49 at 2-3.) A hearing on Defendants' Motion for Preliminary Injunction was held on November 22, 2016.

## II.  Jurisdiction & Venue

The Court has diversity jurisdiction over this case pursuant to 28 U.S.C. § 1332(a)(1) because Plaintiffs are citizens of different states than Defendants and the amount in controversy exceeds $75,000. (ECF Nos. 1 ¶¶ 1-7, 55-56; 10 ¶¶ 1-6) Because a substantial part of the events underlying this case—namely, the alleged mismanagement of AVR Johnstown—occurred in the Western District of Pennsylvania, venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2).

## III.  Legal Standard

A preliminary injunction is "an extraordinary remedy," which courts may grant only "upon a clear showing that the [movant] is entitled to such relief." *Winter v. Nat. Res. Def.*

*Council, Inc.*, 555 U.S. 7, 22 (2008) (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)). A party "seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* at 20 (citing cases). The movant bears the burden of showing that these four elements weigh in favor of granting the injunction. *Ferring Pharms., Inc. v. Watson Pharms., Inc.*, 765 F.3d 205, 210 (3d Cir. 2014) (citing *Opticians Ass'n of America. v. Indep. Opticians of America*, 920 F.2d 187, 192 (3d Cir. 1990)). The failure to establish any of these four elements renders a preliminary injunction inappropriate. *Id.* (quoting *NutraSweet Co. v. Vit-Mar Enters., Inc.*, 176 F.3d 151, 153 (3d Cir. 1999)).

## IV. Threshold Issue – Choice of Law

Defendants' Motion for Preliminary Injunction relies on allegations that Plaintiffs violated AVR Johnstown's Operating Agreement.[1] The Operating Agreement contains a choice-of-law provision, which provides that

> [a]ll questions concerning the construction, validity and interpretation of this Agreement and the performance of the obligations imposed by this Agreement shall be governed by the internal law, not the law of conflicts, of the State of Delaware, with the exception of questions concerning the construction, validity or interpretation of the restriction against Member holding an ownership interest in a competing vascular center while also holding an ownership interest in the Company, as set forth in Section 2.3, which shall be governed by the internal laws of the State of Florida, without regard for conflicts of law principles or provisions.

---

[1] The Court notes that although Defendants have requested leave to amend their Answer to include counterclaims alleging violations of the Operating Agreement, Defendants' Answer does not currently include any such allegations.

(ECF No. 1-6 § 10.6.)  This case is a diversity action.  Although state law therefore governs the substantive issues, *see Erie R.R. v. Tompkins*, 304 U.S. 64 (1938), federal law governs the standard for a preliminary injunction, *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 799 (3d Cir. 1989).  So while federal law provides the preliminary-injunction standard, *Instant Air*, 882 F.2d at 797, Delaware and Florida law determine whether Defendants have satisfied that standard, *see, e.g.*, *Certainteed Ceilings Corp. v. Aiken*, No. 14-3925, 2014 WL 5461546, at *8-14 (E.D. Pa. Oct. 27, 2014) (applying state law to substantive issues in preliminary-injunction analysis); *Vector Sec., Inc. v. Stewart*, 88 F. Supp. 2d 395, 399 (E.D. Pa. 2000) (same).

## V.     Analysis

Defendants contend that Plaintiffs have breached the Operating Agreement by (1) preventing AVR Management from performing its duties as manager of AVR Johnstown, and (2) establishing a competing vascular-services center in violation of the Operating Agreement's non-compete provision.  (ECF No. 49 at 8.)  Defendants argue that they are likely to succeed on the merits of these claims and that they will suffer irreparable harm without a preliminary injunction.  Here, the Court's analysis begins and ends with the irreparable-harm prong.

### A.     The Irreparable-Harm Standard

"In order to demonstrate irreparable harm the [movant] must demonstrate potential harm which cannot be redressed by a legal or an equitable remedy following a trial." *Instant Air*, 882 F.2d at 801.  In the absence of exceptional circumstances, economic loss does not qualify as irreparable harm.  *Minard Run Oil Co. v. U.S. Forest Serv.*, 670 F.3d 236, 255 (3d Cir. 2011) (citations omitted).  And "[a]n inability to precisely measure financial harm does not make that harm irreparable or immeasurable." *Acierno v. New Castle County*, 40 F.3d 645, 655 (3d Cir.

1994). Thus, "[t]he possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." *Sampson v. Murray*, 415 U.S. 61, 90 (1974).

In addition, more than a mere risk of irreparable harm must be demonstrated; "[t]he requisite for injunctive relief has been characterized as a clear showing of immediate irreparable injury, or a presently existing actual threat; (an injunction) may not be used simply to eliminate a possibility of a remote future injury, or a future invasion of rights." *Cont'l Grp., Inc. v. Amoco Chems. Corp.*, 614 F.2d 351, 359 (3d Cir. 1980) (internal quotation marks and citations omitted). If the harm alleged stems from a breach-of-contract claim, then irreparable harm may be found in two situations:

> (1) where the subject matter of the contract is of such a special nature or peculiar value that damages would be inadequate; or (2) where because of some special and practical features of the contract, it is impossible to ascertain the legal measure of loss so that money damages are impracticable.

*ECRI v. McGraw-Hill, Inc.*, 809 F.2d 223, 226 (3d Cir. 1987) (citation omitted).

**B.   Defendants' Arguments**

Defendants assert that irreparable harm exists here because (1) the parties have agreed that any breach of the Operating Agreement qualifies as irreparable harm, (2) Defendants are losing a non-replicable business opportunity as a result of Plaintiffs' breaches of the Operating Agreement, (3) the Operating Agreement provides Defendants with limited means to address the harm caused by Plaintiffs, and (4) Plaintiffs' violation of the non-compete provision will lead to confusion, loss of goodwill in the community, and loss of patients. (ECF No. 49 at 13-16.) Below, the Court considers these arguments in turn.

      **1.      The parties' agreement that any breach of the Operating Agreement qualifies as irreparable harm.**

Section 10.3 of the Operating Agreement provides:

> <u>Specific Performance</u>. The Members recognize that irreparable injury will result from a breach of any provision of this Agreement and that money damages will be inadequate to fully remedy the injury. Accordingly, in the event of a breach or threatened breach of one or more of the provisions of this Agreement, any member who may be injured (in addition to any other remedies which may be available to that Member) shall be entitled to one or more preliminary or permanent orders (A) restraining and enjoining any act which would constitute a breach or (B) compelling the performance of any obligation which, if not performed, would constitute a breach.

(ECF No. 1-6.) Defendants contend that this provision supports a finding of irreparable harm here.

Delaware courts have provided conflicting guidance on whether contractual stipulations are sufficient to establish irreparable harm. *Compare True N. Commc'ns Inc. v. Publicis S.A.*, 711 A.2d 34, 44 (Del. Ch. 1997) (contractual provision established irreparable harm), *and Vitalink Pharmacy Servs., Inc. v. Grancare, Inc.*, No. 15744, 1997 WL 458494, at *9 (Del. Ch. Aug. 7, 1997) (same), *with AM Gen. Holdings LLC v. Renco Grp., Inc.*, No. 7639-VCN, 2016 WL 787929, at *2 (Del. Ch. Feb. 19, 2016) (no irreparable harm despite contractual provision), *and Kansas City S. v. Grupo TMM, S.A.*, No. 20518-NC, 2003 WL 22659332, at *5 (Del. Ch. Nov. 4, 2003) (holding that contractual provision established irreparable harm, but noting that "[i] the facts plainly do not warrant a finding of irreparable harm, this Court is not required to ignore those facts"). It appears that Delaware courts take contractual irreparable-harm provisions into consideration,

but that they are not necessarily dispositive as to whether irreparable harm exists. Applying this standard here, the contractual provision leans in favor of a finding of irreparable harm.

> **2. Defendants' argument that they are losing a non-replicable business opportunity as a result of Plaintiffs' breaches of the Operating Agreement.**

Defendants state that "outpatient vascular labs are a new and growing business in the medical community," and that "Plaintiffs [sic] breach of the Operating Agreement has meant Defendants continue to lose the opportunity to enter and maintain a facility in this new market." (ECF No. 49 at 14.) Defendants reason that their loss of a non-replicable business opportunity qualifies as irreparable harm.

The Court is unconvinced. As an initial matter, although a non-replicable business opportunity can give rise to irreparable harm, it does not follow that every loss of a non-replicable business opportunity gives rise to irreparable harm. For preliminary-injunction purposes, it is only harm that "cannot be redressed by a legal or an equitable remedy following a trial" that qualifies as irreparable. *See Instant Air*, 882 F.2d at 801. The single case cited by Defendants on this point—*EUSA Pharma (US), Inc. v. Innocoll Pharm. Ltd.*, 594 F. Supp. 2d 570 (E.D. Pa. 2009)—illustrates this proposition. There, although the court stated that the movant would "suffer irreparable harm by losing 'a unique, non-replicable business opportunity,'" that fact was relevant only because without an injunction "calculating an award of damages to compensate [the movant] would require speculation." *EUSA Pharma*, 594 F. Supp. 2d at 582 (citation omitted). Here, Defendants have not explained how the loss of "the opportunity to enter and maintain a facility in [the outpatient vascular-labs] market" frustrates the calculation of an eventual damages award. (ECF No. 49 at 14.) Thus, even assuming that Defendants are

-8-

currently missing out on a non-replicable business opportunity, they have not established that this qualifies as irreparable harm.

Furthermore, there is a substantial question whether operating an "outpatient vascular lab" is actually a non-replicable business opportunity. In their Brief in Opposition to Defendants' Motion for Preliminary Injunction, Plaintiffs cite extensively to depositions taken in this case to argue that "there is nothing novel, unique, proprietary, or 'non-replicable' about an outpatient vascular center such as AVR-Johnstown." (ECF No. 56 at 11.) Plaintiffs assert, supported by the record, that businesses such as AVR Johnstown are prevalent throughout the United States. (*Id.* (citing depositions).) This case does not involve proprietary technology, trade secrets, or the like, and Defendants have not explained how AVR Johnstown is a non-replicable business. Thus, the Court finds that Defendants argument of a loss of a non-replicable business opportunity does not support a finding of irreparable harm.

### 3. Defendants' argument that the Operating Agreement gives them limited means to address the harm caused by Plaintiffs.

Defendants argue that their inability under the Operating Agreement to dissolve or wind up AVR Johnstown supports a finding of irreparable harm. (ECF No. 49 at 14-15.) According to Defendants, because the Agreement bars them from dissolving AVR Johnstown, they "have no other recourse but an injunction to address the harm cause [sic] by Plaintiffs." (*Id.* at 15.) This argument is puzzling. And Defendants cite no authority for the proposition that the unavailability of alternative remedies—other than litigation—transforms ordinary harm suffered as a result of a breach of contract into irreparable harm. In the preliminary-injunction context, this unavailability of alternative remedies is irrelevant unless the movant's "legal

remedies are either inadequate or impracticable." *See A. L. K. Corp. v. Columbia Pictures Indus., Inc.*, 440 F.2d 761, 763 (3d Cir. 1971). Defendants appear to overlook the most obvious means of addressing the alleged harm caused by Plaintiffs: adjudication of Defendants' counterclaims by a neutral factfinder at an eventual trial and the possible award of monetary damages. Therefore the Court finds that this argument too is unpersuasive.

**4. Defendants' argument that Plaintiffs' violation of the non-compete provision will lead to confusion, loss of goodwill in the community, and loss of patients.**

Section 2.3 of the Operating Agreement provides in relevant part that

> for so long as a such [sic] Member continues to hold any ownership interest in the Company, and for two (2) years thereafter, Member will not obtain or hold any ownership interest, directly or indirectly, in any vascular center that provides any treatment, therapy or service competitive with those offered by the Company, located within thirty (30) miles of the vascular center(s) owned and operated by the Company.

(ECF No. 1-6.) Defendants state that Dr. Hadeed is "creating a larger, competing, vascular center in Richland Township, just seven miles from AVR-Johnstown's facility." (ECF No. 49 at 7.) Defendants argue that the establishment of the new facility violates Section 2.3 of the Operating Agreement and will lead to irreparable harm in the form of "confusion, loss of goodwill in the community, and loss of patients." (*Id.* at 15-16.)

Notwithstanding these conclusory statements, however, Defendants have offered no evidence that Dr. Hadeed's new facility will actually cause confusion or result in the loss of goodwill by AVR Johnstown. As for the loss of patients, it does not appear that any such loss would be the result of Dr. Hadeed's new facility. Rather, any loss of patients would be the result of the dispute underlying this case. As Plaintiffs point out, with extensive support in the

-10-

record, Defendants have credit holds with multiple vendors and suppliers, are unable to obtain the necessary equipment and supplies for the performance of vascular procedures, do not have the most critical piece of equipment necessary to operate a vascular lab, cannot obtain the credentials with insurance companies necessary to run AVR Johnstown, and no longer have a physician to perform vascular procedures at AVR Johnstown. (ECF No. 56 at 15-16 (citing depositions).)

Therefore, at this stage of the case, Defendants have failed to establish that Dr. Hadeed's new facility will result in a loss of patients. Moreover, to the extent that a factfinder ultimately finds that Dr. Hadeed's new facility is responsible for a loss in AVR Johnstown's patients, any damages that result would be quantifiable and ascertainable; thus, no irreparable harm.

But these three grounds are not the only paths to irreparable harm on the basis of the non-compete clause. As noted above, the Operating Agreement's non-compete provision is governed by Florida law. (ECF No 1.6 § 10.3.) Under Florida law, the violation of an enforceable non-compete covenant creates a rebuttable presumption of irreparable harm to the party seeking enforcement of that covenant. Fla. Stat. § 542.335(1)(j); *see also Proudfoot Consulting Co. v. Gordon*, 576 F.3d 1223, 1231 (11th Cir. 2009). For a non-compete covenant to be enforceable under Florida law, the movant must "plead and prove the existence of one or more legitimate business interests justifying the restrictive covenant." § 542.335(1)(b). Here, however, even if the Court assumed that a legitimate business interest exists and that Defendants are entitled to the presumption of irreparable harm, Plaintiffs have made a sufficient showing to rebut that presumption. Plaintiffs have presented substantial—and unrebutted—evidence that there is nothing unique or proprietary about AVR Johnstown's

business and that that any possible harm would be strictly monetary. Thus, the Court finds that any alleged violation of the non-compete provision does not give rise to irreparable harm.

### C. Defendants Have Failed to Meet the Burden for a Preliminary Injunction

Essentially, Defendants advance two principal reasons that irreparable harm exists here: (1) Defendants' inability to currently operate AVR Johnstown's vascular center, and (2) Plaintiffs' offering of competing vascular services. But neither of these grounds survives scrutiny.

Regarding Defendants' inability to operate AVR Johnstown's vascular center, not only is it doubtful that this qualifies as irreparable harm, but it is unclear why Defendants cannot manage the vascular center without injunctive relief—and how, exactly, they are prevented from managing AVR Johnstown. And more importantly, it is unclear how the injunctive relief requested would put AVR Johnstown back in business. Defendants allege that "Plaintiffs moved in and changed the locks at the Johnstown facility, barring AVR-Management . . . from entering AVR-Johnstown's clinic." (ECF No. 49 at 6.) Plaintiffs do not contest that they changed the locks of the Johnstown facility, (ECF No. 49-2 at 67:15-19); one of the allegations in Plaintiffs' Complaint is that "Defendants . . . failed to pay rents and utilities which were due under the Sublease," (ECF No. 1 ¶ 33). Defendants have denied this allegation, (ECF No. 7 ¶ 33), and argued that it was Plaintiffs who violated the Sublease, (*id.* ¶ 115).

Although there is a dispute as to which party violated the Sublease, Defendants request this Court order Plaintiffs to "allow AVR-Management access to Advanced Vascular Resources of Johnstown, LLC's vascular center and allow AVR-Management to manage Advanced Vascular Resources of Johnstown, LLC and the vascular facility in accordance with Operating

Agreement." (ECF No. 48-1 at 2.) But it does not follow that the lack of access to the Johnstown facility prevents Defendants from managing AVR Johnstown. The loss of a physical facility certainly impedes the ability to run a vascular-services company, but the Operating Agreement gives Defendant AVR Management the

> full power and authority . . . to manage the business and affairs of the Company . . . to make all decisions affecting such business and affairs and to do all things which [AVR Management] deems necessary or desirable in connection with the conduct of the business and affairs of the Company.

(ECF No. 1-6 § 4.1.)

Notwithstanding the dispute over who violated the Sublease, AVR Management appears fully authorized to procure a new facility on AVR Johnstown's behalf while this case proceeds. Thus, it is unclear why Defendants cannot operate the vascular center without injunctive relief and how they are being prevented from managing AVR Johnstown. Moreover, if a factfinder ultimately finds that Plaintiffs violated the Sublease, the damages fairly traceable to that violation—such as loss of revenue, loss of patients, and the costs of renting a new facility—would be reducible to a monetary award.[2]

Furthermore, it is unclear how the injunctive relief requested is necessary to put AVR Johnstown back in business. Even if this Court ordered Plaintiffs to give Defendants the keys to the Johnstown facility, "Defendants no longer have a physician to perform vascular procedures

---

[2] *Cf. DeHart v. HomEq Servicing Corp.*, 47 F. Supp. 3d 246, 253-54 (E.D. Pa. 2014) ("A Plaintiff in a breach of contract case may be awarded any incidental damages that would naturally and ordinarily result from the breach, along with any consequential damages that were reasonably foreseeable and within the contemplation of the parties at the time they made the contract." (citing *Liss & Marion, P.C. v. Recordex Acquisition Corp.*, 983 A.2d 652, 662 (Pa. 2009)); *Kingsly Compression, Inc. v. Mountain V Oil & Gas, Inc.*, 745 F. Supp. 2d 628, 636 (W.D. Pa. 2010) ("Damages for breach of contract or breach of a lease are designed to place the aggrieved in as good a position as would have occurred had the contract or lease been performed . . . ." (citing *Trosky v. Civil Serv. Comm'n*, 652 A.2d 813, 817 (Pa. 1995)).

at AVR-Johnstown." (ECF No. 56 at 16 (citing depositions).) Defendants counter that "once AVR-Johnstown regains control of its Johnstown facility, it will be able to hire new physicians to perform vascular treatments for patients in the Johnstown area." (ECF No. 68-1 at 9.) But Defendants do not explain why their ability to hire new physicians is conditional on access to the Johnstown facility. If Defendants can hire new physicians now, and Defendants can sign a new lease now, then Defendants can run their business now. Thus, it is unclear why injunctive relief is necessary.

Defendants have also requested this Court to enjoin Plaintiffs "from commingling funds from the operations of Advanced Vascular Resources of Johnstown, LLC's vascular center and Dr. Hadeed's cardiovascular practice" as well as "from taking any action regarding the finances of Advanced Vascular Resources of Johnstown, LLC." (ECF No. 48-1 at 2.) In support, Defendants allege that "Plaintiffs have diverted income and profits away from AVR-Johnstown and altered the LLC's bank accounts." (ECF No. 49 at 10.) But the materials Defendants cite in support for this allegation—excerpts of Dr. Hadeed's deposition and a profit & loss statement of Johnstown Heart—do not show that Plaintiffs have altered AVR Johnstown's bank accounts. And Defendants do not explain how, exactly, Plaintiffs have altered—or even accessed—AVR Johnstown's bank accounts. Plus, the Operating Agreement provides the following:

> <u>Bank Accounts</u>. All funds of the Company shall be deposited in a bank account, or accounts, opened in the Company's name. The bank accounts will be maintained in locations as shall be determined by the Manager from time to time, subject to any requirements imposed by applicable financing documents. The Manager shall determine the financial institution or institutions at which the accounts will be opened and maintained, the types of accounts, and the Persons who will have authority with respect to the accounts and the funds therein.

(ECF No. 1-6 at § 9.1.) Thus, if Defendants have followed the Operating Agreement, then Defendants should already be in control of AVR Johnstown's bank accounts. And Defendants do not explain how it is that they do not control AVR Johnstown's bank accounts.

As for the alleged irreparable harm resulting from Plaintiffs' competing vascular services, it appears to the Court that any damages from violations of the non-compete can be remedied by an eventual monetary judgment. If Plaintiffs are eventually found to be in violation of the non-compete clause, damages will be reasonably ascertainable by reviewing the financial records of the violating services provided by Plaintiffs and calculating the loss in business suffered by Defendants as a result. A loss of revenue or patients certainly seems quantifiable and capable of being reduced to a monetary amount.

## VI. Conclusion

In the preliminary-injunction context, a movant must demonstrate "a clear showing of immediate irreparable injury." *Amoco*, 614 F.2d at 359. Of the four grounds Defendants advance in support of a finding of irreparable harm, only one—the contractual stipulation of irreparable harm—weighs in favor of such a finding. Delaware courts, however, treat such stipulations as relevant to the irreparable-harm analysis, but not dispositive. Here, the Court finds that Defendants have failed to establish irreparable harm because every type of harm Defendants identify is quantifiable in monetary terms. And "[t]he possibility that adequate compensatory . . . relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." *Sampson*, 415 U.S. at 90.

Because Defendants have failed to establish that they will suffer irreparable harm, the Court will not address the remaining elements necessary for a preliminary injunction. Defendants' Motion for Preliminary Injunction (ECF No. 48) is **DENIED**. A corresponding Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SAMIR HADEED, MD, and JOHNSTOWN HEART AND VASCULAR CENTER, INC., | ) ) ) | Case No. 3:15-cv-22 |
| | ) | JUDGE KIM R. GIBSON |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | |
| ADVANCED VASCULAR RESOURCES OF JOHNSTOWN, LLC, AVR MANAGEMENT, LLC, WASHINGTON VASCULAR INSTITUTE, LLC, and MUBASHAR CHOUDRY, MD, | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## ORDER

**NOW**, this 8th day of December 2016, upon consideration of Defendants' Motion for Preliminary Injunction (ECF No. 48) and for the reasons set forth in the Memorandum Opinion accompanying this Order, it is **HEREBY ORDERED** that Defendants' Motion for Preliminary Injunction (ECF No. 48) is **DENIED**.

BY THE COURT:

_____
KIM R. GIBSON
UNITED STATES DISTRICT JUDGE