IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SAMIR HADEED, MD, and JOHNSTOWN HEART AND VASCULAR CENTER, INC., <br><br> Plaintiffs, <br><br> v. <br><br> ADVANCED VASCULAR RESOURCES OF JOHNSTOWN, LLC; AVR MANAGEMENT, LLC; WASHINGTON VASCULAR INSTITUTE, LLC; and MUBASHAR CHOUDRY, MD, <br><br> Defendants. | Case No. 3:15-cv-22 <br><br> JUDGE KIM R. GIBSON |

**MEMORANDUM OPINION**

**I.     Introduction**

In this contract dispute, Defendants have moved for leave to file an amended answer 19 months after filing their original answer, 16 months after the deadline for amending pleadings, 9 months after fact discovery closed, and on the day summary judgment motions were due (and filed). If the Court were to grant Defendants' Motion for Leave to Amend Defendants' Answer, Affirmative Defenses and Counter-Claims to Plaintiff's Complaint (ECF No. 47) ("Motion for Leave to Amend"), Plaintiff would suffer prejudice from the need to reopen discovery and supplement their dispositive motions. Yet, Defendants offer no explanation for the 9-month delay from the close of fact discovery to the filing of their Motion for Leave to Amend.

For the following reasons, Defendants' Motion for Leave to Amend (ECF No. 47) is **DENIED**.

## II. Relevant Background

This case stems from disputes over the operation of a vascular-services center located in Johnstown, Pennsylvania. Plaintiff Dr. Samir Hadeed ("Hadeed") is a licensed physician who owns and operates a cardiology practice in Johnstown: Johnstown Heart and Vascular Center, Inc. ("Johnstown Heart"). (ECF No. 1 ¶¶ 2-3.) In November 2013, Hadeed and Johnstown Heart partnered with Advanced Vascular Resources Management, LLC ("AVR Management") to open a new vascular-services center in Johnstown under the name Advanced Vascular Resources of Johnstown, LLC ("AVR Johnstown"). (ECF No. 1-6 at 2, 30-31; ECF No. 1-7 at 1, 8.)

Incidental to AVR Johnstown's formation, Hadeed and Johnstown Heart executed several other agreements. A decision was made to locate AVR Johnstown's vascular-services center in the same building as Johnstown Heart. Thus, Johnstown Heart and AVR Johnstown entered into a sublease for a portion of Johnstown Heart's building. (ECF No. 1-3 at 2, 11.) Hadeed and Johnstown Heart also entered into an employment agreement with a separate entity, Washington Vascular Institute, LLC ("Washington Vascular"). (*See* ECF No. 1-5 at 2, 17-18.) Washington Vascular in turn contracted with AVR Johnstown for the medical services at AVR Johnstown. (*Id.* at 2, 19.) In this way, Hadeed and Johnstown Heart agreed to provide cardiology and vascular services at AVR Johnstown. (*Id.*) Under AVR Johnstown's Operating Agreement, AVR Management was responsible for managing the business affairs of AVR Johnstown. (ECF No. 1-6 at 6, 12-13.) Stated simply, AVR Management handled the business side of AVR Johnstown while Hadeed and Johnstown Heart handled the medical side.

The relationships among the parties deteriorated after AVR Johnstown was formed. On January 23, 2015, Hadeed and Johnstown Heart filed this case against AVR Johnstown, AVR

Management, Washington Vascular, and Dr. Mubashar Choudry—who partially owns or operates those entities. (ECF No. 1 ¶ 6; ECF No. 7 ¶ 92.) Plaintiffs' allegations can be summarized as claims of chronic mismanagement of AVR Johnstown by Defendants. The Complaint is divided into five counts: (1) breach of contract based on Defendants' mismanagement of AVR Johnstown; (2) breach of contract based on Defendants' failure to pay Plaintiffs' wages; (3) fraudulent misrepresentation; (4) requesting an accounting; and (5) seeking dissolution/partition. (ECF No. 1 ¶¶ 44-64.) Plaintiffs seek compensatory damages, including lost wages and revenues, as well as attorneys' fees and costs. (*Id.* ¶ 64.)

Defendants filed their Answer on March 16, 2015, denying all liability and bringing five counterclaims against Plaintiffs, namely (1) breach of contract based on the sublease and Plaintiffs' employment agreement with Washington Vascular; (2) tortious interference with contractual relations; (3) conversion; (4) unjust enrichment; and (5) breach of fiduciary duty. (ECF No. 10 ¶¶ 114-36.) The Court entered an Initial Scheduling Order on May 6, 2015, which set June 5, 2015, as the deadline for the parties to move to amend their pleadings. (ECF No. 17 at 2.) No party moved to amend their pleadings before that deadline. Fact discovery closed on January 29, 2016. (ECF No. 28.) Plaintiffs and Defendants moved for summary judgment on October 17, 2016. (ECF Nos. 40, 44.)

On October 17, 2016, Defendants also requested leave to amend their answer. Defendants purportedly seek to "add and clarify new allegations related to AVR of Johnstown LLC's Operating Agreement, and Plaintiffs' breach of that Operating Agreement." (ECF No. 47 ¶ 9.) Defendants' proposed amended answer varies from the original answer only in regard to counterclaims. (*See* ECF No. 47-2.) The proposed amended answer does not add any new

counts, but includes two new bases for their breach-of-contract claim. (*See id.*) Specifically, Defendants seek to include allegations that Plaintiffs have violated the Operating Agreement by (1) preventing AVR Management from performing its duties as manager of AVR Johnstown and (2) establishing a competing vascular-services center in violation of the Operating Agreement's non-compete provision. (*Id.*)

III. **Legal Standard**

Federal Rule of Civil Procedure 15 governs amending pleadings. *See* Fed. R. Civ. P. 15. But, when a party seeks leave to amend the pleadings after the deadline set by a court's scheduling order, that party must first satisfy Rule 16(b)(4)'s requirements for modifying a scheduling order. *See Graham v. Progressive Direct Ins. Co.*, 271 F.R.D. 112, 118 (W.D. Pa. 2010) (citing cases); *see also Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*, 614 F.3d 57, 84 (3d Cir. 2010). Rule 16(b)(4) provides that a scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). In the Rule 16(b)(4) context, "good cause" looks to the diligence of the party seeking modification of the scheduling order. *Graham*, 271 F.R.D. at 119 (citation omitted). The moving party has the burden to demonstrate "good cause" under Rule 16(b)(4) before a court will consider amending under Rule 15. *Id.*

Looking to Rule 15, Rule 15(a)(2) applies in the present case, which provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Rule 15(a)(2) provides further that "[t]he court should freely give leave when justice so requires." *Id.*

As Rule 15(a)(2)'s language suggests, motions to amend are considered under a liberal standard. *See Arthur v. Maersk, Inc.*, 434 F.3d 196, 204 (3d Cir. 2006) (citing *Foman v. Davis*, 371

U.S. 178, 182 (1962)) ("Leave to amend must generally be granted unless equitable considerations render it otherwise unjust."). However, denial of a motion to amend may be appropriate if the party's delay in moving to amend "is undue, motivated by bad faith, or prejudicial to the opposing party." *Langbord v. U.S. Dep't of Treasury*, 832 F.3d 170, 188 (3d Cir. 2016) (quoting *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 272-73 (3d Cir. 2001)). While the undue delay and bad faith factors focus on the movant's motives for not seeking leave to amend earlier, the prejudice factor focuses on the effects allowing amendment would have on the non-movant. *Id.* (citing *Adams v. Gould Inc.*, 739 F.2d 858, 868 (3d Cir. 1984)).

The passage of time alone is an insufficient ground to deny leave to amend. *Cureton*, 252 F.3d at 273 (citing *Cornell & Co., Inc. v. Occupational Safety & Health Review Comm'n.*, 573 F.2d 820, 823 (3d Cir. 1978)). However, at some point, the delay becomes "undue." *Id.* (citing *Adams*, 739 F.2d at 868). Delay may become "undue" when the movant had previous opportunities to amend but failed to do so, amends by "repleading facts that could have been pled earlier," or delays until after summary judgment has been granted to the non-movant. *Id.* (citing cases).

In regard to prejudice, the U.S. Court of Appeals for the Third Circuit has "consistently recognized . . . that prejudice to the non-moving party is the touchstone for the denial of an amendment." *Arthur*, 434 F.3d at 204 (quoting *Cornell*, 573 F.2d at 823). Prejudice can justify denial of a motion to amend if the amendment would result in additional discovery, costs, preparation to defend against new facts or theories, or would otherwise place an unfair burden on the non-movant. *See Cureton*, 252 F.3d at 273; *Adams*, 739 F.2d at 868 (finding no prejudice because no new facts or additional discovery were required); *Rolo v. City Investing Co. Liquidating Trust*, 155 F.3d 644, 655 (3d Cir. 1998) (finding duration of case and substantial effort

and expense in resolving underlying motion to dismiss could constitute undue delay or prejudice to defendants); *Cornell*, 573 F.2d at 823-24 (finding significant prejudice because proposed amendment changed legal and factual basis of claim and prevented defendant from presenting defense). The party opposing amendment bears the burden of showing prejudice, undue delay, bad faith, or futility. *Graham*, 271 F.R.D. at 122 (citing *Chancellor v. Pottsgrove Sch. Dist.*, 501 F. Supp. 2d 695, 700 (E.D. Pa. 2007)).

## IV. Discussion

### a. Rule 16 Analysis

As explained *supra* Part III, a party seeking leave to amend the pleadings after the deadline set by a court's scheduling order must first satisfy Rule 16(b)(4)'s requirements for modifying a scheduling order by demonstrating "good cause." *See Graham*, 271 F.R.D. at 118-19. The moving party bears the burden to meet this preliminary hurdle prior to reaching a Rule 15 analysis. *Id.* at 119.

In the present case, the Court entered an Initial Scheduling Order on May 6, 2015, setting June 5, 2015 as the deadline for the parties to move to amend their pleadings. (ECF No. 17 at 2.) Defendants did not file their Motion for Leave to Amend until October 17, 2016, therein missing the Court's deadline by over 16 months. (ECF No. 47.) Thus, Defendants must demonstrate "good cause," which, under Rule 16(b)(4), focuses on the diligence of the party seeking the modification of the scheduling order. *Graham*, 271 F.R.D. at 119 (citation omitted).

Defendants argue that "good cause" for modification of the scheduling order exists and that no equitable considerations make amendment improper. (ECF No. 47; ECF No. 57-1.) However, Defendant offer little explanation beyond these bare assertions. Defendants seek to

amend their Answer 16 months after the deadline for amending pleadings, 9 months after fact discovery closed, and on the day summary judgment motions were due. But, despite being granted leave to file a reply brief, Defendants offer only a single sentence as explanation: "Discovery has yielded information concerning Plaintiffs' breach of the Advanced Vascular Resources of Johnstown, LLC Operating Agreement . . . not previously known by Defendants." (ECF No. 47 at 3.) Defendants never elaborate or even vaguely hint at what information they discovered, when they discovered the information, how they discovered the information, why they had not previously been privy to the information, or what effect this information had such that it was a necessary catalyst for the proposed amendments to their Answer. The only information available to the Court about this new information learned through discovery is that Defendants did not act on this newly discovered information until the day that both parties filed motions for summary judgment—9 months after the end of fact discovery.

Furthermore, despite identifying the proper legal standard for modification of a scheduling order—i.e., the moving party must establish "due diligence 'in seeking leave to amend as soon as practicable' once discovery has been completed," (*id.* at 2 (quoting *Trask v. Olin Corp.*, Civil Action No. 12-340, 2016 WL 1255302, at *3 (W.D. Pa. Mar. 31, 2016))— Defendants fail to offer any explanation as to how they acted with due diligence. Most glaringly, Defendants fail to even mention the lapse of 9 months between the end of fact discovery—when they presumably discovered the new information forming the basis for their amendment—and the filing of their Motion for Leave to Amend.

Courts find "good cause" pursuant to Rule 16(b) lacking when motions to amend pleadings are filed late in litigation without explanation for the tardiness. *See, e.g.*, *Peters v. Wal–*

*Mart Stores East, LP*, No. 12–2715, 2013 WL 1150224, at *4 (7th Cir. Mar.19, 2013) (affirming district court's denial of the plaintiff's motion to amend when the plaintiff failed to show "good cause" as she did "not explain why she delayed seven months . . . to propose her new claim" and "the motion came very late in the litigation"); *Unger v. Taylor*, 368 F. App'x 526, 530 (5th Cir. 2010) (affirming district court denial of the plaintiff's motion to amend for failure to show "good cause" when the motion was tardy, the trial was imminent, the defendants did not consent to the amendment, and the plaintiff failed to explain the untimeliness of his motion). "Good cause" is lacking here.

The Court finds that Defendants failed to demonstrate "good cause" to permit amendment because Defendants have failed to articulate any reasons why the Motion for Leave to Amend was submitted 9 months after the close of fact discovery and on the day that motions for summary judgment were due (and submitted). The Defendants have provided no explanation or evidence of their due diligence. To the contrary, the Court notes that Defendants failed to request that the Court modify the final date to amend the pleadings of June 5, 2015 or to otherwise extend their ability to amend the pleadings until filing this Motion for Leave to Amend on October 17, 2016.

Consequently, Defendants fail to satisfy the initial requirement of showing "good cause" under Rule 16(b)(4), and the Court denies Defendants' Motion for Leave to Amend.

    b. **Rule 15 Analysis**

Even had Defendants met their initial burden under Rule 16, Defendants' Motion for Leave to Amend would still be denied because Plaintiffs have demonstrated that allowing Defendants' proposed amended answer to be filed would cause Plaintiffs undue delay and

unfair prejudice. Under Rule 15, Plaintiffs bear the burden of establishing undue delay or prejudice and, generally, courts liberally permit amendment of pleadings. *See supra* Part III. In the present case, Plaintiffs have met this burden and established both undue delay and prejudice.

First, in regard to undue delay, as discussed *supra*, the passage of time alone does not constitute undue delay. *Cureton*, 252 F.3d at 273. However, here, the delay became "undue" because Defendants waited more than 9 months after the close of fact discovery to file their Motion for Leave to Amend—a motion based on new information gained during this discovery period. Therefore, based on the information presented to the Court, Defendants could have amended their Answer earlier, rather than waiting until the deadline for the filing of motions for summary judgment. *See id.* (stating that delay may become "undue" when the movant had previous opportunities to amend but failed to do so).

Second, in regard to prejudice, the Third Circuit has established that prejudice can justify denial of a motion to amend if the amendment would result in additional discovery, costs, preparation to defend against new facts or theories, or would otherwise place an unfair burden on the non-movant. *See* cases cited *supra* Part III. Plaintiffs persuasively assert:

> Should this Honorable Court grant Defendants' Motion to Amend, Plaintiffs will be required to seek leave of Court in order to reconvene depositions outside of the Western District (including in locations such as Philadelphia, Pennsylvania; Rockville, Maryland; Albany, New York; and Tampa, Florida), file supplementary interrogatories and requests for production of documents, retain an expert for further discovery, and, to the extent appropriate, file supplementary dispositive motions. (ECF No. 54 ¶ 20.)

Defendants, on the other hand, contend that "additionally [sic] discovery will not be needed" because the "core universe of facts governing the dispute will not change" (ECF No. 57-1 ¶ 7)

and that Plaintiffs are not "blindsided" by the amendments because they were aware of the Operating Agreement and the facts relating to it (*id.* ¶ 5).

The Court initially notes that many litigants would likely find a substantial amendment[1] of a counterclaim on the day motions for summary judgment are due based on "new" information yielded by discovery to be quite surprising when fact discovery ended 9 months prior. More importantly, the Court finds Plaintiffs' argument compelling because the amended counterclaim would likely raise issues not adequately addressed in discovery and would almost certainly require supplementary motions for summary judgment and briefing. While additional discovery may not need to be as extensive as Plaintiffs assert, the Court accepts that the proposed amendments would likely merit reopening of discovery to at least a limited degree. The cost, time, and inconvenience of additional discovery and supplementary dispositive motions and briefs constitutes unfair prejudice to Plaintiffs, especially at this late stage in the case.

Accordingly, because Plaintiffs have demonstrated that they have suffered from undue delay and unfair prejudice under Rule 15, the Court denies Defendants' Motion for Leave to Amend.

**V.      Conclusion**

Defendants have failed to demonstrated "good cause," as required by Rule 16(b)(4), for their delay in filing their Motion for Leave to Amend. Moreover, even had Defendants met this initial burden, under Rule 15, Plaintiffs have demonstrated that they would suffer from undue

---

[1] The Court labels the amendment as "substantial" because Defendants seek to allege in excess of $1 million in new damages with their amendments to Count 1. (ECF No. 47-2 ¶ 120.)

delay and unfair prejudice were the Court to grant Defendants' Motion.  Therefore, the Court denies Defendant's Motion for Leave to Amend.

A corresponding order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SAMIR HADEED, MD, and JOHNSTOWN HEART AND VASCULAR CENTER, INC., | ) ) ) | Case No. 3:15-cv-22 |
| | ) | JUDGE KIM R. GIBSON |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| ADVANCED VASCULAR RESOURCES OF JOHNSTOWN, LLC, AVR MANAGEMENT, LLC, WASHINGTON VASCULAR INSTITUTE, LLC, and MUBASHAR CHOUDRY, MD, | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## ORDER

NOW, this 26th day of September, 2017, upon consideration of Defendants' Motion for Leave to Amend Defendants' Answer, Affirmative Defenses and Counter-Claims to Plaintiff's Complaint (ECF No. 47) and for the reasons set forth in the Memorandum Opinion accompanying this Order, it is **HEREBY ORDERED** that Defendants' Motion for Leave to Amend (ECF No. 47) is **DENIED**.

BY THE COURT:

_____
KIM R. GIBSON
UNITED STATES DISTRICT JUDGE