## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SAMIR HADEED, MD, and | ) | Case No. 3:15-cv-22 |
| JOHNSTOWN HEART AND VASCULAR | ) | |
| CENTER, INC., | ) | JUDGE KIM R. GIBSON |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ADVANCED VASCULAR RESOURCES | ) | |
| OF JOHNSTOWN, LLC; AVR | ) | |
| MANAGEMENT, LLC; WASHINGTON | ) | |
| VASCULAR INSTITUTE, LLC; and | ) | |
| MUBASHAR CHOUDRY, MD, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

### I.    Introduction

Pending before the Court is Plaintiff Samir Hadeed, MD ("Hadeed") and Plaintiff

Johnstown Heart and Vascular Center, Inc.'s ("JHVC") Motion for Summary Judgment (ECF No.

40) and Defendant Advanced Vascular Resources of Johnstown, LLC ("AVR-Johnstown"),

Defendant AVR Management, LLC ("AVR-Management"), Defendant Washington Vascular

Institute, LLC ("WVI"), and Defendant Mubashar Choudry, MD's ("Choudry") Motion for

Judgment on the Pleadings and Motion for Summary Judgment on Plaintiffs' Complaint (ECF

No. 44).  These motions have been fully briefed.  (*See* ECF Nos. 42, 43, 45, 46, 59, 60, 61, 62, 63, 64,

67.)

This case arises from disputes over the operation of a vascular services center located in

Johnstown, Pennsylvania.  In short, Plaintiffs, who already operated a heart and vascular center

in Johnstown, entered into a series of contracts with Defendants (or, at least, some of the Defendants) by which Plaintiffs would operate the "medical side" of the vascular services center and Defendants would manage the "business side" of the center. The present case ensued because Plaintiffs and Defendants argue that the other side of the dispute failed to comply with the duties imposed by these contracts.

For the reasons that follow, Plaintiffs' Motion for Summary Judgment (ECF No. 40) is **GRANTED IN PART** and **DENIED IN PART**, and Defendants' Motion for Judgment on the Pleadings and Motion for Summary Judgment on Plaintiffs' Complaint (ECF No. 44) is **GRANTED IN PART** and **DENIED IN PART**.

## II.      Jurisdiction and Venue

The Court has diversity jurisdiction over this case pursuant to 28 U.S.C. § 1332(a)(1) because Plaintiffs are citizens of different states than Defendants and the amount in controversy exceeds $75,000. (*See* ECF Nos. 1 ¶¶ 1-7, 55-56; 10 ¶¶ 1-6.) Because a substantial part of the events underlying this case—namely, the alleged mismanagement of AVR-Johnstown—occurred in the Western District of Pennsylvania, venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2).

## III.      Procedural History

Plaintiffs initiated this lawsuit by filing their Complaint on January 23, 2015. (ECF No. 1.) In essence, the Complaint alleged severe mismanagement of AVR-Johnstown by Defendants. (*See id.* at ¶¶ 44-64.) The Complaint is divided into five counts: (1) breach of contract based on Defendants' mismanagement of AVR-Johnstown; (2) an accounting; (3) partition/dissolution of AVR-Johnstown; (4) breach of contract based on Defendants' failure to pay Plaintiffs' wages; and

(5) fraudulent misrepresentation.  (ECF No. 1 ¶¶ 44-64.)  Plaintiffs seek damages for lost profits and revenues, diminution in ownership value, and attorneys' fees and costs.  (*Id.* at 8-13.)  Plaintiffs also seek a full and accurate accounting and the dissolution and distribution of the assets of AVR-Johnstown.  (*Id.* at 9-10.)

In response, Defendants filed their Answer on March 16, 2015, denying all liability and bringing five counterclaims against Plaintiffs, namely (1) breach of contract based on the Sublease and JHVC's Group Physician Agreement with WVI; (2) tortious interference with contractual relations; (3) conversion; (4) unjust enrichment; and (5) breach of fiduciary duty.  (ECF No. 10 ¶¶ 114-36.)

The Court denied Defendants' Motion for Leave to Amend Defendants' Answer, Affirmative Defenses and Counter-Claims to Plaintiff's Complaint (ECF No. 47) by Memorandum Opinion and Order of September 26, 2017.  (ECF No. 77.)

Most pertinent here, on October 17, 2016, Plaintiffs filed their Motion for Summary Judgment (ECF No. 40) and Defendants filed their Motion for Judgment on the Pleadings and Motion for Summary Judgment on Plaintiff's Complaint (ECF No. 44).  The extensive briefing and responses on these motions concluded on November 17, 2016.  (*See* ECF Nos. 42, 43, 45, 46, 59, 60, 61, 62, 63, 64, 67.)

IV.     **Factual History**

The following facts are undisputed unless otherwise noted.[1]

---

[1] The Court derives these facts from a combination of Plaintiffs' Concise Statement of Undisputed Material Facts in Support of Motion for Summary Judgment (ECF No. 42), Defendants' Concise Statement of Undisputed Material Facts in Support of Defendants' Motion for Summary Judgment on Plaintiffs' Complaint (ECF No. 46),  Plaintiffs' Response to Defendants' Statement of Undisputed Material Facts in Support of Defendants' Motion for Summary Judgment on Plaintiffs' Complaint (ECF No. 61), Defendants'

The present case arises from various disputes relating to the operation of AVR-Johnstown—a limited liability company created under Delaware law to operate and manage a vascular center within Hadeed's already existing solo cardiovascular practice in Johnstown, Pennsylvania.  (ECF No. 46 ¶ 1; ECF No. 61 ¶ 1.)  Hadeed's cardiovascular practice is conducted through JHVC.  (ECF No. 46 ¶ 2; ECF No. 61 ¶ 2.)

Choudry formed Advanced Vascular Resources, LLC ("AVR")[2] to develop vascular facilities on a national level.  (ECF No. 46 ¶ 5; ECF No. 61 ¶ 5.)  AVR-Johnstown is one such facility.  (ECF No. 46 ¶ 5; ECF No. 61 ¶ 5.)  To foster the development and operation of vascular facilities across the country, Choudry also formed AVR-Management to oversee the management of AVR's vascular labs and formed WVI to oversee compensation, namely the compensation for JHVC.  (ECF No. 42 ¶¶ 25-26; ECF No. 63 ¶¶ 25-26.)

Sometime in 2013, Donald Greer ("Greer"), the Chief Operating Officer of AVR, flew to Johnstown, Pennsylvania to meet with Hadeed to discuss opening an outpatient vascular center in the Johnstown area.  (ECF No. 42 ¶ 11; ECF No. 63 ¶ 11.)  After numerous discussions and negotiations, Hadeed and JHVC reached an agreement with AVR to open a vascular lab in Johnstown, which would become AVR-Johnstown.  (ECF No. 42 ¶ 13; ECF No. 63 ¶ 13.)  Numerous contracts were executed to govern the relationships between the various parties, including (1) a Sublease between JHVC and AVR-Johnstown governed by Pennsylvania law, (2)

Response to Plaintiffs' Concise Statement of Undisputed, Material Facts in Support of Motion for Summary Judgment (ECF No. 63), and Plaintiffs' Response to Defendants' Additional Facts in Support of Defendants' Opposition to Plaintiffs' Motion for Summary Judgment (ECF No. 67).
[2] AVR is not a party to the present action, but is an owner of AVR-Johnstown and AVR-Management.  (ECF No. 42 ¶ 9; ECF No. 63 at ¶ 9.)  Choudry was the Chief Medical Officer and 90% owner of AVR.  (ECF No. 42 ¶ 10; ECF No. 63 ¶ 10.)

a Group Physician Agreement ("GPA") between JHVC and WVI governed by Maryland law, (3) an Operating Agreement between AVR, AVR-Management, and JHVC governed by Delaware law, (4) a Management Agreement between AVR-Johnstown and AVR-Management governed by Delaware law, and (5) a Subscription Agreement between AVR-Johnstown and JHVC governed by Delaware law. (ECF No. 42 ¶¶ 15, 46; ECF No. 46 ¶ 12; ECF No. 61 ¶ 12; ECF No. 63 ¶¶ 15, 46.) Under the Operating Agreement, JHVC owns a 55% majority ownership interest in AVR-Johnstown and AVR holds a 45% ownership interest. (ECF No. 46 ¶ 17; ECF No. 61 ¶ 17.)

After opening in April 2014, AVR-Johnstown was an immediate success. (ECF No. 46 ¶ 6; ECF No. 61 ¶ 5.) Both parties directly attribute this success to Hadeed and recognize him as "one of the best" physicians. (ECF No. 42 ¶ 70; ECF No. 63 ¶ 70.) However, complications soon arose.

While it is undisputed that AVR-Johnstown soon experienced cash flow problems, the parties disagree as to whether these problems were naturally caused by the great success of AVR-Johnstown or by Defendants' failure to properly fund AVR-Johnstown as required by contract. (ECF No. 46 ¶ 7; ECF No. 61 ¶ 7.) Despite having the contractual duty and authority to manage the business affairs of AVR-Johnstown—including staffing, accounting, management of employees, credentialing, billing, coding, compliance, and marketing of AVR-Johnstown (ECF No. 46 ¶¶ 20-21; ECF No. 61 ¶¶ 20-21), Defendants failed to timely pay at least some bills and invoices, including bills relating to contractors retained to build-out the vascular lab, vendors and/or suppliers of medical supplies and equipment, rent payments, and compensation to JHVC for physician services. (ECF No. 42 ¶¶ 73-94; ECF No. 63 ¶¶ 73-94.).

-5-

As a consequence, various third parties dealing with AVR-Johnstown placed credit holds on AVR-Johnstown, preventing AVR-Johnstown from receiving medical supplies and equipment for at least some period of time and inducing threats of mechanic's liens against the vascular lab. (ECF No. 42 ¶¶ 73-94; ECF No. 63 ¶¶ 73-94.) However, the parties dispute the duration of this non-payment, i.e., whether and, if so, when nonpayment issues were resolved, the cause of the non-payment/untimely payment, and whether the lack of supplies and equipment resulted in patients being turned away or other detriment to the business. (*See* ECF No. 42. ¶¶ 91-85; ECF No. 63 ¶¶ 91-95.)

Despite having a contractual responsibility for insurance credentialing and informing AVR-Johnstown that it was approved for UPMC insurance, AVR-Management failed to secure credentialing and approval for UPMC insurance, resulting in AVR-Johnstown not being reimbursed for procedures performed on patients insured by UPMC. (ECF No. 42 ¶¶ 100-105; ECF No. 63 ¶¶ 100-105.) Additionally, WVI stopped remitting any salary payment for Hadeed after the end of November 2014. (ECF No. 42. ¶ 106; ECF No. 63 ¶ 106.) Although the parties dispute the extent of the issue, there were at least some issues with the payment of AVR-Johnstown's employees' health care coverage (ECF No. 42 ¶ 108; ECF No. 63 ¶ 108.)

After encountering these problems,[3] on or around November 3, 2014, JHVC gave 90 days' notice to WVI that JHVC was exercising its option to terminate the GPA. (ECF No. 42 ¶¶ 117-118; ECF No. 61 ¶¶ 117-118.) JHVC also terminated the Sublease,[4] effective December 1, 2014, but

---

[3] The Court notes that its summary of the problems that arose between the parties is not comprehensive; issues not mentioned here will noted *supra* in the Court's discussion if relevant.
[4] Under the Sublease, JHVC subleased AVR-Johnstown a portion of the premises leased by JHVC from 1001 Broad Street Johnstown Limited Partnership. (ECF No. 42 ¶¶ 60-61; ECF No. 63 ¶¶ 60-61.)

did not do so with 120 days' notice.  (ECF No. 42 ¶ 119; ECF No. 63 ¶ 119.)  Shortly thereafter, in

December 2014, regardless of the state of the parties' legal relationship, the parties' actual

business relationship ended as a practical matter.  Plaintiffs changed the locks on the vascular

center premises (ECF No. 42 ¶ 120; ECF No. 63 ¶ 120) and ran a profitable business at the same

physical location without Defendants' meaningful involvement (ECF No. 46 ¶¶ 8-11; ECF No. 61

¶¶ 8-11.)   Plaintiffs are also currently creating a vascular center in Richland Township, seven

miles from the prior place of business.  (ECF No. 46 ¶ 11; ECF No. 61 ¶¶ 8-11.)

## V.    Legal Standard

### A.  Judgment on the Pleadings

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but

early enough not to delay trial—a party may move for judgment on the pleadings."  Fed. R. Civ.

P. 12(c).  Under Rule 12(c), judgment will not be granted unless the movant clearly establishes

that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter

of law.  *Minnesota Lawyers Mut. Ins. Co. v. Ahrens*, 432 F. App'x 143, 147 (3d Cir. 2011) (quoting

*Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008)).  Courts must view the facts presented

in the pleadings and the inferences to be drawn therefrom in the light most favorable to the

nonmoving party.  *Id.* (quoting *Rosenau*, 539 F.3d at 221).

### B.  Summary Judgment

"Summary judgment is appropriate only where . . . there is no genuine issue as to any

material fact . . . and the moving party is entitled to judgment as a matter of law."  *Melrose, Inc. v.

Pittsburgh*, 613 F.3d 380, 387 (3d Cir. 2010) (quoting *Ruehl v. Viacom, Inc.*, 500 F.3d 375, 380 n.6 (3d

Cir. 2007)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(a).  Issues of

fact are genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also McGreevy v. Stroup*, 413 F.3d 359, 363 (3d Cir. 2005). Material facts are those that will affect the outcome of the trial under governing law. *Anderson*, 477 U.S. at 248. The Court's role is "not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party." *Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 581 (3d Cir. 2009). "In making this determination, 'a court must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor.'" *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 278 (3d Cir. 2000) (quoting *Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994)).

The moving party bears the initial responsibility of stating the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the moving party meets this burden, the party opposing summary judgment "may not rest upon the mere allegations or denials" of the pleading, but "must set forth specific facts showing that there is a genuine issue for trial." *Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 n.11 (1986)). "For an issue to be genuine, the nonmovant needs to supply more than a scintilla of evidence in support of its position—there must be sufficient evidence (not mere allegations) for a reasonable jury to find for the nonmovant." *Coolspring Stone Supply v. Am. States Life Ins. Co.*, 10 F.3d 144, 148 (3d Cir. 1993); *see also Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (noting that a party opposing summary judgment "must present more than just

bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue")
(internal quotation marks omitted).

## VI.  Discussion

The Court will first quickly dispose of the claims and counterclaims that the parties have agreed to withdraw.  Then, the Court will analyze the parties' arguments in favor of and in opposition to summary judgment and judgment on the pleadings on the remaining claims and counterclaims of the Complaint and Answer.

### A.  Withdrawals of Claims and Counterclaims by the Parties

#### 1.  Withdrawal of Count 5 of the Complaint

In their Response to Defendants' Motion for Judgment on the Pleadings and Motion for Summary Judgment, Plaintiffs expressly "consent to the dismissal of Count 5 of the Complaint—Fraudulent Misrepresentation."  (ECF No. 59 ¶ 2.)

Therefore, the Court grants summary judgment in favor of Defendants as to Count 5 of the Complaint and dismisses Plaintiffs' fraudulent misrepresentation claim with prejudice.

#### 2.  Withdrawal of Count II and Count III of the Answer

In their Memorandum of Law in Opposition to Plaintiffs' Motion for Summary Judgment, Defendants expressly withdraw their counterclaims for tortious interference with contractual relations and conversion.  (ECF No. 64 at 14.)

Therefore, the Court grants summary judgment in favor of Plaintiffs as to Count II and Count III of the Answer and dismisses Defendants' tortious interference and conversion counterclaims with prejudice.

### 3. Dismissal of Claims and Counterclaims to the Extent They Are Asserted by or Against Hadeed and Choudry

In Defendants' Brief in Support of Defendants' Motion for Judgment on the Pleadings and Motion for Summary Judgment on Plaintiffs' Complaint, Defendants argue that all claims in the Complaint brought against Choudry must be dismissed because Choudry is not a party to any of the agreements in this case and, thus, cannot be liable for breaching the agreements. (ECF No. 45 at 6-7.) Similarly, Defendants argue that all claims brought by Hadeed must be dismissed because he was also not a party to any of these agreements and, thus, has no right to enforce the agreements. (*Id.* at 6.)

Plaintiffs largely agree, with the caveat that the "non-privity" status of Hadeed and Choudry must limit both Plaintiffs' claims and Defendants' counterclaims.[5] (*See* ECF No. 59 ¶ 2.) In their Brief in Opposition to Defendants' Motion for Judgment on the Pleadings and Motion for Summary Judgment, Plaintiffs explain that they "do not object to the dismissal of all claims brought by Dr. Hadeed against Defendants." (ECF No. 60 at 7.) Likewise, Plaintiffs "do not object to summary judgment being granted in favor of Dr. Choudry on all counts." (*Id.*) However, as to both Hadeed and Choudry, Plaintiffs suggest that, for the same reason articulated by Defendants, i.e., not being a parties to the contracts, all counterclaims brought by Choudry against Plaintiffs and by Defendants against Hadeed should be dismissed as well. (*Id.*) In essence, Plaintiffs consent to the removal of both Choudry and Hadeed as parties to this case.

---

[5] In their Response to Defendants' Motion for Judgment on the Pleadings and Motion for Summary Judgment, Plaintiffs "consent to the dismissal of Defendant Mubashar Choudry, M.D. from this action with the understanding that Plaintiff Samir Hadeed, M.D. will be dismissed from this action for the same reasons proffered by Defendants for the dismissal of Dr. Choudry." (ECF No. 59 ¶ 2.)

The Court, with one exception, agrees that the dismissal of all claims brought by and against Hadeed and Choudry is appropriate based on lack of privity.

"It is fundamental contract law that one cannot be liable for a breach of contract unless one is a party to that contract." *Norfolk S. Ry. Co. v. Pittsburgh & W. Virginia R.R.*, 153 F. Supp. 3d 778, 806 (W.D. Pa. 2015), *aff'd*, 870 F.3d 244 (3d Cir. 2017) (quoting *Electron Energy Corp. v. Short*, 597 A.2d 175, 177 (Pa. Super. Ct. 1991)). The Court finds, and both parties agree, that neither Hadeed nor Choudry was a party to any of the agreements relevant to this case. (*See* ECF No. 46 ¶¶ 13, 16; ECF No. 61 ¶¶ 13, 16.) Thus, Hadeed and Choudry cannot be personally liable for breaches of the agreements in this case. Furthermore, no facts presented to the Court or arguments of the parties suggest that the non-parties Hadeed and Choudry have any other right to enforce any of the provisions of the agreements in their individual capacities.

Consequently, because all of the remaining claims of the Complaint are based on the agreements,[6] the Court grants summary judgment in favor of Choudry as to all claims in the Complaint and dismisses all claims brought against Choudry in the Complaint with prejudice. Additionally, because all of the remaining counterclaims of the Answer are contingent upon the agreements except for the unjust enrichment claim in Count IV,[7] the Court grants summary

---

[6] The fraudulent misrepresentation claim in Count 5 of the Complaint was dismissed above. *See supra* Part VI.A.1.

[7] The tortious interference with contractual relations and conversion claims of Count II and Count III of the Answer were dismissed above. *See supra* Part VI.A.2. The Court also notes that, while the unjust enrichment counterclaim in Count IV of the Answer certainly relates to the contracts between the parties, unjust enrichment is an equitable remedy that is synonymous with quantum meruit and is a form of restitution. *See Power v. Lycoming Engines*, 328 F. App'x 121, 126 (3d Cir. 2009) (citing Pennsylvania cases). A claim for unjust enrichment does not require Hadeed to be a party to a contract. *See id.* However, while the undisputed facts of the record do not establish whether purported unjust benefits would have been retained by JHVC only or also by Hadeed, any inequity or non-payment of value would have been suffered

judgment in favor of Hadeed as to all counterclaims in the Answer except for Count IV and dismisses all counterclaims brought against Hadeed except for Count IV of the Answer with prejudice.

### 4. The Remaining Claims and Counterclaims for Consideration

To summarize the status of this case after these preliminary dismissals, JHVC is now the only remaining Plaintiff. Hadeed remains in the case only as a Counter-Defendant in regard to the unjust enrichment claim in Count IV of the Answer. The only remaining Defendants are AVR-Johnstown, AVR-Management, and WVI. Choudry is no longer a party to this case.

After these preliminary dismissals, the remaining claims in the Complaint are: (1) Count 1 for breach of contract based on mismanagement, (2) Count 2 for an accounting, (3) Count 3 for dissolution/partition, and (4) Count 4 for unpaid wages. The remaining counterclaims in the Answer are: (1) Count I for breach of contract, (2) Count IV for unjust enrichment, and (3) Count V for breach of fiduciary duty.[8] All remaining claims in the Complaint were brought against all of the remaining Defendants, i.e., AVR-Johnstown, AVR-Management, and WVI. (*See* ECF No. 1.) All remaining counterclaims in the Answer were brought against all Plaintiffs, but, with the exception of Count IV of the Answer, only JHVC is potentially subject to these remaining counterclaims. (*See* ECF No. 7.)

---

by AVR-Johnstown, AVR-Management, or WVI—and only indirectly by Choudry. Thus, Choudry is dismissed as a claimant in regard to Count IV of the Answer.

[8] The Court notes that Count V of the Answer sought to state a broad claim for breach of fiduciary duties. (ECF No. 7 ¶¶ 133-36.) However, in apparent recognition that breach of fiduciary duty is barred by the Operating Agreement, Defendants seek to frame/amend Count V to be a claim for breach of the implied covenant of good faith and fair dealing. The Court will consider this issue *infra* Part VI.C.3.

### B. Remaining Claims of the Complaint[9]

#### 1. Count 1: Breach of Contract—Mismanagement

##### i. Overview of Count 1

Under Count 1 of the Complaint, JHVC asserts a breach of contract claim against AVR-Johnstown, AVR-Management, and WVI.[10]  (ECF No. 1 ¶¶ 44-47.)  Plaintiffs allege that non-specific Defendants violated contractual duties owed to non-specific Plaintiffs from non-specific "Agreements referenced herein" through assorted instances of mismanagement.  (*Id.* ¶¶ 45-46.)  The alleged mismanagement is detailed with some specificity.  However, Plaintiffs have not clearly identified which agreement(s) were allegedly breached or which Defendant(s) were in breach.  Plaintiffs' Brief in Support of Plaintiffs' Motion for Summary Judgment argues only that the Managing Agreement between AVR-Johnstown and AVR-Management was violated due to mismanagement.[11]  (*See* ECF No. 43 at 6-17.)  However, Plaintiffs' Brief in Opposition to Defendants' Motion for Judgment on the Pleadings and Motion for Summary Judgment appears to argue that the Operating Agreement was breached due to mismanagement.  (*See* ECF No. 60

---

[9] The Court observes that Plaintiffs and Defendants moved for summary judgment as to all of the claims in the Complaint.  However, only Plaintiffs moved for summary judgment as to the counterclaims in the Answer.  Defendants oppose Plaintiffs' Motion for Summary Judgment as to the counterclaims, but Defendants did not ask the Court to grant summary judgment in Defendants' favor as to their counterclaims.  In essence, in regard to the claims of the Complaint, the Court may grant summary judgment in favor of Plaintiffs or Defendants as to any of the remaining counts of the Complaint, therein immediately resolving that count in favor of that side of the dispute, or deny summary judgment, therein allowing the claims to proceed to trial.  In regard to the counterclaims of the Answer, the Court can either grant summary judgment in favor of Plaintiffs as to any of the counts of the Answer, resulting in the dismissal of that count, or deny summary judgment in favor of Plaintiffs, allowing the counterclaim to proceed to trial.

[10] For the reasons discussed *supra* Part VI.A.3, the Court excludes Hadeed and Choudry.

[11] The brief also offers argument regarding violations of the Group Physician Agreement, but the Court addresses this agreement *infra* Part VI.C.2 in regard to Plaintiffs' claim for unpaid wages.

at 8-9.)  Again, the Complaint itself ambiguously refers to "the Agreements."  (ECF No. 1 ¶¶ 45-46.)

Despite these ambiguities, based on the Complaint and the briefs, the Court concludes that Count 1's claim of mismanagement alleges breaches of the Managing Agreement and the Operating Agreement.

### ii.    The Management Agreement

The Management Agreement obligates AVR-Management to perform certain administrative duties relating to the business and management of AVR-Johnstown, including most issues regarding the employment of support personnel, administering the compensation of physicians, acquiring and disposing of office and medical supplies and equipment, leasing and maintaining the premises, and billing and collecting payment from patients.  (ECF No. 62-9.)  In exchange for the provision of these services, AVR-Management was to receive a fee equal to between two and three percent of AVR-Johnstown's gross revenue.  (*Id.*)

Overall, Plaintiffs assert that AVR-Management breached the Management Agreement by failing to satisfy almost all of its contractual obligations to AVR-Johnstown.  Some of Plaintiffs' evidence is contested.  However, Plaintiffs have provided undisputed evidence that Defendants failed to timely pay at least some bills and invoices, including bills for contractors retained to "build-out" the vascular lab, vendors and/or suppliers of medical supplies and equipment, and rent payments.  (ECF No. 42 ¶¶ 73-94; ECF No. 63 ¶¶ 73-94.).  As a result, at least some third parties dealing with AVR-Johnstown placed credit holds on AVR-Johnstown, which prevented AVR-Johnstown from receiving medical supplies and equipment for at least some period of time and inducing threats of mechanic's liens against the vascular lab.  (ECF No. 42 ¶¶ 73-94; ECF No.

63 ¶¶ 73-94.)  However, the parties dispute the duration of this non-payment, i.e., whether and

when nonpayment issues were resolved, and whether the lack of supplies and equipment

resulted in patients being turned away.  (*See* ECF No. 42. ¶¶ 91-85; ECF No. 63 ¶¶ 91-95.)

Additionally, AVR-Management—in direct contradiction to information it expressly

conveyed to AVR-Johnstown—failed to secure credentialing and approval for UPMC insurance,

resulting in AVR-Johnstown not being reimbursed for procedures performed on patients insured

by UPMC.  (ECF No. 42 ¶¶ 100-105; ECF No. 63 ¶¶ 100-105.)

Yet, regardless of these allegations and the facts presented to support them, Defendant

argues that Plaintiffs lack standing to enforce the Management Agreement.  (ECF No. 64 at 3-4.)

Defendants argue that, under Delaware law,[12] non-parties to a contract normally have no rights

under the contract.  *Metcap Securities LLC v. Pearl Senior Care, Inc.*, No. Civ. A. 2129-VCN, 2007

WL 1498989, at *7 (Del. Ch. May 16, 2007).  "[O]nly parties to a contract and intended third-party

beneficiaries may enforce an agreement's provisions."  *Amirsaleh v. Board of Trade of City of New*

*York, Inc.*, Civil Action No. 2822-CC, 2008 WL 4182998, at *4 (Del. Ch. Sept. 11, 2008) (citing *NAMA*

*Holdings, LLC v. Related World Market Center, LLC*, 922 A.2d 417, 434 (Del. Ch. 2007)).

Applying these principles to the Management Agreement, Defendants observe that

Plaintiffs admit they are not a party to the Management Agreement, which was executed between

---

[12] The Operating Agreement is governed by Delaware law.  (*See* ECF No. 46 ¶ 12; ECF No. 61 ¶ 12.)  While
neither party provided argument regarding the application of Delaware law or another state's law to Count
1, the Court holds that this contractual choice of law provision in the Operating Agreement is enforceable
to the extent it provides for the application of Delaware law to Count 1 because AVR-Johnstown is an LLC
created under the laws of Delaware, making Delaware law a reasonable choice of law by the parties, and
nothing before the Court suggests that the fundamental policies of Pennsylvania or any other state
overrides Delaware's interest.  *See Kruzits v. Okuma Mach. Tool, Inc.*, 40 F.3d 52, 55 (3d Cir. 1994) (citing
*Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 497 (1941)); *Schifano v. Schifano*, 471 A.2d 839, 843 n.5 (Pa.
Super. Ct. 1984)); Restatement (Second) of Conflict of Laws § 187 (Am. Law. Inst. 1971).

Defendant AVR-Management and Defendant AVR–Johnstown. (*See* ECF No. 43 at 7.) Moreover, Plaintiffs have not made any showing that they are an intended third-party beneficiary of the Management Agreement and, in fact, Plaintiffs concede that the Management Agreement provides that AVR-Management is to provide management services "on behalf of and for the benefit of AVR-Johnstown. (*Id.*)

The Court agrees with Defendants' interpretation of Delaware law, agrees that Plaintiffs are not parties to the Management Agreement, and agrees that Plaintiffs have not established that they are third-party beneficiaries to the Management Agreement. Thus, to the extent that Count 1 asserts a cause of action under the Management Agreement, the Court grants summary judgment in favor Defendants and dismisses the claim with prejudice.

### iii.    The Operating Agreement

#### a.    Defendants' Arguments for Dismissal

Defendants do not contest whether Plaintiffs, namely the remaining Plaintiff JHVC, have a right to seek enforcement of the terms of the Operating Agreement.[13] Instead, Defendants make two primary arguments.

First, Defendants argue that a claim for mismanagement under the Operating Agreement cannot be sustained against any Defendants except for AVR-Management because "only AVR-Management was contractually obligated to manage AVR-Johnstown pursuant to the Operating Agreement that was signed by JHVC." (ECF No. 45 at 8.) The Court agrees, and Plaintiffs have not offered any counterargument. (*See* ECF No. 60.) Therefore, Plaintiffs' claim for

---

[13] The Operating Agreement was executed by JHVC, AVR-Management, and AVR, so Defendants' failure to contest JHVC's right to enforce the Operating Agreement is certainly understandable.

mismanagement in Count 1 is dismissed to the extent it is brought against any Defendant other than AVR-Management.

Second, Defendants argue that the Operating Agreement relieves AVR-Management from liability "except to the extent the Person's actions constitute willful misconduct or recklessness." (ECF No. 45 at 9) (quoting ECF No. 1, Ex. E, Art. 4.5.) Defendants then suggest that the Complaint must be dismissed because it fails to allege that AVR-Management engaged in willful misconduct or reckless conduct with respect to its duties under the Operating Agreement. (*Id.*)

The Court agrees with Defendants that the Operating Agreement requires willful or reckless conduct to incur liability. (*See id.*) However, the Court finds that the Complaint's allegations are, nevertheless, sufficient under federal pleading standards. *See supra* Part V.B.

The Complaint alleges that Defendants failed to pay various creditors, failed to provide medical supplies and equipment which were necessary to treat patients, failed to pay General Electric Healthcare for the vital piece of equipment known as a "C-Arm," failed to pay rent and utilities, failed to keep accurate financial records, used investment and revenues for other businesses, and failed to timely pay health insurance premiums for employees. (ECF No. 1 at ¶¶ 28-42.)

The totality of these and other allegations of the Complaint and the reasonable inferences therefrom sufficiently state that AVR-Management's willful or reckless conduct violated the Operating Agreement. *See Minnesota Lawyers*, 432 F. App'x at 147 (quoting *Rosenau*, 539 F.3d at 221) (providing the standard for deciding a motion for judgment on the pleadings). Thus, the Court denies Defendants' motion for judgment on the pleadings as to the mismanagement count under the Operating Agreement.

Moreover, while Defendants appear to seek dismissal of Count 1 under the Operating Agreement based only on their motion for judgment on the pleadings (*see* ECF No. 45 at 8-9), if Defendants also intended to challenge Count 1 under the Operating Agreement with both aspects of their joint motion, the Court would likewise deny Defendants' motion for summary judgment on this same matter. As Plaintiffs detail in their opposing brief, the record is likewise sufficient to demonstrate a triable issue of fact regarding the willfulness and/or recklessness of AVR-Management in regard to management. (*See* ECF No. 60 at 8-9.)

### b. Plaintiffs' Arguments for Summary Judgment

Plaintiffs also moved for summary judgment as to Count 1. (*See* ECF No. 40 ¶ 2; ECF No. 43 at 6-17.) Given the Court's conclusions *supra* Part VI.B.1.iii.a, to succeed on this motion for summary judgment as to Count 1, Plaintiffs would need to offer undisputed facts to establish that AVR-Management breached the Operating Agreement through willful or reckless mismanagement. Plaintiffs have offered various depositions and other facts to support their argument. Yet, the undisputed material facts offered to the Court have not established that Plaintiffs are entitled to judgment as a matter of law. *See Melrose*, 613 F.3d at 387.

As summarized *supra* Part IV and *supra* Part VI.B.1.ii, the record provided to the Court for the purposes of deciding Plaintiffs' Motion for Summary Judgment clearly establishes that AVR-Management failed to perfectly perform its contractual duties under the Operating Agreement. However, the undisputed facts demonstrate only that AVR-Management failed in its duties—not that it did so willfully or recklessly. The undisputed facts likely establish AVR-Management's negligent breach of its duties under the contract, but the Operating Agreement expressly limits liability to actions or inactions that "constitute willful misconduct or recklessness." (ECF No. 1-6, Art. 4.5.) The record demonstrates AVR-Management's failure to make payments, certify

insurance, and to timely perform other duties, *see supra* Part IV and *supra* Part VI.B.1.ii, but AVR-Management's state of mind (through its agents), degree of fault, and intent is not beyond dispute and these factual determinations are material to whether AVR-Management acted or failed to act willfully or recklessly.[14]

A jury could certainly come to the conclusion that AVR-Management's actions and/or inactions were willful or reckless, but the Court cannot come to that determination as a matter of law. Therefore, Plaintiffs' Motion for Summary Judgment (ECF No. 40) as to Count 1 for mismanagement under the Operating Agreement is denied.

### iv. Plaintiffs' Request for Attorneys' Fees

Lastly, Count 1's claim of damages includes "attorneys' fees and costs." (ECF No. 1 ¶ 47.) As Defendants correctly point out, under Delaware law, attorneys' fees will not be awarded "unless clearly provided for by statute or contract." *Pedrick v. Roten*, 70 F. Supp. 3d 638, 653-54 (D. Del. 2014) (quoting *Honaker v. Farmers Mut. Ins. Co.*, 313 A.2d 900, 904 (Del. Super. Ct. 1973)).[15] Plaintiffs have not identified any statute or contractual provision that provides for attorneys' fees and, therefore, summary judgment is granted in favor of Defendants' in regard to Count 1's request for attorneys' fees. This request is dismissed with prejudice.

---

[14] *See Recklessness*, *Black's Law Dictionary* (10th ed. 2014) (defining "recklessness"); *Willful, Black's Law Dictionary* (10th ed. 2014) (defining "willful").

[15] Likewise, even if this contract was to be evaluated pursuant to Pennsylvania law, litigants "bear responsibility for their own attorneys' fees in the absence of express statutory authorization for fee awards, contractual fee-shifting, or some other recognized exception." *Herd Chiropractic Clinic, P.C. v. State Farm Mut. Auto. Ins. Co.*, 64 A.3d 1058, 1062-63 (Pa. 2013) (citing *Merlino v. Delaware County*, 728 A.2d 949, 951 (Pa. 1999)).

###### v.    Summary of the Court's Holding on Count 1

Count 1 remains only as brought by JHVC against AVR-Management and only as to breaches of the Operating Agreement regarding mismanagement.  In addition, Plaintiffs' request for attorneys' fees is dismissed with prejudice.

##### 2.    Count 2: Accounting

###### i.    Parties' Arguments

In Count 2, the Complaint alleges that "Defendants have failed to keep accurate and adequate records as to the financial performance of the Broad Street facility," which has "resulted in the capital shares/interests and revenues of the parties being incomplete and/or inaccurate." (ECF No. 1 ¶¶49-50.)  The Complaint requests "a full and accurate accounting relative to the financial affairs of the Broad Street facility."  (*Id.* at 9.)

Defendants ask that Count 2 be either dismissed via judgment on the pleadings or via summary judgment.  (ECF No. 45 at 9.)  Defendants' first argue that Delaware law should apply to Count 2 and, under Delaware law, an accounting "reflects a request for a particular type of remedy, rather than an equitable claim in and of itself."  *Stevanov v. O'Connor*, Civ. No. 3820-VCP, 2009 WL 1059640, at *15 (Del. Ch. Apr. 21, 2009).  Thus, Plaintiffs cannot bring this separate cause of action for an accounting.  (ECF No. 45 at 10.)

In the alternative, Defendants argue that, even if the cause of action is considered under Pennsylvania law, summary judgment should be granted because an accounting is an equitable claim for which Plaintiffs have an adequate remedy at law in the breach of contract action in Count 1 and the discovery already taken with respect to that claim.  (*Id.*) (citing *Buczek v. First Nat'l Bank of Mifflintown*, 531 A.2d 1122, 1124 (Pa. Super. Ct. 1987).  In essence, Defendants suggest

that Plaintiffs have already received the relief requested in the accounting claim through discovery.  (*Id.*)

Plaintiffs do not deny that an accounting is an equitable remedy under Delaware law. (ECF No. 60 at 11) (citing *Albert v. Alex Brown Mgmt. Servs., Inc.*, No. Civ. A. 762-N and 763-N, 2005 WL 2130607, at *11 (Del. Ch. Aug. 26, 2005)).  Instead, Plaintiffs assert that the remedy of an accounting must be allowed to remain in the pleadings if Plaintiffs have pleaded cognizable underlying claims.  (*Id.*)  Plaintiffs then conclude that, because the Complaint properly stated the underlying claims, their request for an accounting is proper.  (*Id.*)  In response to Defendants' alternative argument regarding Pennsylvania law, Plaintiffs contend that there is a dispute of material fact as to whether they have an adequate remedy at law because they have received insufficient information as to the financial condition of AVR-Johnstown, as evidenced by their expert's opinion that Plaintiffs lack the supporting documentation necessary to verify the validity of the financial records accessed during discovery.  (*Id.* at 12.)

## ii.   Choice of Law

As a threshold inquiry, the Court must determine the applicable law.  It is well established that a "federal court exercising diversity jurisdiction must apply the choice of law rules of the forum state." *Kruzits v. Okuma Mach. Tool, Inc.*, 40 F.3d 52, 55 (3d Cir. 1994) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 497 (1941)).  In Pennsylvania, courts will "generally honor the intent of the contracting parties and enforce choice of law provisions in contracts executed by them."  *Id.*  More specifically, Pennsylvania has adopted Section 187 of the Restatement (Second) of Conflict of Laws, which provides that the law of the chosen state will be applied:

unless either (a) the chosen state has no substantial relationship to the parties or the transaction and there is no reasonable basis for the parties' choice, or (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue . . . .

*Id.* (citing *Schifano v. Schifano*, 471 A.2d 839, 843 n.5 (Pa. Super. Ct. 1984)); Restatement (Second) of Conflict of Laws § 187 (Am. Law. Inst. 1971)).

As discussed above, the operative document that provides the remaining Plaintiff, JHVC, a cause of action against Defendants for breaches of contract (other than in regard to compensation[16]) is the Operating Agreement. The Operating Agreement clearly and expressly provides that it is governed by Delaware law.[17] (ECF No. 1-6, art. 10.6.) While neither party offered a choice of law argument—instead opting to argue in the alternative under both Delaware law and Pennsylvania law, the Court holds that this contractual choice of law provision in the Operating Agreement is enforceable to the extent it provides for the application of Delaware law to Count 2 because AVR-Johnstown is an LLC created under the laws of Delaware, making Delaware law a reasonable choice of law by the parties, and nothing before the Court suggests that the fundamental policies of Pennsylvania or any other state overrides this provision.

### iii.    Analysis

An accounting is an equitable remedy under Delaware law. *See Albert*, 2005 WL 2130607, at *11. As the Court concluded *supra* Part VI.B.1.v, Plaintiffs' breach of contract claim for mismanagement under Operating Agreement by JHVC against AVR-Management may continue to trial. Therefore, because the Complaint properly stated an underlying claim, Plaintiffs' request

---

[16] *See infra* Part VI.B.4.

[17] That is, with the exception of issues relating to Members holding interests in competing vascular centers, which is governed by the law of Florida under the Operating Agreement. (ECF No. 1-6, art. 10.6.)

for an accounting is proper.  Although the Complaint appears to contemplate the remedy of an accounting being a standalone claim, the Court has little trouble construing it as a request for a remedy that is contingent on the success of the underlying breach of contract claim.

In regard to Defendants' argument that Plaintiffs have already received the financial records sought by Plaintiffs' request for an accounting through the course of discovery, the Court agrees with Plaintiffs that there remains a dispute of material fact as to whether Plaintiffs have received sufficient information as to the financial condition of AVR-Johnstown, as evinced by their expert's opinions as to the lack of supporting documentation to verify the validity of the financial records accessed during discovery.  (*See* ECF No. 60 at 12.)

The Court also denies Plaintiffs' Motion for Summary Judgment (ECF No. 40) to any extent the Motion asked for summary judgment as to Count 2.  Because Count 2 is an equitable remedy contingent upon Count 1, summary judgment in Plaintiffs' favor as to an accounting is denied for the same reasons discussed *supra* Part VI.B.1 in regard to Count 1.

### iv.    Summary of the Court's Holding on Count 2

Defendants' Motion for Judgment on the Pleadings and Motion for Summary Judgment on Plaintiff's Complaint (ECF No. 44) is denied to the extent Defendants ask for the removal of the equitable remedy of an accounting from the case.  But, Defendants' Motion is otherwise granted as to Count 2.

Count 2 is not a standalone cause of action.  As a remedy, Plaintiffs' request for an accounting will be addressed by the Court if Plaintiffs are ultimately successful on the underlying breach of contract claim in Count 1.  *See Albert*, 2005 WL 2130607, at *11.  Additionally, as the

request for an accounting is dependent upon Count 1, this remedy can be pursued by only JHVC and against only AVR-Management.

### 3. Count 3: Dissolution/Partition

#### i. The Proper Forum for Count 3

##### a. The Parties' Arguments

Defendants, for the first time, argue that the Delaware Court of Chancery is the exclusive proper forum for bringing a claim for dissolution under the Delaware Limited Liability Company Act. (ECF No. 45 at 11.) Defendants cite to a provision of the Delaware Limited Liability Company Act to support this argument. *See* Del. Code Ann. tit. 6, § 18-802 ("On application by or for a member or manager the Court of Chancery may decree dissolution of a limited liability company whenever it is not reasonably practicable to carry on the business in conformity with a limited liability company agreement."). Defendants cite to no authorities other than Del. Code Ann. tit. 6, § 18-802 ("Section 18-802") and provide no other reasoning to support the argument that the Delaware Court of Chancery has exclusive jurisdiction over claims for dissolution under the Delaware Limited Liability Company Act.

In a responsory footnote (ECF No. 60 at 12 n.80), Plaintiffs cite to a few cases from various jurisdictions in an effort to show that the Section 18-802 of the Delaware Limited Liability Company Act does not preclude other courts from entertaining dissolution actions or otherwise restrict other courts' jurisdiction. *See, e.g., Tampone v. Richmond*, No. 10-11776, 2013 WL 823163, at *1 (E.D. Mich. Mar. 6, 2013); *Hughes v. Cloonlara-Hughes Ltd. P'ship*, No. 2-15-0715, 2016 WL 1569620 (Ill. App. Ct. Apr. 18, 2016). In particular, Plaintiffs emphasize that the Pennsylvania Supreme Court has "has reasoned that the [Delaware Limited Liability Company] Act does not

confer exclusive jurisdiction upon the [Delaware] Court of Chancery." (ECF No. 60 at 12 n.80) (citing *Intertrust GCN, LP v. Interstate Gen. Media, LLC*, 87 A.3d 807, 808 (Pa. 2014) (Castille, C.J., dissenting).

### b. Defining the Issue Before the Court

As a preliminary matter, the Court must clarify and/or correct Plaintiffs' citation to *Intertrust*. (*See* ECF No. 60 at 12 n.80). While *Intertrust* has persuasive value, it is far from binding precedent from the Pennsylvania Supreme Court as to the effect of Section 18-802. To the contrary, in *Intertrust*, the Pennsylvania Supreme Court issued a one-sentence per curiam order, denying the petitioner's Emergency Application for Extraordinary Relief to bring the case before the Pennsylvania Supreme Court immediately and without first awaiting decisions by lower Pennsylvania courts.[18] *Intertrust*, 87 A.2d at 807. In response, Chief Justice Castille authored a dissenting opinion, therein explaining his disagreement with the court's decision to not exercise its extraordinary jurisdiction or King's Bench powers by resolving "whether the jurisdiction of Delaware courts is exclusive relative to dissolution proceedings for a Delaware limited liability company." *Intertrust*, 87 A.2d at 807-08 (Castille, C.J., dissenting).

In this dissent, which was joined by Justice Stevens, Chief Justice Castille offered his opinion that Section 18-802 does not prevent Pennsylvania courts from dissolving Delaware LLCs. *See id.* However, based on the Court's research, neither the Pennsylvania Supreme Court nor any other Pennsylvania appellate court has addressed this issue. Moreover, the only Pennsylvania trial court opinion on this issue that the Court could locate was the opinion of the

---

[18] The Pennsylvania Supreme Court may assert plenary jurisdiction over any matter pending in any Pennsylvania court at any stage of the proceedings. *See* 42 Pa. Cons. Stat. § 716.

Philadelphia Court of Common Pleas in *Intertrust*.[19] *See id.* at 808 (discussing the lower court's opinion); *Intertrust GCN, LP v. Interstate Gen. Media, LLC*, No. 99, 2014 Phila. Ct. Com. P. LEXIS 434 (Pa. Ct. Com. Pls. Feb. 18, 2013).

However, as directly stated by Chief Justice Castille, the "important legal issue" of "whether the jurisdiction of Delaware courts is exclusive relative to dissolution proceedings for a Delaware limited liability company" is "an issue of first impression." *Intertrust*, 87 A.2d at 807-08 (Castille, C.J., dissenting). The Court has extensively researched this issue and agrees that no federal courts and no appellate court in Pennsylvania have decided whether Delaware LLCs must be dissolved in Delaware courts. However, the Court has identified three trial court decisions and one intermediate appellate court decision that have addressed the issue. *See Camacho v. McCallum*, 16 CVS 602, 2016 WL 6237825, at *4-*5 (N.C. Super. Ct. Oct. 25, 2016); *Casella Waste Systems, Inc. FCR, LLC v. GR Tech., Inc.*, No. 409-6-07 RDCV, 2009 Vt. Super. LEXIS 14 (Vt. Super. Ct. Feb. 6, 2009; *Intertrust*, 2014 Phila. Ct. Com. Pl. LEXIS 434; *Raharney Capital, LLC v. Capital Stack LLC*, 25 N.Y.S.3d 217 (N.Y. App. Div. 2016).

### c. Survey of Case Law on Section 18-802 and Response to Plaintiffs' Citations to Case Law

Given the unresolved nature of this important issue, the Court has surveyed all of the cases which cite to Section 18-802 within the Westlaw and Lexis Advance databases. With the exception of *Camacho*, *Casella*, *Intertrust*, and *Raharney*, none of these cases from any jurisdiction

---

[19] This opinion by the Philadelphia Court of Common Pleas followed the filing of the petitioner's Emergency Application for Extraordinary Relief but preceded the Pennsylvania Supreme Court's denial of the Application. *See Interstate*, 87 A.2d at 808 (Castille, C.J., dissenting).

addressed whether dissolution proceedings for Delaware LLCs must be exclusively brought within Delaware courts.

Fifteen of these cases come from jurisdictions other than Delaware state courts or the U.S. District Court for the District of Delaware. Excluding *Intertrust*,[20] *Camacho*, *Casella*, and *Raharney*, which will be discussed in greater detail *infra*, the other ten non-Delaware opinions either refer to Section 18-802 simply to aid analysis of similar provisions in their respective states' statutes, *see Battles v. Bywater, LLC*, No. 14 CVS 1853, 2014 WL 5512304, at *9 (N.C. Super. Ct. Oct. 31, 2014) (comparing North Carolina's statutory dissolution standard to the standard under the Delaware Limited Liability Company Act); *Natanel v. Cohen*, No. 502760/13, 2014 WL 1671557, at *4 (N.Y. Sup. Ct. Apr. 18, 2014) (comparing New York's statutory dissolution standard to Delaware's standard); *All Saints Univ. of Medicine Aruba v. Chilana*, No. C-147-08, 2012 WL 6652510, at *16-17 (N.J. Super. Ct. App. Div. Dec. 24, 2012) (comparing New Jersey's statutory standard for dissociation of an LLC member to Delaware's standard for statutory dissolution of an LLC); *Connors v. Howe Elegant, LLC*, No. 4003783, 2009 WL 242324, at *13 (Conn. Super. Ct. Jan. 8, 2009) (comparing Connecticut's statutory dissolution standard to Delaware's standard); *Horning v. Horning Cost., LLC*, 816 N.Y.S.2d 877, 883 (N.Y. Sup. Ct. 2006) (comparing New York's statutory dissolution standard to Delaware's standard), or are otherwise irrelevant to the issue before the Court now, *see United States v. Dairy Farmers of America, Inc.*, No. Civ.A.6:03-206-KSF, 2007 WL 1200094, at *1 (E.D. Ky. Mar. 23, 2007) (featuring a consent judgment entered by the district court which references Section 18-802 in passing); *Thiara v. Kiernan*, No. Co6-03503 MJJ, 2006 WL

---

[20] Both the dissenting opinion by Chief Justice Castille and the opinion by Philadelphia Court of Common Pleas.

3065568, at *4 (N.D. Cal. Oct. 25, 2006) (specifically holding that the plaintiffs are pursuing a derivative action for damages under Delaware law—not dissolution of an LLC under Section 18-802).

In their brief, Plaintiffs cite to *Tampone* and *Hughes*.[21] (ECF No. 60 at 12 n. 80.) Using these cases, Plaintiffs argue that, because at least two other non-Delaware courts—the U.S. District Court for the Eastern District of Michigan and the Illinois Appellate Court—have considered dissolution proceedings of Delaware LLCs, it is appropriate for this Court to do so as well. (*Id.*) Plaintiffs' argument has some surface appeal. However, upon review of these cases, the Court does not find this argument persuasive.

First, in *Tampone*, the Eastern District of Michigan considered a motion to reconsider and to allow immediate appeal. *See Tampone*, 2013 WL 823163, at *1. The *Tampone* opinion mentions that a request for court-ordered dissolution under Section 18-802 is before the court and survived summary judgment, but the opinion offers no other explanation or information. *Id.* The other opinions in the *Tampone* case available to this Court likewise do not address Section 18-802 or exclusivity. *See, e.g.*, *Tampone v. Richmond*, No. 10-11776, 2013 WL 1184431, at *1 (E.D. Mich. Jan. 9. 2013).

Second, the Illinois Appellate Court considered the dissolution of a limited partnership under Delaware law. *See Hughes*, 2016 WL 1569620, at *14-*15. While *Hughes* involved Title 17, Section 18-802, rather than Title 18, Section 18-802, the *Hughes* court cites Delaware case law for

---

[21] Beyond those seven non-Delaware cases cited *supra* and those discussed *infra*, three cases remain. Plaintiffs cited two of these cases. *See Tampone*, 2013 WL 823163, at *1; *Hughes*, 2016 WL 1569620, at *14-*15. However, there are two separate decisions in *Tampone* that cite to Section 802—neither of which the Court finds particularly relevant or persuasive. *See Tampone*, 2013 WL 823163, at *1; *Tampone v. Richmond*, No. 10-11776, 2013 WL 1184431, at *1 (E.D. Mich. Jan. 9. 2013).

the proposition that these two sections are to be interpreted similarly. *See id.* at *14 (citing *Fisk Ventures, LLC v. Segal*, C.A. No. 3017-CC, 2009 WL 73957, at *3 (Del. Ch. Jan. 13, 2009). However, *Hughes* focuses solely on whether the facts before the court satisfy the standard by which a court may dissolve a limited partnership "whenever it is not reasonably practicable to carry on the business in conformity with the partnership agreement." *Id.* (quoting Del. Code. tit. 6, § 17-802)). The Illinois Appellate Court eventually denies dissolution on the basis that mere intra-partner conflict without deadlock is legally insufficient for judicial dissolution under Delaware law. *Id.* at *16. But, the parties evidently did not raise and the *Hughes* court did not consider any jurisdictional issues regarding Section 18-802 or the similar provision on the dissolution of limited partnerships. *Id.* at *15.

In sum, none of these cases meaningfully address the issue now before this Court.

### d. Decisions Favoring Exclusive Jurisdiction in Delaware Courts for the Dissolution of Delaware LLCs

The Court's research has unearthed only four cases—three of which are state trial court decisions[22]—which address whether proceedings for the dissolution of LLCs must be brought in Delaware courts. All four courts held that the Delaware courts have exclusive jurisdiction over dissolution proceedings for Delaware LLCs. *See Casella*, 2009 Vt. Super. LEXIS 14, at *6-*18; *Intertrust*, 2014 Phila. Ct. Com. Pl. LEXIS 434, at *4-*9; *Raharney*, 25 N.Y.S.3d at 217-18; *Camacho*, 2016 WL 6237825, at *4-*5. The Court will discuss each of these opinions in turn.

---

[22] The Court emphasizes that, differing from the nomenclature used by the Unified Judicial System of Pennsylvania, the North Carolina Superior Court and the Vermont Superior Court are both trial courts, not appellate courts.

First, the Vermont Superior Court directly considered "whether the court has subject matter jurisdiction to dissolve two limited liability companies organized under Delaware law." *Casella*, 2009 Vt. Super. LEXIS 14, at *1. The *Casella* court looked at the plain language of Section 18-802 and concluded that Section 18-802 "does not grant subject matter jurisdiction to any other court" except for the Delaware Court of Chancery. *Id.* at *7. According to *Casella*, Section 18-802 "says only that the Court of Chancery may decree dissolution whenever the standard has been met" and does not "authorize action by any other court." *Id.* at *7-*8. The *Casella* court further reasons that "[t]his phrasing is consistent with the only other grant of subject matter jurisdiction contained in the dissolution subchapter, which grants authority to the Court of Chancery to wind up company affairs after dissolution." *Id.* (citing Del. Code Ann. tit. 6, § 18-803).

The Vermont Superior Court recognizes that there is "some tension between the default rules governing dissolution and other provisions of the Delaware LLC Act that contemplate the possibility of jurisdiction in courts other than the Delaware Court of Chancery." *Id.* (citing Del. Code Ann. tit. 6, § 18-109(d); Del. Code Ann. tit. 6, § 18-111). However, the court explains this tension by reasoning that "there is a fundamental difference" between actions that interpret an operating agreement or resolve differences among members and the drastic remedy of judicial dissolution that terminates the existence of an entity created under Delaware's enabling statute. *Id.* at *9.

The *Casella* court then turns to principles of comity, explaining that courts generally decline jurisdiction to dissolve business entities organized under the laws of another state. *Id.* (citing *Young v. JCR Petroleum, Inc.*, 423 S.E.2d 889, 892-93 (W. Va. 1992) (holding that West Virginia state courts lack jurisdiction over the dissolution of foreign corporations, an Ohio

corporation in this case); *Durina v. Filtroil, Inc.*, 2008 Ohio 4803, at *2 (Ohio Ct. App. Sep. 18, 2008) (holding that Ohio courts lack jurisdiction over the dissolution of a Nevada LLC); *Rimawi v. Atkins*, 840 N.Y.S.2d 217, 218-19 (N.Y. App. Div. 2007) (holding that the court lacked jurisdiction over the dissolution of a Delaware LLC); *Smyth v. Field*, 1993 Mass. Super. LEXIS 231, at *7 (Mass. Super. Ct. Nov. 17, 1993) (holding that the court lacked jurisdiction over the dissolution of a Delaware limited partnership)). The *Casella* court also notes that it was unable to find any decisions in which the courts of another state have dissolved a Delaware LLC under Section 18-802. *Id.* at *10. Based on this reasoning, the Vermont Superior Court held that it lacked subject matter jurisdiction to dissolve the two Delaware LLCs brought before it. *Id.* at *18.

Second, the Philadelphia County Court of Common Pleas quickly concluded that the Delaware Court of Chancery has exclusive subject matter jurisdiction to hear and determine petitions for judicial dissolution of Delaware LLCs. *Intertrust*, 2014 Phila. Ct. Com. Pl. LEXIS 434, at *7-*8. The court interpreted the language of Section 18-802 to be exclusive because it uses the article "the" instead of "a" when referring to the Delaware Court of Chancery and that the use of "may" in the statute refers only to the Court of Chancery's discretion in granting dissolution. *Id.* at *8. Although the Philadelphia Court of Common Pleas "was hard-pressed not to give [the defendant's] local connections any consideration as well as this court's competency to resolve said issues," the court held that it lacked subject matter jurisdiction to dissolve the Delaware LLC because the legal entity created in Delaware should be dissolved by a Delaware court." *Id.* at *8-*9.

Third, the Appellate Division of the Supreme Court of New York[23] cites to many of the same cases that *Casella* cited in regard to comity principles to conclude that "the courts of one state do not have the power to dissolve a business entity formed under another state's laws." *Raharney*, 25 N.Y.S.3d at 220. The court further explained, "Because a business entity is a creature of state law, the state under whose law the entity was created should be the place that determines whether its existence should be terminated." *Id.*

Fourth, the North Carolina Superior Court also directly faced the issue of whether it has subject matter jurisdiction to dissolve a Delaware LLC. *See Camacho*, 2016 WL 6237825, *4-*5. The *Camacho* court raises many of the same arguments as the prior three cases, but it also looks more deeply at the statutory context of Section 18-802. *Id.* The North Carolina Superior Court wrote:

> Unlike other provisions of the Delaware Act that provide an action may be brought in the Court of Chancery, thereby implying that those actions may be brought in courts other than the Court of Chancery, the plain language of section 18–802 permits only the Court of Chancery to enter a decree dissolving a Delaware LLC. Compare [Del. Code Ann. tit. 6] § 18–111 ("Any action to interpret, apply or enforce the provisions of a limited liability company agreement . . . may be brought in the Court of Chancery."), and *id.* § 18–1001 (stating that a member of an LLC "may bring [a derivative] action in the Court of Chancery"), with *id.* § 18–802 (stating "the Court of Chancery may decree dissolution").

*Id.* at *4. Thus, the *Camancho* court concluded that "[j]udicial dissolution of entities created under, and granted substantial contractual freedom by, the laws of one state should be accomplished by decree of a court of that state." *Id.* at *5.

---

[23] The Court notes that the Appellate Division of the Supreme Court of New York is an intermediate appellate court. The Court of Appeals of New York is the highest state court in New York.

e. **The *Intertrust* Dissent by Chief Justice Castille and the Argument for Non-Exclusive Jurisdiction**

The Court already clarified the precedential effect of Chief Justice Castille's dissenting opinion in *Intertrust*. *See supra* Part VI.B.3.i.b. To summarize, Chief Justice Castille and one other former member of the Pennsylvania Supreme Court authored a dissenting opinion to the majority of the court's decision not to hear the case. *See Intertrust*, 87 A.3d at 807-08. In this dissenting opinion, Chief Justice Castille opined that he would have taken the case and overturned the Philadelphia County Court of Common Pleas' decision that the Delaware Court of Chancery has exclusive jurisdiction of the dissolution of Delaware LLCs under Section 18-802. *Id.* at 808.

Differing in his interpretation of Section 18-802 from all of the opinions cited *supra*, Chief Justice Castille explains:

> In my view, petitioners have made a more than colorable showing that the provision does not purport to vest exclusive jurisdiction in the Delaware courts as against any other proper forum, such as the Pennsylvania courts, but instead simply confers upon the Delaware Court of Chancery discretionary authority to decree dissolution of an LLC in appropriate circumstances. *See Haley v. Talcott*, 864 A.2d 86, 93 (Del. Ch. 2004) (even if there are no facts under which LLC could carry on business in conformity with LLC Agreement, remedy of dissolution remains discretionary). The trial court's reliance on Section 18–802 as definitive support for the holding that Pennsylvania courts do not have subject matter jurisdiction over these proceedings is misplaced. *See Beneficial Consumer Discount Co. v. Vukman*, 77 A.3d 547, 552 (Pa. 2013) (in absence of clear legislative mandate, laws are not to be construed to decrease jurisdiction of Pennsylvania courts).

*Id.* Furthermore, Chief Justice Castille observes that, despite the ability to do so, the operating agreement in *Intertrust* did not select Delaware state courts as the exclusive forum for disposing of disputes. *Id.* at 809.

More broadly, Chief Justice Castille expresses his strong disagreement with what he perceives to be the trial court's flawed limitation of the jurisdiction of Pennsylvania courts. *Id.* The Chief Justice wrote:

> It would be one thing if the trial court dismissed the matter in an exercise of discretion, or for some other prudential reason founded in law; but dismissal based upon a misapprehension of Pennsylvania's judicial power is quite another matter. In my respectful view, this is the sort of issue warranting exercise of the Court's extraordinary jurisdiction.

> In my view, the trial court's broad holding that Pennsylvania courts lack subject matter jurisdiction to adjudicate the dissolution and liquidation of a foreign LLC whose operations, offices, and assets are all in Pennsylvania, and which operates the main media in Pennsylvania's largest city,[24] is of immediate public importance such that this Court should exercise plenary review.

*Id.* Lastly, Chief Justice Castille cites a now-97-year-old Pennsylvania Supreme Court case that affirmed an order appointing a receiver to a Delaware corporation and stated that Pennsylvania courts have general jurisdiction over foreign corporations doing business in Pennsylvania, especially when all assets are located in Pennsylvania. *Id.* (citing *Cunliffe v. Consumers' Ass'n of America*, 124 A. 501, 503 (Pa. 1924)).

#### f. The Court's Analysis

The Court recognizes the difficulty and novelty of the issue before it and fully acknowledges the weight and reasonableness of the arguments made by Chief Justice Castille in his dissenting opinion in *Intertrust*. However, the Court agrees with Defendants and with the

---

[24] The LLC which the plaintiffs sought to dissolve was Interstate General Media, LLC—the company that owns and operates *The Philadelphia Inquirer*, *The Philadelphia Daily News*, and *philly.com*. *Intertrust*, 87 A.3d at *808. Interstate General Media LLC's operations, offices, and assets were all located in Pennsylvania. *Id.*

reasoning and result of those cases discussed *supra* Part VI.B.3.i.d.  Thus, the Court holds that it

lacks subject matter jurisdiction[25] to dissolve AVR-Johnstown.

When acting in diversity jurisdiction, the Court must follow the state's highest court or

predict how that highest court would resolve the issue if that highest state court has not done so.

*Ill. Nat'l Ins. Co. v. Wyndham Worldwide Operations, Inc.*, 653 F.3d 225, 231 (3d Cir. 2011).[26]  Chief

Justice Castille's dissenting opinion in *Intertrust* represents only the opinions held by himself and

one other former Pennsylvania Supreme Court justice who joined in the dissent.  The Court fully

considered Chief Justice Castille's arguments, but the Court is not persuaded that a dissenting

opinion authored by two former members of the Pennsylvania Supreme Court reflects how the

majority of the current Pennsylvania Supreme Court would resolve this issue.[27]

---

[25] To clarify, the Court does not hold that it lacks subject matter jurisdiction for the purposes of the U.S. Constitution or federal statutes.  Rather, because the Court derives its authority to decide the present case from diversity jurisdiction, the Court cannot exceed the jurisdiction of the courts of the Commonwealth of Pennsylvania.  *See* 28 U.S.C. § 1332(a)(1).

[26] More specifically, when interpreting state law, federal courts must follow the state's highest court.  *Ill. Nat'l Ins. Co. v. Wyndham Worldwide Operations, Inc.*, 653 F.3d 225, 231 (3d Cir. 2011).  If that state's highest court has not provided guidance, federal courts must predict how that highest court would resolve the issue.  *Id.* (citing *Canal Ins. Co. v. Underwriters at Lloyd's London*, 435 F.3d 431, 436 (3d Cir. 2006)).  To do so, federal courts must take into consideration:  (1) what that state's highest court has said in related areas, (2) the decisional law of the state intermediate courts, (3) federal cases interpreting state law, and (4) decisions from other jurisdictions that have discussed the issue.  *Id.* (citing *Werwinski v. Ford Motor Co.*, 286 F.3d 661, 675 (3d Cir. 2002)).  "Although lower state court decisions are not controlling on an issue on which the highest court of the state has not spoken, federal courts must attribute significant weight to these decisions in the absence of any indication that the highest state court would rule otherwise."  *Id.* (quoting *Wisniewski v. Johns–Manville Corp.*, 759 F.2d 271, 273–74 (3d Cir. 1985)).

[27] The Court notes, however, that no fair inference can be taken from *Intertrust* as to the opinion of the majority of the justices on whether Pennsylvania courts have jurisdiction or can otherwise adjudicate the dissolution of a Delaware LLC.  All that can be fairly ascertained about the majority of the court is that they concluded that exercising the Pennsylvania Supreme Court's plenary and extraordinary King's Bench powers was not appropriate in that case.  *Intertrust*, 87 A.3d at 807.  The Court certainly does not assume that the majority of the Pennsylvania Supreme Court disagreed with Chief Justice Castille's opinion on the merits of the underlying issue; the Court cannot fairly attribute any stance on this issue to any members of the Pennsylvania Supreme Court other than Chief Justice Castille and Justice Stevens, the other former justice who signed onto the dissent.

Instead, relying on the reasoning and authorities cited by those cases discussed *supra* Part VI.B.3.i.d, the Court predicts that the Pennsylvania Supreme Court would apply Section 18-802 of the Delaware Limited Liability Company Act to AVR-Johnstown's operating agreement,[28] interpret Section 18-802 to provide for exclusive jurisdiction for proceedings involving the dissolution of Delaware LLCs in Delaware state courts, and hold that general principles of comity prevent the courts of one state from greatly interfering with the internal affairs of foreign business entities by dissolving a business entity created by and under the laws of another state.[29]

To respond to the arguments raised by Chief Justice Castille, the Court disagrees with his interpretation of Section 18-802. For those reasons detailed *supra* Part VI.B.3.i.d, the Court holds that the text and context of Section 18-802 indicate that the Delaware Court of Chancery has exclusive jurisdiction over dissolution proceedings involving Delaware LLCs. The plain meaning of Section 18-802 and a comparison of the text of Section 18-802 to other sections in the Delaware Limited Liability Company Act that allow the involvement of non-Delaware courts convinces the Court that Section 18-802 vests exclusive subject matter jurisdiction in the Delaware Court of Chancery. *See supra* Part VI.B.3.i.d. Moreover, the case law of Delaware courts and the underlying nature of LLCs as unique creations of state statutes further persuades the Court that Section 18-802 provides for exclusive jurisdiction for the dissolution of Delaware LLCs in Delaware courts. *See In re Carlisle Etcetera LLC*, 114 A.3d 592, 605–06 (Del. Ch. 2015) ("[W]hen a sovereign makes available an [LLC] with attributes that contracting parties cannot grant themselves by agreement, the [LLC] is not purely contractual. Because the entity has taken

---

[28] See *supra* Part VI.B.2.i for the Court's choice of law analysis under the Operating Agreement.
[29] To avoid redundancy, the Court does not repeat the reasoning of the cases discussed *supra* here, but the Court adopts the reasoning discussed *supra* Part VI. B.3.i.d as our own.

advantage of benefits that the sovereign has provided, the sovereign retains an interest in that [LLC]. That interest in turn calls for preserving the ability of the sovereign's courts to oversee and, if necessary, dissolve the [LLC].").

Chief Justice Castille cites the Delaware Court of Chancery's case in *Haley* to support his conclusion that the "may" in Section 18-802 demonstrates that the provisions do not "vest exclusive jurisdiction in the Delaware courts as against any other proper forum." *Intertrust*, 87 A.3d at 808 (citing *Haley*, 864 A.2d at 93). However, as concluded by the cases *supra* Part VI.B.3.i.d, the "may" in Section 18-802 simply confers discretion upon the Delaware Court of Chancery to dissolve or not dissolve even where the LLC cannot carry on business in conformity with the LLC Agreement. *See Haley*, 864 A.2d at 93. In contrast to the discretion vested in the Delaware Court of Chancery, the involvement of the Delaware Court of Chancery provided for by Section 18-802 is absolute. *See* Del. Code Ann. tit. 6, § 18-802 ("On application by or for a member or manager the Court of Chancery may decree dissolution of a limited liability company whenever it is not reasonably practicable to carry on the business in conformity with a limited liability company agreement."). This absolute language in Section 18-802 contrasts other provisions of the Delaware Limited Liability Company Act that permit the involvement of other jurisdictions' courts and aligns with the other sections regarding the winding up of the affairs of a Delaware LLC. *See supra* Part VI.B.3.i.d.

Chief Justice Castille also cites the Pennsylvania Supreme Court's decision in *Beneficial* for the proposition that a clear legislative mandate is required to decrease the jurisdiction of Pennsylvania courts. *Intertrust*, 87 A.3d at 808 (citing *Beneficial*, 77 A.3d at 552). The Court fully agrees with this statement of Pennsylvania law. Nevertheless, the Court views the legislative

mandate of Section 18-802 and its surrounding sections to be a clear mandate. Moreover, the Court relies not only on Section 18-802 in holding that we will not dissolve AVR-Johnstown; the Court also bases our decision on principles of comity and non-interference in the fundamental internal affairs of a business entity created under the laws of another state. *See supra* Part VI.B.3.i.d.

In the second-to-last sentence of his dissenting opinion, Chief Justice Castille cites to a 97-year-old Pennsylvania Supreme Court decision that affirmed the appointment of a receiver for a Delaware corporation with all of its assets, business, officers, directors, and records in Pennsylvania. *See Intertrust*, 87 A.3d at 809 (citing *Cunliffe*, 124 A. at 503). The Court recognizes the relevancy of *Cunliffe* and does not idly ignore *Cunliffe*'s precedential effect due to its age.[30] Yet, the Court finds *Cunliffe* distinguishable from the present case.

*Cunliffe* acknowledges the narrowness of its own holding to the facts before it and that the court was bound by the findings of the lower court. *See Cunliffe*, 124 A. at 501-502. Factually, exclusively Pennsylvania stockholders purchased the stock of a Delaware corporation under the false pretense that they were purchasing interests in a profitable co-operative for which they had management and voting authority. *Id.* at 501. In actuality, these Pennsylvania stockholders had purchased non-voting stocks with no management authority in an unprofitable for-profit

---

[30] While *Cunliffe* is certainly still binding precedent by the Pennsylvania Supreme Court, the Court does find some significance in the changes that have occurred in the law of business entities since 1924, especially in regard to the relatively recent rise of LLCs. *See* Carol R. Goforth, *The Rise of the Limited Liability Company: Evidence of a Race Between the States, but Heading Where?*, 45 Syracuse L. Rev. 1193, 1199 (1995) (providing a history of early enactment of LLC statutes). Most notably, the innovative status of LLCs as unique creations of state law with contractual flexibility within the specific confines of a given state's statutes suggest an additional need for the most fundamental internal affairs of LLCs to be addressed by the courts of the state that enacted the statutes governing and permitting the creation of the LLC.

corporation.  *Id.*  The Pennsylvania Supreme Court, bound by the lower court's findings, concluded:

> [T]he foreign charter of the corporation was being used as a cloak to cover fraudulent conduct on the part of its officers, to the prejudice of its Pennsylvania stockholder, and the outcome of permitting it to continue business would be to make possible the sale of more stock, with the result that additional citizens of Pennsylvania would be defrauded, most persons who are in moderate circumstances, and who could ill afford to lose the money.

*Id.* at 504.  In essence, the *Cunliffe* court's priority and reasoning for allowing a Pennsylvania court to appoint a receiver for a Delaware corporation was "to protect our own citizens, and to preserve property within our jurisdiction for those of them whose money has gone into it, must lay hands on a fraudulent enterprise, and not permit it to hide behind the screen of corporate organization by another state and inveigle further victims."  *Id.*  The undisputed facts presented to this Court do not suggest that the general public is being defrauded by AVR-Johnstown's operation or that AVR-Johnstown must be dissolved by a Pennsylvania court to protect Pennsylvania citizens from victimization.  To the contrary, Plaintiffs have withdrawn their only fraud-related count of fraudulent misrepresentation.  (*See* ECF No. 59 ¶ 2.)  The undisputed facts suggest that some wrongdoing may have occurred, but the facts of the present case vary significantly from those of *Cunliffe*.

 *Cunliffe* repeatedly reaffirms the general principle that Pennsylvania courts should not interfere with the internal affairs of foreign business entities.  *Cunliffe*, 124 A. at 502-503.  The court cites at least six of its then-recent cases to establish the general principle that Pennsylvania courts "will not take jurisdiction of a case involving the internal management of a foreign corporation."  *Id.* at 502-03.  In a review of prior case law, the Pennsylvania Supreme Court stands by its prior

opinions preventing interference in the internal affairs of foreign corporations. *See id.* at 502-03.

The court simply chose to distinguish from that well-established general rule of non-interference

based on the "very different [situation] that [is] now before us." *Id.* at 502.

Notably, the *Cunliffe* court highlights a different case with facts that align much more

closely to the present case than the facts of *Cunliffe* itself. *See id.* at 503 (citing *Hogue v. Am. Steel*

*Foundries*, 92 A. 1073, 1075 (Pa. 1915)). In *Hogue et al v. American Steel Foundries*, the Pennsylvania

Supreme Court held that it would not exercise jurisdiction over the internal management of a

New Jersey corporation in determining the validity of a reorganization plan and pronouncing the

rights between the shareholders and the corporation. *Id.* (citing *Hogue*, 92 A. at 1075). The *Hogue*

court determined that these questions should be determined by the New Jersey courts. *Id.* (citing

*Hogue*, 92 A. at 1075).

Similar to *Hogue* and distinguishing the present case from *Cunliffe*, Plaintiffs ask the Court

for a full dissolution of AVR-Johnstown and the distribution of its assets. This request for relief

is even more of an internal interference than the reorganization requested in *Hogue* and is more

invasive than the appointment of a receiver requested in *Cunliffe*. Few, if any, actions could

interfere with the internal affairs of a foreign business entity more than entirely dissolving that

entity.

Portions of *Cunliffe* also suggest that "[t]he question, however, on close analysis, will be

seen to be not one of jurisdiction, but of discretion in exercising jurisdiction." *Id.* at 502. The

Court views the text of the Delaware Limited Liability Company Act and the statutory nature of

LLCs to make the present case an issue of jurisdiction itself because the statutes establish a clear

judicial framework for dissolution and dispute resolution involving LLCs when not otherwise

addressed by contract. However, even if that were not the case and if *Cunliffe* was indistinguishable from the present case, the Court would not exercise its discretion to take jurisdiction of the dissolution of AVR-Johnstown. The dissolution of a Delaware LLC and the interpretation of the Delaware Limited Liability Company Act is most appropriately left to the Delaware Court of Chancery, as specified in Section 18-802, especially when the parties did not exercise their freedom of contract to select a different forum in their Operating Agreement and potentially novel and significant issues involving the interpretation of the Delaware Limited Liability Company Act may arise.

Ultimately, in regard to the Court's adherence to Section 18-802, the Full Faith and Credit Clause of the U.S. Constitution requires each state to respect the sovereign acts of the others states. U.S. Const., art. IV, § 1 ("Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State."). As the West Virginia Supreme Court of Appeals explained, "The creation and dissolution of a corporation is one such act." *Young*, 423 S.E.2d at 892 ("Since a corporation is a creature of the state by which it is chartered, the right to dissolve the corporation without its consent belongs exclusively to the state. The existence of a corporation cannot be terminated except by some act of the sovereign power by which it was created. Accordingly, the courts of one state do not have the power to dissolve a corporation created by the laws of another state.") (citations omitted). In order to interpret *Cunliffe* and other citations made by Chief Justice Castille consistently with the U.S. Constitution and with common law principles of comity, the Court concludes that Pennsylvania law does not authorize Pennsylvania courts to order the dissolution of a limited liability company created by and under the laws of another state under the facts of the present case.

Therefore, the Court holds that it lacks jurisdiction over Plaintiffs' request to dissolve AVR-Johnstown because of the text of Section 18-802, principles of comity and non-interference in the internal affairs of a foreign corporation, and our discretion in exercising jurisdiction as discussed by *Cunliffe*. The Court grants summary judgment in favor of Defendants and denies summary judgment as to Plaintiffs as to Count 3.

### ii. The Operating Agreement's Prohibition on Dissolution and/or Partition

Defendant also argues for dismissal of Count 3 on the basis of the Operating Agreement's prohibition on dissolution. (ECF No. 45 at 12-13.) Given the decision regarding lack of jurisdiction, the Court will not consider this argument.

### iii. Summary of the Court's Holding on Count 3.

Defendants' Motion for Judgment on the Pleadings and Motion for Summary Judgment on Plaintiff's Complaint (ECF No. 44) is granted as to Count 3 and, thus, Count 3 is dismissed with prejudice. Plaintiffs' Motion for Summary Judgment (ECF No. 40) is denied to any extent the Motion asked for summary judgment as to Count 3.

## 4. Count 4: Breach of Contract—Unpaid Wages

### i. The Nature of Count 4, the Relevant Contract, and the Applicable Law

In Count 4, Plaintiffs allege that all of Defendants should be held liable for WVI's alleged failure to timely compensate Plaintiffs and for failure to pay wages after November 28, 2014. (ECF No. 1 ¶¶ 55-57.)

In the Court's own judgment and based on the parties' briefs discussing only the GPA (*see* ECF No. 43 at 17-19; ECF No. 64 at 4-5; ECF No. 45 at 13-15; ECF No. 60 at 15-18), the Court

concludes that Count 4 alleges Defendants breached the GPA and does not allege violations of the various other contracts for the purposes of Count 4. The GPA is a contract between JHVC and WVI and is governed by Maryland law.[31] (*See* ECF No. 67-10.)

## ii. The Appropriate Parties for Count 4

As just stated, the GPA was executed by and between JHVC and WVI; no other parties to this suit were parties to the GPA. (*Id.*) In the Complaint, Plaintiffs make a fleeting allegation that the remaining Defendants were third-party beneficiaries to the GPA. (ECF No. 1 ¶ 57.) However, Plaintiffs have not presented any legal authority or directed the Court to any undisputed facts to support this passing, mere allegation in the Complaint. Moreover, as admitted by Plaintiffs, the GPA expressly states that AVR-Johnstown is the only third-party beneficiary under the GPA. (ECF No. 67-10 at art. 9.13; ECF No. 46 ¶ 15; ECF No. 61 ¶ 15.)

Thus, because they are the only parties to the contract and no other basis for liability under the contract has been shown, it is clear that the only Plaintiff with an enforceable right under the contract is JHVC and the only Defendant potentially subject to liability under the GPA is WVI. *See Norfolk S. Ry. Co. v. Pittsburgh & W. Virginia R.R.*, 153 F. Supp. 3d 778, 806 (W.D. Pa. 2015), *aff'd*, 870 F.3d 244 (3d Cir. 2017). The Court grants summary judgment in favor of Defendants as

---

[31] The GPA is expressly governed by Maryland law. (*See* ECF No. 45 at 14; ECF No. 60 at 16.) Neither party contests the application of Maryland law to the GPA, and the Court holds that this contractual choice of law provision in the GPA is enforceable because WVI is a Maryland LLC, making Maryland law a reasonable choice of law by the parties. Nothing before the Court suggests that the fundamental policies of Pennsylvania or any other state overrides Maryland's interest. *See Kruzits v. Okuma Mach. Tool, Inc.*, 40 F.3d 52, 55 (3d Cir. 1994) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 497 (1941)); *Schifano v. Schifano*, 471 A.2d 839, 843 n.5 (Pa. Super. Ct. 1984)); Restatement (Second) of Conflict of Laws § 187 (Am. Law. Inst. 1971).

to Count 4 such that the claim now consists of only JHVC alleging breach of the GPA against only WVI.

### iii.    Disputes of Material Fact Remain as to Count 4

The Court will not copiously detail the parties' competing arguments, but the core of their dispute regarding Count 4 is whether the undisputed facts before the Court warrant summary judgment in favor of either party.  (*See* ECF No. 43 at 17-19; ECF No. 64 at 4-5; ECF No. 45 at 13-15; ECF No. 60 at 15-18.)  The Court agrees that some material facts are not in dispute, such as the non-payment of any Plaintiffs after November 28, 2014, the practical end of the employment relationship between Plaintiffs and Defendants in November 2014, and JHVC's profitability in 2015.  (*See* ECF No. 42 ¶¶ 106, 117-18, 120; ECF No. 63 ¶¶ 106, 117-18, 120; ECF No. 46 ¶¶ 8-11; ECF No. 61 ¶¶ 8-11.)  However, many other material facts remain in dispute as to the claim by JHVC against WVI for breach of the GPA.

The following material facts, *inter alia*, remain in dispute based on the record before the Court: (1) whether and to what degree payments were paid or not paid up to November 2014; (2) whether JHVC breached the GPA by seemingly discontinuing the provision of services under the GPA in November 2014, therein excusing non-payment for the 90 days following JHVC's notice of termination on November 3, 2014; (3) whether JHVC breached the GPA, therein not implicating Article 8.5 of the GPA to justify payment for one month of service; and (4) whether and, if so, to what extent JHVC wrongfully competed with Defendants' business such that JHVC was not harmed by WVI's potentially unjustified lack of payment under the GPA.

These and other disputed issues regarding Count 4 present a genuine and triable issue of fact for which a reasonable jury could render a verdict for either side.  Thus, neither Plaintiffs nor

Defendants are entitled to judgment as a matter of law regarding JHVC pursuit of Count 4 against WVI.

### iv.     Plaintiffs' Request for Attorneys' Fees

Lastly, Count 4's claim of damages includes "attorneys' fees and costs."  (ECF No. 1 ¶ 60.) As Defendants correctly point out, under Maryland law, attorneys' fees will not be awarded absent a statutory provision or special circumstances such as a provision in a contract.  *In re Reinheimer*, 509 B.R. 12, 22 n.26 (Brank. D. Md. 2014) (citing *Empire Realty Co., Inc. v. Fleisher*, 305 A.2d 144, 148 (Md. 1973)).[32]  Plaintiffs have not identified any statute or contractual provision that provides for attorneys' fees and, therefore, summary judgment is granted in favor of Defendants in regard to Count 4's request for attorneys' fees.  This request is dismissed with prejudice.

### v.     Summary of the Court's Holding on Count 4

Defendants' Motion for Judgment on the Pleadings and Motion for Summary Judgment on Plaintiff's Complaint (ECF No. 44) is granted in part and denied in part as to Count 4. Plaintiffs' Motion for Summary Judgment (ECF No. 40) is denied as to Count 4.

Count 4 remains only as a claim for breach of the GPA brought by JHVC against WVI. Plaintiffs' request for attorneys' fees is also dismissed.  In addition, Plaintiffs' request for attorneys' fees is dismissed.

---

[32] Likewise, even if this contract was evaluated pursuant to Pennsylvania law, litigants "bear responsibility for their own attorneys' fees in the absence of express statutory authorization for fee awards, contractual fee-shifting, or some other recognized exception."  *Herd Chiropractic Clinic, P.C. v. State Farm Mut. Auto. Ins. Co.*, 64 A.3d 1058, 1062-63 (Pa. 2013) (citing *Merlino v. Delaware County*, 728 A.2d 949, 951 (Pa. 1999)).

### C. Remaining Counterclaims of the Answer[33]

#### 1. Count I: Breach of Contract

##### i. Overview of Count I

In Count I of the Answer, Defendants allege that Plaintiffs breached the Sublease and the GPA. (ECF No. 7 at ¶¶ 114-121.) In regard to the Sublease, Defendants assert that Plaintiffs breached paragraph 1 of the Sublease by failing to provide AVR-Management access to the vascular center premises and by "attempting to terminate the Sublease when no such right exists under the agreement." (*Id.* at ¶ 115.) Defendants contend that they have suffered damages "in excess of over one million dollars" through Plaintiffs' violations of the Sublease. (*Id.* ¶ 116.) Defendants also seek to recover legal costs pursuant to paragraph 15 of the Sublease. (*Id.* ¶ 117.)

In regard to the GPA, Defendants allege that Plaintiffs violated, *inter alia*, paragraphs 2.5, 3.1, 7.3, 7.5, and 9.12 of the GPA by restricting AVR-Management's access to the premises, retaining AVR-Management's equipment and supplies, and performing surgeries in violation of the non-competition provisions of the GPA. (*Id.* ¶¶ 118-19.) The cited provisions of the GPA amount to a prohibition against JHVC operating a competing business and performing/offering competitive medical treatments for a period of two years after the termination of the GAP and within a thirty-mile radius of the premises of the vascular center.[34] Again, Defendants contend

---

[33] The Court notes again that only Plaintiffs—not Defendants—moved for summary judgment as to the counterclaims of the Answer. *See supra* note 9.

[34] This characterization of Defendants' counterclaim under the GPA is based on the Court's reading of the cited provisions of the GPA. (*See* ECF No. 67-10.) Moreover, Plaintiff's brief likewise characterized Defendants' counterclaim in this manner without objection by Defendants in their responsive brief. (*See* ECF No. 43 at 22-23; ECF No. 64 at 7-12.)

that they have been damaged "in an amount presently valued in excess of over one million dollars" for the alleged breaches of the GPA. (*Id.* ¶ 121.)

Plaintiffs move for summary judgment as to Count I of the Answer on four grounds: (1) the Sublease was not breached due to abandonment of the vascular center premises by Defendants; (2) the non-competition provisions of the GPA are unenforceable because Defendants materially breached the GPA; (3) the non-competition provisions of the GPA are unenforceable due to Pennsylvania public policy; and (4) the non-competition provisions of the GPA are unenforceable because Defendants' business no longer exists. (*See* ECF No. 43 at 22-31.) The Court addresses each of these contentions in turn.

### ii. Disputes of Material Fact Remain Regarding Abandonment

Plaintiffs argue that, regardless of any termination provision in the Sublease, they were entitled to immediately repossess the premises because Defendants abandoned the property in December 2014. (*See* ECF No. 43 at 30.) To support their assertion that Defendants abandoned the vascular center premises, Plaintiffs suggest that Defendants removed all of their supplies, ceased conducting business, terminated all employees, and discontinued rent payments. (*Id.* at 30-31.) Plaintiffs interpret these purportedly undisputed facts to mean that Defendants intended to abandon the property and took actions to effectuate that abandonment. (*Id.* at 31.) Plaintiffs' argument fails for two primary reasons.

First, the breaches of the Sublease alleged by Defendants in the Answer occurred prior to Defendants' alleged abandonment of the property in December 2014. Defendants assert that Plaintiffs violated the Sublease's 120-day-notice termination provision by sending Defendants a letter on November 21, 2014 that terminated the lease effective December 1, 2014 and wrongfully

excluded Defendants from the property by changing the locks before or in November 2014. (*See* ECF No. 7 at ¶¶ 114-12; ECF No. 42 ¶ 119; ECF No. 63 ¶¶ 119, 140-44; ECF No. 64 at 13.) Even if Defendants abandoned the property, these underlying breaches occurred prior to this alleged abandonment in December 2014.

Second, as correctly noted by Plaintiffs, under Pennsylvania law, "abandonment of the premises by the tenant is a relinquishment which, as a matter of law, justifies immediate repossession by the landlord." *Turnway Corp. v. Soffer*, 336 A.2d 871, 877 (Pa. 1975). Furthermore, in instances where a tenant abandons the premises, the landlord has the right to reenter without the aid of legal process. *Ferrick v. Bianchini*, 69 A.3d 642, 655 (Pa. Super. Ct. 2013). However, a determination of abandonment requires a finding of both "(1) an intention to abandon and (2) conduct by which the intention is carried into effect." *Id.*

The facts necessary to support the first of these two elements is disputed. Based on the facts presented to the Court, a reasonable jury could, among other conclusions, determine that Defendants were wrongfully excluded from the premises when the locks were changed or when the lease termination letter was sent. Thus, it is disputed whether Defendants possessed the intention to abandon because a reasonable factfinder could conclude that, rather than possessing an intent to abandon the premises, Defendants were wrongfully required to abandon the premises against their will. The Court denies Plaintiffs' request for summary judgment as to Defendants' counterclaim for breach of the Sublease.

### iii. Disputes of Material Fact Remain Regarding the Materiality of Breach under Maryland Law

In support of their argument for the dismissal of Defendants' counterclaim for breach of the GPA, Plaintiffs, citing numerous authorities,[35] argue that the provisions they allegedly breached are not enforceable under Maryland law[36] because Defendants materially breached the GPA. (ECF No. 43 at 21-22.) Plaintiffs identify Defendants' alleged material breach as failing to timely compensate Plaintiffs and failing to compensate Plaintiffs at all after November 2014. (*Id.* at 24.)

Plaintiffs argument may eventually convince a jury. However, the underlying facts regarding the materiality of Defendants' breach(es) are in dispute. Maryland case law clearly establishes that whether a breach is material is ordinarily a question of fact. *Barufaldi v. Ocean City, Chamber of Commerce, Inc.*, 7 A.3d 643, 656 (Md. Ct. Spec. App. 2010) (citing *Speed v. Bailey*, 139 A. 534, 537 (Md. 1927)). The present case is not an exception; a jury must decide whether Defendants' actions and/or omissions were material breaches of the GPA.

As discussed in regard to Count 4 of the Complaint, some material facts are not in dispute, including the nonpayment of any Plaintiffs after November 28, 2014 and the practical end of the

---

[35] *See Jay Dee/Mole Joint Venture v. Mayor & City Council of Baltimore*, 725 F. Supp. 2d 513, 526 (D. Md. 2010); *Barufaldi v. Ocean City, Chamber of Commerce, Inc.*, 7 A.3d 643, 656 (Md. Ct. Spec. App. 2010); *CytImmune Scis., Inc. v. Paciotti*, No. PWG-16-1010, 2016 WL 3218726, at *3 (D. Md. June 10, 2016); *Maternal-Fetal Med. Assocs. Of Md., LLC v. Stanley-Christian*, No. 0967 Sept. Term 2009, 2013 WL 3941970, at *7 (Md. Ct. Spec. App. July 24, 2013); *Jorgensen v. United Commc'ns Grp. Ltd. P'ship*, No. 8:10-CV-00429-AW, 2011 WL 3821533, at *10 (D. Md. Aug. 25, 2011).

[36] The GPA's terms are governed by Maryland law. (*See* ECF No. 45 at 14; ECF No. 60 at 16.) Neither party contests the application of Maryland law to the terms of the GPA, and the Court holds that this contractual choice of law provision in the GPA is enforceable because WVI is a Maryland LLC, making Maryland law a reasonable choice of law by the parties. *See Kruzits v. Okuma Mach. Tool, Inc.*, 40 F.3d 52, 55 (3d Cir. 1994) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 497 (1941)); *Schifano v. Schifano*, 471 A.2d 839, 843 n.5 (Pa. Super. Ct. 1984)); Restatement (Second) of Conflict of Laws § 187 (Am. Law. Inst. 1971).

employment relationship between Plaintiffs and Defendant in November 2014. (*See* ECF No. 42 ¶¶ 106, 117-18, 120; ECF No. 63 ¶¶ 106, 117-18, 120; ECF No. 46 ¶¶ 8-11; ECF No. 61 ¶¶ 8-11.)

However, many other material facts remain in dispute as to the opposing claims by Plaintiffs and Defendants regarding breach(es) of the GPA, including (1) whether and to what degree payments were timely paid or not paid up to November 2014; (2) whether JHVC breached the GPA by seemingly discontinuing the provision of services under the GPA in November 2014, therein excusing non-payment for the 90 days following JHVC's notice of termination on November 3, 2014; (3) whether JHVC breached the GPA, therein not implicating Article 8.5 of the GPA to justify payment for one month of service; and (4) whether and, if so, to what extent JHVC wrongfully competed with Defendants business such that JHVC was not harmed by WVI's potentially unjustified lack of payment under the GPA.

These disputed issues regarding the materiality of the Defendants' breach(es) of the GPA present a genuine and triable issue of fact. Thus, the Court denies Plaintiffs request for summary judgment as to Count I of the Answer.

**iv.**     **Plaintiffs Failed to Present Facts to the Court to Support their Argument that Pennsylvania Public Policy Invalidates the GPA's Non-Competition Provisions**

Plaintiffs next argue that they are entitled to summary judgment as to Count I of the Answer because the non-competition provisions in the GPA violate Pennsylvania public policy and, thus, are unenforceable. (ECF No. 43 at 26-31.)

The Court fully recognizes the great scrutiny with which Pennsylvania courts[37] approach physician non-competition covenants because of the immense value of physicians' services to public welfare. *See New Castle Orthopedic Assocs. v. Burns*, 392 A.2d 1338 (Pa. 1978); *WellSpan Health v. Bayliss*, 869 A.2d 990 (Pa. Super. Ct. 2005). However, the Court also recognizes that Pennsylvania law "requires a determination of the 'quantitative sufficiency of physicians practicing in the restricted area.'" *Wellspan*, 869 A.2d at 1000 (citing *New Castle*, 392 A.2d at 1387).

In considering whether the interests of the public outweigh an employer's interest in enforcing a non-competition covenant, the Pennsylvania Supreme Court directs courts to look for evidence of long delays experienced by patients attempting to schedule appointments and the lack of physicians within the area to which the non-competition covenant applies. *New Castle*, 392 A.2d at 1387. The Pennsylvania Superior Court further provides that courts "must evaluate the likelihood that consumers could be adequately served by existing health care providers, including alternate health care providers that the employer has on staff or can readily hire to meet patient demand." *WellSpan*, 869 A.2d at 1000. "When patient demand in the geographical region in question exceeds the ability of appropriately trained physicians to provide expeditious treatment, then the public interest predominates over the right to enforce a non-competition covenant by injunction." *Id.* at 100 (citing *West Penn Specialty MSO, Inc. v. Nolan*, 737 A.2d 295, 300-01 (Pa. Super. Ct. 1999)).

Plaintiffs have presented no facts to the Court to show that the Johnstown area suffers from a shortage of physicians or vascular services. Plaintiffs' brief cursorily concludes, without

---

[37] For the purposes of deciding Plaintiffs' Motion for Summary Judgment, the Court is assuming *arguendo* that Pennsylvania public policy applies to the non-competition provisions of the GPA.

citation, that Hadeed serves a "rural area largely devoid of specialty medical practices and/or physicians" and that "the Johnstown, Pennsylvania geographic region has a high population of individuals who are in need of vascular intervention by a surgeon with Dr. Hadeed's credentials." (ECF No. 43 at 29.)  These assertions may very well be true.  However, when asking the Court to grant summary judgment, parties must support their assertions by "citing to particular parts of materials in the record."  Fed. R. Civ. P. 56(c)(1)(a).  Plaintiffs have failed to do so.  And, the Court's independent review of the record has likewise not revealed undisputed facts necessary to show that the public interest predominates over Defendants' right to enforce the non-competition provisions of the GPA.

The Court certainly does not question the value of Hadeed's services to the community.[38] Nor does the Court offer any opinion as to sufficiency of physicians and providers of vascular services in the Johnstown area.  Yet, the record is devoid of facts necessary to render the noncompetition provisions of the GPA unenforceable under the Pennsylvania case law cited *supra*.  Thus, the Court cannot grant Plaintiffs' request to dismiss Count I of the Answer on the basis of Pennsylvania public policy.

> **v. Disputes of Material Fact Remain Regarding Whether AVR-Johnstown Ceased Operations Due to the Wrongful Actions of Plaintiffs**

Lastly, Plaintiffs, citing *Wound Care Centers, Inc. v. Catalane*, No. CIV.A 10-336, 2011 WL 553875 (W.D. Pa. Feb. 8, 2011) (Conti, C.J.) suggest that the non-competition provisions of the GPA cannot be enforced because the medical center in question no longer exists, making it

---

[38] To the contrary, the Court observes that all parties directly attribute the immediate success of AVR-Johnstown to Hadeed and recognize him as "one of the best" physicians.  (ECF No. 42 ¶ 70; ECF No. 46 ¶ 6; ECF No. 61 ¶ 5; ECF No. 63 ¶ 70.)

impossible to measure the geographic scope of the covenant and removing the underlying purposes of the covenant. (ECF No. 43 at 28-29.)

Yet, the undisputed facts before the Court show that Plaintiffs changed the locks on the vascular center premises. (*See* ECF No. 42 ¶ 120; ECF No. 63 ¶ 120.) And, based on the facts presented to the Court, reasonable jurors could come to differing conclusions as to whether Defendants were wrongfully excluded from the business such that they could no longer participate in the business venture and as to whether Defendants or Plaintiffs materially breached their contractual obligations first. Unlike in *Wound Care*, a vascular center here admittedly continued to function in the same physical premises as AVR-Johnstown; Defendants, however, were, as practical matter, no longer involved in the business. (*See* ECF No. 46 ¶¶ 8-11; ECF No. 61 ¶¶ 8-11). Therefore, the parties and reasonable interpretations of the facts differ as to whether the entity that continued providing vascular services was JHVC or AVR-Johnstown and, if it was JHVC, whether AVR-Johnstown ceased operations because of Plaintiffs' wrongdoing. And, therefore, Plaintiffs' request for the summary judgment on the basis of *Wound Care*'s "nonexistence" theory is denied.

### vi.    Summary of the Court's Holding on Count I

Beyond the prior dismissal as to Hadeed and Choudry, *see supra* Part VI.A.3, Plaintiffs' Motion for Summary Judgment (ECF No. 40) as to Count I of the Answer is denied. Thus, Count I of the Answer remains as a counterclaim under the Sublease and the GPA by AVR-Johnstown, AVR-Management, and WVI against JHVC.[39]

---

[39] The Court notes that Plaintiffs did not provide argument in favor of or ask the Court to grant summary judgment such that Defendants other than Choudry are dismissed from the counterclaims under the

## 2. Count IV: Unjust Enrichment

In Count IV of the Answer, Defendants allege that Plaintiffs wrongfully received and retained benefits and did not pay value to Defendants for the receipt of such benefits. (ECF No. 7 at ¶¶ 129-132.) In a footnote in their Brief in Support of Plaintiffs' Motion for Summary Judgment, Plaintiffs cursorily ask the Court to dismiss Count IV because "Defendants have not, and cannot, set forth evidence of a benefit or benefits which they have conferred upon Plaintiffs." (ECF No. 43 at 22 n.192.)

The Court disagrees. Defendants have directed the Court to evidence in the record sufficient to create a triable issue of fact. The facts before this Court necessary to sustain Count IV of the Answer are disputed, but they are sufficient for Count IV to proceed.

To establish a claim for unjust enrichment under Pennsylvania law, a plaintiff must allege facts demonstrating (1) a benefit conferred on the defendant by the plaintiff, (2) appreciation of such benefit by the defendant, and (3) acceptance and retention of such benefit under circumstances such that it would be inequitable for the defendant to retain the benefit without payment to the plaintiff. *iRecycleNow.com v. Starr Indemnity & Liability Company*, 674 F. App'x 161, 162 (3d Cir. 2017) (citing *AmeriPro Search, Inc. v. Fleming Steel Co.*, 787 A.2d 988, 991 (Pa. Super. Ct. 2001)).[40] Plaintiffs' cursory argument in favor of summary judgment as to Count IV fails to

---

Sublease or the GPA. The Court declines to consider whether all three remaining Defendants are appropriate counter-claimants under both of these agreements *sua sponte*.

[40] "The most significant element of the doctrine is whether the enrichment of the defendant is unjust; the doctrine does not apply simply because the defendant may have benefited as a result of the actions of the plaintiff." *iRecycleNow.com v. Starr Indemnity & Liability Company*, 674 F. App'x 161, 162 (3d Cir. 2017) (citing *AmeriPro Search, Inc. v. Fleming Steel Co.*, 787 A.2d 988, 991 (Pa. Super. Ct. 2001)). Rather, the plaintiff "must show that the party against whom recovery is sought either wrongfully secured or passively received a benefit that would be unconscionable for her to retain." *Id.* (citing cases).

cite these elements, relate its argument to these elements, or to otherwise elaborate why the Court should grant summary judgment as to Count IV. However, Plaintiffs appear to be questioning whether, at least, the first two of these elements are adequately shown by the material in the record.

Defendants have presented evidence that they developed a unique, proprietary, and confidential business model and/or developed innovative medical techniques that they shared with Plaintiffs as part of their business relationship. (*See* ECF No. 46 ¶¶ 3-5.) And, after disputes involving the various contracts between the parties arose and the practical end of Plaintiffs and Defendants' business relationship, it is undisputed that Plaintiffs continued to run a profitable business at the same physical location as AVR-Johnstown without Defendants' practical involvement or receipt of payment under the various agreements. (ECF No. 46 ¶¶ 8-11; ECF No. 61 ¶¶ 8-11.) JHVC reported a "gross profit of $5 million and a net income of $2 million" in 2015, and Hadeed took a salary of "approximately $900,000 instead of his $450,000 salary under the GPA." (ECF No. 46 ¶ 10; ECF No. 61 ¶ 10.) These facts in the record are sufficient to suggest that Defendants may have conferred the benefit of their unique business model and/or medical techniques and other benefits related to their prior relationship with the vascular center facilities such that it was unjust for Plaintiffs to retain these benefits due to Plaintiffs' purportedly wrongful conduct during and after the parties' business relationship.

Plaintiffs dispute these underlying facts and disagree with an interpretation of these facts that characterizes Plaintiffs as having acted wrongfully, having received any actual benefit from Defendants, and having succeeded in their ongoing business at the expense of Defendants. (*See, e.g.*, ECF No. 61 ¶¶ 3-5.) Yet, these facts are in dispute.

Accordingly, the Court denies Plaintiffs' Motion for Summary Judgment (ECF No 40) as to this counterclaim. Count IV of the Answer remains as a counterclaim for unjust enrichment by AVR-Johnstown, AVR-Management, and WVI against JHVC and Hadeed.[41]

### 3. Count V: Breach of Fiduciary Duty/the Implied Covenant of Good Faith and Fair Dealing

In Count V of the Answer, Defendants allege that as "shareholders" of "AVR," Plaintiffs owed fiduciary duties to "AVR" and breached those duties because they "negligently and/or intentionally failed to act in good faith and solely for the benefit of AVR." (ECF No. 7 at ¶ 134.) Defendants assert that these non-specific alleged breaches caused Defendants to be damaged "in an amount presently valued in excess of over one million dollars" and asks for attorneys' fees and costs. (*Id.* at ¶ 136.)

Beyond its general lack of clarity and specificity, Count V of the Answer first requires the Court to charitably deduce the identity of the counterclaimant referred to as "AVR." As highlighted by Plaintiffs, the Answer clearly establishes that, within the Answer, the term "AVR" refers to AVR-Management. (*See id.* at ¶ 92.) Thus, based on the terminology clearly established by the Answer itself, the plain text of Count V alleges that Plaintiffs are shareholders of AVR-Management and breached fiduciary duties owed to AVR-Management. Based on the pleadings and the record before the Court, such a claim would be baseless and borderline absurd; Plaintiffs are not shareholders or owners of AVR-Management, and Defendants have offered no evidence

---

[41] As discussed *supra*, while Hadeed was dismissed from the present action for all other purposes, he remains as a Counter-Defendant to the unjust enrichment action because this counterclaim is an equitable claim that need not rely on Hadeed being a party to one of the agreements in this case. The Court also notes that Plaintiffs did not provide argument in favor of or ask the Court to grant summary judgment such that Defendants other than Choudry are dismissed from Count IV. The Court declines to consider whether all three remaining Defendants are appropriate counter-claimants *sua sponte*.

or authority to suggest that Plaintiffs owe fiduciary duties to AVR-Management. (*See* ECF No. 43 at 33 n. 216.) Rather than interpreting Count V literally, the Court can only assume that, for the purposes of Count V, the Answer suddenly changed its established terminology such that "AVR" now refers to AVR-Johnstown—an entity which, under the Operating Agreement, JHVC is a 55% owner and AVR[42] is a 45% owner. (ECF No. 46 ¶ 17; ECF No. 61 ¶ 17.)

However, even this favorable interpretation of Count V quickly runs afoul of the express terms of AVR-Johnstown's Operating Agreement. As Plaintiffs emphasize, the Operating Agreement provides:

> 4.10 <u>Fiduciary Duty</u>. Any duties (including fiduciary duties) of a Covered Person to the Company or to any other Covered Person that would otherwise apply at law or in equity are hereby eliminated to the fullest extent permitted under the Act and all other applicable law; provided, that (i) the foregoing shall not eliminate the obligation of each Covered Person to act in compliance with the express terms of this Agreement and (ii) the foregoing shall not be deemed to eliminate the implied contractual covenant of good faith and fair dealing.

(ECF No. 1-6 at 13.) Article 4.7 of the Operating Agreement further defines "Covered Person" as a "current or former Member or Manager." (*Id.*) Thus, by the terms of the Operating Agreement, even if Count V of the Answer is construed to be brought by AVR-Johnstown, all fiduciary duties are "eliminated to the fullest extent permitted" under the Delaware Limited Liability Company Act. (*Id.*)

The Delaware Limited Liability Company Act and Delaware law permits an LLC's operating agreement to greatly restrict or even eliminate fiduciary duties. *See* 6 Del. Code

---

[42] As established *supra*, in the Courts' terminology, "AVR," by itself, refers to Advanced Vascular Resources, LLC, which is not a party to the present action, but is an owner of AVR-Johnstown and AVR-Management. (ECF No. 42 ¶ 9; ECF No. 63 at ¶ 9.) Choudry was the Chief Medical Officer and 90% owner of AVR. (ECF No. 42 ¶ 10; ECF No. 63 ¶ 10.)

Ann. tit. 6, § 18-1101(c); *Kyle v. Apollomax, LLC*, 987 F. Supp. 2d 519, 524 (D. Del. 2013)

("Delaware's Limited Liability Company Act places a premium on the parties' freedom

of contract, and the fiduciary duties of any person bound by an LLC agreement 'may be

expanded or restricted or eliminated by provisions in the limited liability company

agreement.'") (quoting Del. Code Ann. tit. 6, § 18-1101(c)); *Abry Partners V, L.P. v. F & W*

*Acquisition LLC*, 891 A.2d 1032, 1063 (Del. Ch. 2006) ("In the alternative entity context,

where it is more likely that sophisticated parties have carefully negotiated the governing

agreement, the General Assembly has authorized even broader exculpation, to the extent

of eliminating fiduciary duties altogether."); *Fisk Ventures, LLC v. Segal*, No. CIV.A. 3017-

CC, 2008 WL 1961156, at *11 (Del. Ch. May 7, 2008) (dismissing claims for breach of

fiduciary duties where "the LLC Agreement, in accordance with Delaware law, greatly

restricts or even eliminates fiduciary duties); *Olson v. Halvorsen*, 986 A.2d 1150, 1160 (Del.

2009) (emphasizing the guiding principle of allowing for the maximum freedom of

contract in limited liability company agreements under the Delaware Limited Liability

Company Act). Therefore, the Court holds that the Operating Agreement's elimination

of fiduciary duties is enforceable and that these duties are eliminated in regard to the

current and former members and managers of AVR-Johnstown.

In their Memorandum of Law in Opposition to Plaintiffs' Motion for Summary

Judgment, Defendants concede that the Operating Agreement precludes their breach of

fiduciary duty claim and "withdraw their breach of fiduciary duty claim." *See* ECF No.

64 at 14.) However, Defendants purport to "continue to assert that by converting the

business and thereby frustrating the Operating Agreement of its essential purpose,

Plaintiffs breached the implied covenant of good faith and fair dealing, which was not contractually waived." (*Id*. at 14.)  In support of their argument, Defendants cite a decision by the Delaware Court of Chancery and a provision of the Delaware Limited Liability Company Act to demonstrate that the implied covenant of good faith and fair dealing cannot be eliminated by an operating agreement.  (*Id*. at 14.) (citing *Cont'l Ins. Co. v. Rutledge & Co.*, 750 A.2d 129, 1234 (Del. Ch. 2000); Del. Code. Ann. tit. 6, § 18-1101(c)).

The Court agrees that Delaware law does not permit the implied contractual covenant of good faith and fair dealing to be eliminated in a limited liability company agreement.[43]  However, Defendants never brought such a counterclaim in their Answer, and they cannot amend their Answer to add a new counterclaim via their Memorandum of Law in Opposition to Plaintiffs' Motion for Summary Judgment.

There is a fundamental distinction between the counterclaim alleged in Count V of the Answer and the new, never-before-alleged counterclaim sought to be added by Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion for Summary Judgment.  The former is a breach of fiduciary duty claim arising out of principles of business entity law.  *See Stone v. Ritter*, 911 A.2d 362 (Del. 2006).  The latter is an implied covenant arising out of contract law that is used to infer contract terms "when the party asserting the implied covenant proves that the other party has acted arbitrarily or

---

[43] Even beyond the *Continental Insurance* decision by the Delaware Court of Chancery cited by Defendants, the Delaware Supreme Court recently held that the implied contractual covenant of good faith and fair dealing cannot be eliminated by a contract in the context of a limited partnership.  *See Dieckman v. Regency GP LP*, 155 A.3d 358, 366-67 (Del. 2017).

unreasonably, thereby frustrating the fruits of the bargain that the asserting party reasonably expected." *See Dieckman v. Regency GP LP*, 155 A.3d 358, 367 (Del. 2017).

This fundamental distinction between the counterclaim actually pleaded and the counterclaim Defendants seek to add is revealed by Defendants' own citations. The *Continental Insurance* case cited by Defendants clearly identifies the implied covenant of good faith and fair dealing as "contractual," *see Cont' Ins.*, 750 A.2d at 1234, and Section 18-1101(c) provides that "the limited liability company agreement may not eliminate the implied **contractual** covenant of good faith and fair dealing." Del. Code Ann. tit. 6, § 18-1101(c) (emphasis added). The inclusion of "contractual" was no accident; this modifier distinguishes between two similarly-named, but fundamentally distinct theories in two different fields of law.

If the Court construes Defendants' request in their Memorandum of Law in Opposition to Plaintiffs' Motion for Summary Judgment as a counterclaim for the breach of the fiduciary duty of good faith, then the counterclaim fails because it is waived under the Operating Agreement, as addressed *supra*.[44] If the Court construes Defendants' request as deriving from the implied contractual covenant of good faith and fair dealing, then this request fails because Defendants are alleging a counterclaim for the first time in their Memorandum of Law in Opposition to Plaintiffs' Motion for Summary Judgment.

---

[44] The Court further notes that the Delaware Supreme Court has extensively detailed the doctrinal nature of the business-entity-law-based fiduciary duty of good faith and established that, unlike the fiduciary duties of care and loyalty, the fiduciary duty of good faith is not a standalone or independent fiduciary duty. *See Stone v. Ritter*, 911 A.2d 362, 369-70 (Del. 2006). Therefore, even beyond the elimination of fiduciary duties in the Operating Agreement, Delaware law does not recognize a standalone claim for a breach of fiduciary duties for lack of good faith. *See id.*

Defendants can argue that Plaintiffs "convert[ed] the business and thereby frustrat[ed] the Operating Agreement" as a factual issue in regard to Count I or, perhaps, even Count IV of the Answer. Yet, Defendants cannot now add a new counterclaim and certainly cannot do so through a sentence in a responsive brief to Plaintiff's Motion for Summary Judgment.[45]

Consequently, the Court grants Plaintiffs' Motion for Summary Judgment (ECF No. 40) as to Count V of the Answer and dismisses it with prejudice.

## VII. Conclusion

For the foregoing reasons, Plaintiffs' Motion for Summary Judgment (ECF No. 40) is granted in part and denied in part, and Defendants' Motion for Judgment on the Pleadings and Motion for Summary Judgment on Plaintiffs' Complaint (ECF No. 44) is granted in part and denied in part.

To summarize the result of the Court's disposition of these motions in regard to the Complaint, Count 1 remains as a claim brought by only JHVC against only AVR-Management and only as to breach(es) of the Operating Agreement regarding mismanagement;[46] Count 2 remains as a remedy dependent on Count 1; Count 3 is dismissed in its entirety for lack of jurisdiction; Count 4 remains as a claim brought by only JHVC against only WVI;[47] and Count 5 was withdrawn by Plaintiffs and is dismissed in its entirety.

---

[45] The Court adds that Defendants moved to amend their Answer (ECF No. 47), which the Court denied in its Memorandum Order and Opinion of September 26, 2017 (ECF No. 77). But, even in this denied motion to amend, Defendants did not seek to amend an existing claim or add a new count based on the implied contractual covenant of good faith and fair dealing.
[46] Additionally, Plaintiffs' request for attorneys' fees as to Count 1 is dismissed.
[47] Additionally, Plaintiffs' request for attorneys' fees as to Count 4 is dismissed.

In regard to the counterclaims of the Answer, Count I remains as a counterclaim under the Sublease and the GPA by AVR-Johnstown, AVR-Management, and WVI against JHVC; Count II was withdrawn and is dismissed in its entirety; Count III was withdrawn and is dismissed in its entirety; Count IV remains as a counterclaim for unjust enrichment by AVR-Johnstown, AVR-Management, and WVI against JHVC and Hadeed; and Count V is dismissed in its entirety due to the elimination of fiduciary duties by the Operating Agreement.

A corresponding order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SAMIR HADEED, MD, and | ) | Case No. 3:15-cv-22 |
| JOHNSTOWN HEART AND VASCULAR | ) | |
| CENTER, INC., | ) | JUDGE KIM R. GIBSON |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ADVANCED VASCULAR RESOURCES | ) | |
| OF JOHNSTOWN, LLC, AVR | ) | |
| MANAGEMENT, LLC, WASHINGTON | ) | |
| VASCULAR INSTITUTE, LLC, and | ) | |
| MUBASHAR CHOUDRY, MD, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

**NOW**, this 30th day of October, 2017, upon consideration of Plaintiffs' Motion for

Summary Judgment (ECF No. 40) and Defendants' Motion for Judgment on the Pleadings and

Motion for Summary Judgment on Plaintiffs' Complaint (ECF No. 44) and for the reasons set forth

in the Memorandum Opinion accompanying this Order, it is **HEREBY ORDERED** that Plaintiffs'

Motion for Summary Judgment (ECF No. 40) is **GRANTED IN PART** and **DENIED IN PART**,

and Defendants' Motion for Judgment on the Pleadings and Motion for Summary Judgment on

Plaintiffs' Complaint (ECF No. 44) is **GRANTED IN PART** and **DENIED IN PART**.

As detailed in the accompanying Memorandum Order, it is **ORDERED** that Plaintiffs and

Defendants' motions are **GRANTED IN PART** and **DENIED IN PART** as follows:

- Plaintiffs' Motion and Defendants' Motion are granted such that all claims and

  counterclaims brought by or against Choudry are dismissed with prejudice.

- Plaintiffs' Motion and Defendants' Motion are granted such that, with the exception of Count IV of the Answer, all claims and counterclaims brought by or against Hadeed are dismissed with prejudice.

- Defendants' Motion is granted such that Count 1 of the Complaint remains as a claim brought by only JHVC against only AVR-Management and only as to breach(es) of the Operating Agreement regarding mismanagement. Defendants' Motion is granted regarding Plaintiffs' request for attorneys' fees as to Count 1 of the Complaint and this request for attorneys' fees is dismissed with prejudice. Otherwise, Defendants' Motion regarding Count 1 is denied. Plaintiffs' Motion as to Count 1 is denied.

- Defendants' Motion is granted such that Count 2 of the Complaint remains as a remedy dependent on Count 1. Otherwise, Defendants' Motion regarding Count 2 is denied. Plaintiffs' Motion as to Count 1 is denied.

- Defendants' Motion is granted such that Count 3 of the Complaint is dismissed in its entirety with prejudice. Plaintiffs' Motion as to Count 3 is denied.

- Defendants' Motion is granted such that Count 4 of the Complaint remains as a claim brought by only JHVC against only WVI under the GPA. Defendants' Motion is granted regarding Plaintiffs' request for attorneys' fees as to Count 4 and this request for attorneys' fees is dismissed with prejudice. Otherwise, Defendants' Motion regarding Count 4 is denied. Plaintiffs' Motion as to Count 4 is denied.

- Defendants' Motion is granted such that Count 5 of the Complaint is dismissed in its entirety with prejudice. Plaintiffs' Motion as to Count 5 is denied.

- Plaintiffs' Motion is granted such that Count I of the Answer remains as a counterclaim under the Sublease and the GPA by AVR-Johnstown, AVR-Management, and WVI against JHVC. Otherwise, Plaintiffs' Motion regarding Count I of the Answer is denied.

- Plaintiffs' Motion is granted such that Count II of the Answer is dismissed in its entirety with prejudice.

- Plaintiffs' Motion is granted such that Count III of the Answer is dismissed in its entirety with prejudice.

- Plaintiffs' Motion is granted such that Count IV of the Answer remains as a counterclaim for unjust enrichment by AVR-Johnstown, AVR-Management, and WVI against JHVC and Hadeed. Otherwise, Plaintiffs' Motion regarding Count IV of the Answer is denied.

- Plaintiffs' Motion is granted such that Count V of the Answer is dismissed in its entirety with prejudice.

BY THE COURT:

**KIM R. GIBSON**
**UNITED STATES DISTRICT JUDGE**