## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SAMIR HADEED, MD, and** | ) | **Case No. 3:15-cv-22** |
| **JOHNSTOWN HEART AND VASCULAR** | ) | |
| **CENTER, INC.,** | ) | **JUDGE KIM R. GIBSON** |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **ADVANCED VASCULAR RESOURCES** | ) | |
| **OF JOHNSTOWN, LLC; AVR** | ) | |
| **MANAGEMENT, LLC; WASHINGTON** | ) | |
| **VASCULAR INSTITUTE, LLC; and** | ) | |
| **MUBASHAR CHOUDRY, MD,** | ) | |
| | ) | |
| **Defendants.** | ) | |

### MEMORANDUM OPINION

### I.    Introduction

Pending before the Court is Defendant Advanced Vascular Resources of Johnstown, LLC ("AVR-Johnstown"), Defendant AVR Management, LLC ("AVR-Management"), and Defendant Washington Vascular Institute, LLC's ("WVI") Motion for Reconsideration (ECF No. 96). This Motion has been fully briefed and is ripe for disposition. (*See* ECF Nos. 96, 97, 98, 99.)

This case arises from disputes over the operation of a vascular services center located in Johnstown, Pennsylvania. In short, Plaintiffs Samir Hadeed, M.D. ("Dr. Hadeed") and Johnstown Heart and Vascular Center ("JHVC") entered into a series of contracts with Defendants by which Plaintiffs would operate the "medical side" of the vascular services center and Defendants would manage the "business side" of the center. The present case ensued because Plaintiffs and Defendants argue that the other side failed to comply with the duties imposed by these contracts.

1

After granting in part and denying in part (ECF No. 78) Plaintiffs' Motion for Summary

Judgment (ECF No. 40) and Defendants' Motion for Judgment on the Pleadings and Motion for

Summary Judgment on Plaintiffs' Complaint (ECF No. 44), this Court ordered the parties to brief

the issues of (1) whether this Court possessed subject matter jurisdiction over this case and (2)

whether AVR-Johnstown could be dismissed to restore complete diversity (ECF No. 88). After

the parties briefed these issues (ECF Nos. 89, 92), the Court dismissed the case for lack of subject

matter jurisdiction (ECF No. 95).[1] Defendants now request reconsideration of this dismissal.

For the reasons that follow, Defendants' Motion for Reconsideration (ECF No. 96) is

**GRANTED**.

**II. Background[2]**

The present case arises from various disputes relating to the operation of AVR-

Johnstown—a limited liability company created to operate and manage a vascular center in

Johnstown, Pennsylvania. (ECF No. 78 at 4.)

Advanced Vascular Resources, LLC ("AVR")[3] was formed by Mubashar Choudry, M.D.

("Dr. Choudry") to develop vascular facilities on a national level. (*Id.*) Dr. Hadeed and JHVC,

the entity through which Dr. Hadeed's cardiovascular practice is conducted, reached an

agreement with AVR to open a vascular lab in Johnstown, which would become AVR-Johnstown.

---

[1] Before the Court dismissed the case, the case was referred to the Bankruptcy Court. (ECF No. 93.) This
referral will be discussed in further detail below.

[2] This Background is an abbreviated version of the factual discussion in this Court's Memorandum Opinion
(ECF No. 78) on Plaintiffs' Motion for Summary Judgment and Defendants' Motion for Judgment on the
Pleadings and Motion for Summary Judgment. Because the parties are familiar with this case's extensive
and complicated factual history, the Court will not go into great detail here.

[3] AVR is not a party to the present action but is an owner of AVR-Johnstown and AVR-Management. (ECF
No. 78 at 4 n.2.)

(*Id.*) To foster the development and operation of vascular facilities across the country, Dr. Choudry also formed AVR-Management to oversee the management of AVR's vascular labs and WVI to oversee the compensation for JHVC. (*Id.*) Numerous contracts were executed to govern the relationships between the various parties. (*Id.* at 4-5.)

After opening, AVR-Johnstown was an immediate success. (*Id.* at 5.) However, complications soon arose with cash flow, timely bill paying, insurance credentialing, and employee salary and benefit payments. (*Id.* at 5-6.)

After encountering these problems, JHVC terminated some of the parties' agreements. (*Id.* at 6-7.) Shortly thereafter, the parties' business relationship ended as a practical matter. (*Id.*) Plaintiffs changed the locks on the vascular center premises and ran a profitable business at the same physical location without Defendants' meaningful involvement. (*Id.*)

Plaintiffs then initiated this lawsuit by filing their Complaint on January 23, 2015. (ECF No. 1.) In essence, the Complaint alleged severe mismanagement of AVR-Johnstown by Defendants. (*See id.* ¶¶ 44-64.) The Complaint is divided into five counts: (1) breach of contract based on Defendants' mismanagement of AVR-Johnstown; (2) an accounting; (3) partition/dissolution of AVR-Johnstown; (4) breach of contract based on Defendants' failure to pay Plaintiffs' wages; and (5) fraudulent misrepresentation. (*Id.*)

In response, Defendants filed their Answer on March 16, 2015, denying all liability and bringing five counterclaims against Plaintiffs, namely, (1) breach of contract based on a sublease between JHVC and AVR-Johnstown (the "Sublease") and JHVC's Group Physician Agreement (the "GPA") with WVI; (2) tortious interference with contractual relations; (3) conversion; (4) unjust enrichment; and (5) breach of fiduciary duty. (ECF No. 10 ¶¶ 114-36.)

3

On October 17, 2016, Plaintiffs filed a Motion for Summary Judgment (ECF No. 40) and Defendants filed a Motion for Judgment on the Pleadings and Motion for Summary Judgment on Plaintiff's Complaint (ECF No. 44). After extensive briefing, the Court issued a Memorandum Opinion and Order on these Motions. (ECF No. 78.) While the Court will not give a detailed synopsis of its holding, the Court notes that after deciding the parties' Motions, the following claims remained: (1) JHVC's breach of contract claim based on AVR-Management's mismanagement of AVR-Johnstown in violation of AVR-Johnstown's operating agreement (the "Operating Agreement"), with an accounting as a potential remedy for this breach; (2) JHVC's breach of contract claim against WVI; (3) AVR-Johnstown, AVR Management, and WVI's counterclaim against JHVC for breach of contract; and (4) AVR-Johnstown, AVR Management, and WVI's counterclaim for unjust enrichment against JHVC and Dr. Hadeed. (*See generally id.*) Significantly for purposes of the present Motion, all of Plaintiffs' claims against AVR-Johnstown were dismissed, reducing AVR-Johnstown's involvement in this suit to that of counterclaimant on two counts.[4] (*See* ECF No. 89 at 2; ECF No. 99 at 6.)

After the Court decided the parties' Motions for Summary Judgment, AVR-Johnstown filed for bankruptcy. (*See* ECF No. 93 at 2-3.)

Then, on January 2, 2018, the Court issued a Memorandum Order *sua sponte* noting an apparent lack of complete diversity between the parties and ordering the parties to brief whether this Court possessed subject matter jurisdiction and whether AVR-Johnstown could be dismissed as a dispensable party. (ECF No. 88 at 1-2.) The Court noted that the citizenship of an LLC is

---

[4] Also, Dr. Choudry was dismissed as a Defendant and counterclaimant. Dr. Hadeed was dismissed as a Plaintiff, and the only counterclaim remaining against him is for unjust enrichment.

determined by the citizenship of its members and, thus, AVR-Johnstown's citizenship is determined by the citizenship of its members. (*Id.* at 1.) The Court indicated that JHVC is a member of AVR-Johnstown. (*Id.* at 2.) Because JHVC is a citizen of Pennsylvania, AVR-Johnstown would also be a citizen of Pennsylvania. (*Id.*) Therefore, based on the information before the Court, there would not be complete diversity between Plaintiffs and Defendants. (*Id.*)

In Plaintiffs' Brief Re: Subject Matter Jurisdiction (ECF No. 89), Plaintiffs recognized that the parties were not completely diverse and that the Court thus lacked subject matter jurisdiction. (*Id.* at 4-5.) Further, Plaintiff argued that AVR-Johnstown was indispensable and thus could not be dismissed to save subject matter jurisdiction for the following reasons. (*Id.* at 6.) First, "[t]he crux of this entire litigation is the Parties' attempts to establish and operate" AVR-Johnstown. (*Id.* at 6.) Second, Plaintiffs still had a breach of contract claim against AVR-Management for breach of the Operating Agreement, and "a party has a substantial interest in its own Operating Agreement." (*Id.* at 6.) Third, AVR-Johnstown remained a counterclaimant. If the Court were to dismiss AVR-Johnstown, Plaintiffs would have to defend against the counterclaims asserted by AVR-Management and WVI in federal court and AVR-Johnstown's identical counterclaims in state court. (*Id.* at 7.) Separate lawsuits could give rise to inconsistent outcomes and could result in claim or issue preclusion. (*Id.*) Moreover, AVR-Johnstown would be prejudiced, as it would have to litigate its identical counterclaims separate from the other counterclaimants. (*Id.*) Finally, dismissing AVR-Johnstown would contravene the public interest in settling a dispute all at once. (*Id.* at 8.)

In Defendants' Brief in Response to Order of Court Dated January 2, 2018 (ECF No. 92), Defendants agreed that the Court had no diversity jurisdiction over this matter (*id.* at 2).

5

However, Defendants argued that the Court and, by extension, the Bankruptcy Court, had an independent basis for jurisdiction under 28 U.S.C. § 1334. (*Id.* at 3.) Moreover, Defendants agreed that AVR-Johnstown was indispensable, albeit for different reasons than Plaintiffs. First, Defendants argued that AVR-Johnstown's counterclaims were compulsory and would be waived if not brought in this lawsuit. (*Id.* at 4-5.) Second, AVR-Johnstown's counterclaims were a major asset in AVR-Johnstown's bankruptcy case, which was pending before the U.S. Bankruptcy Court of the Western District of Pennsylvania (the "Bankruptcy Court"). (*Id.* at 5.) Finally, dismissing AVR-Johnstown to create complete diversity would require duplicate work and could subject the parties to inconsistent holdings in federal and state court. (*Id.* at 6.)

The Court issued a Memorandum Order on January 17, 2018 (ECF No. 93). The Court agreed with the parties' conclusion that there was no complete diversity between Plaintiffs and Defendants. (*Id.* at 2.) Furthermore, because "both parties agree[d] that AVR-Johnstown [was] an indispensable party that [could not], by itself, be dismissed from this action to cure the defect in diversity," the Court could not cure the lack of diversity by dismissing AVR-Johnstown. (*Id.*) However, the Court agreed with Defendants that 28 U.S.C. § 1334 provided this Court with a basis for subject matter jurisdiction. (*Id.* at 2-3.) The Court thus referred the case to the Bankruptcy Court. (*Id.* at 3.)

On September 24, 2018, the Bankruptcy Court dismissed AVR-Johnstown's bankruptcy case, finding that the case was commenced without the requisite corporate authority. *See Hadeed v. Advanced Vascular Res. of Johnstown, LLC* (In re *Advanced Vascular Res. of Johnstown, LLC*), 590 B.R. 323, 328 (Bankr. W.D. Pa. Sept. 24, 2018). This Court thus withdrew its referral of the case to the Bankruptcy Court. (ECF No. 94.) On the same day, the Court dismissed this case for lack of

6

subject matter jurisdiction, as there was no longer any basis for jurisdiction under 28 U.S.C. § 1334 and complete diversity was still lacking between the parties. (ECF No. 95.)

Four days after the dismissal, Defendants filed a Motion for Reconsideration and corresponding Brief in Support (ECF Nos. 96, 97). In their Brief, Defendants argue that AVR-Johnstown is now a dispensable party that should be dismissed in order to restore complete diversity. (ECF No. 97 at 3.) Defendants explain that they originally opposed dropping AVR-Johnstown from the case because AVR-Johnstown's counterclaims were a "major asset" in the bankruptcy case. (*Id.* at 4.) Based on the Bankruptcy Court's dismissal of the bankruptcy case, Defendants argue that there was a substantial change in circumstances that justifies relief from judgment under Federal Rule of Civil Procedure 60(b)(6). (*Id.*) Defendants contend that AVR-Johnstown can bring its claims in state court and that the rest of the case is ready for trial—discovery is complete and dispositive motions have been resolved. (*Id.* at 5.) Thus, the Court should not dismiss the entire case after so many resources have been expended by the Court and the parties over the last three-and-a-half years. (*Id.*)

In response, Plaintiffs argue that the stringent Rule 60(b)(6) standard for relief from judgment has not been met, as there has been no showing of "extraordinary circumstances" that warrant relief. (ECF No. 99 at 9-10.) Furthermore, Plaintiffs reassert that AVR-Johnstown is an indispensable party. (*Id.* at 5.) Plaintiffs make the same arguments regarding indispensability as they did in Plaintiffs' Brief Re: Subject Matter Jurisdiction (ECF No. 89). (ECF No. 99 at 6-8.)

## III. Legal Standard

### A. Motion for Reconsideration Pursuant to Rule 60(b)

A motion for reconsideration may be filed under Rule 59(e) or Rule 60(b) of the Federal

Rules of Civil Procedure. Here, Defendants argue pursuant to Rule 60(b).[5] Under this Rule:

> [T]he court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b). Such a motion must be filed within a reasonable time. Fed. R. Civ. P. 60(c).

Here, Defendants argue that relief from the Court's judgment is appropriate for "any

other reason" (ECF No. 96 ¶ 7), namely, the Bankruptcy Court's dismissal of the bankruptcy case

(*id.* ¶¶ 5-7). A court may grant relief under Rule 60(b)(6) "only in 'extraordinary circumstances

where, without such relief, an extreme and unexpected hardship would occur.'" *Norris v. Brooks,*

794 F.3d 401, 404 (3d Cir. 2015) (quoting *Sawka v. Healtheast, Inc.,* 989 F.2d 138, 140 (3d Cir. 1993)).

If such extraordinary circumstances exist, "[a] motion filed pursuant to Rule 60(b) is addressed

to the sound discretion of the trial court guided by accepted legal principles in light of all relevant

---

[5] While Defendants mention Rule 59(e) in their Motion (ECF No. 96 ¶ 7), they do not make any arguments regarding this Rule in their Brief in Support of Motion for Reconsideration (ECF No. 97). Furthermore, Rule 59(e) provides for the filing of "[a] motion to alter or amend a judgment." Fed. R. Civ. P. 59(e). A motion under this Rule "is a 'device to relitigate the original issue' decided by the district court, and [is] used to allege legal error." *United States v. Fiorelli,* 337 F.3d 282, 288 (3d Cir. 2003) (quoting *Smith v. Evans,* 853 F.2d 155, 158-59 (3d Cir. 1988)). Here, Defendants do not allege legal error. Rather, Defendants claim that the determination by the Bankruptcy Court "substantially changed" the present action, justifying relief. (ECF No. 97 at 4.) This claim thus sounds under Rule 60(b), and the Court will not discuss Rule 59(e) further.

circumstances." *Briley v. Holder*, Civil Action No. 3:14-cv-00193, 2015 WL 2238636, at *1 (W.D. Pa. May 12, 2015) (Gibson, J.).

## B. Dismissing an Indispensable Party Under Rule 19(b)

Federal courts have a continuing obligation to assess subject matter jurisdiction and may dismiss a suit at any time upon discovering a lack of subject matter jurisdiction. *Zambelli Fireworks Mfg. Co., Inc. v. Wood*, 592 F.3d 412, 420 (3d Cir. 2010); *Carlsberg Res. Corp. v. Cambria Sav. & Loan Ass'n*, 554 F.2d 1254, 1256 (3d Cir. 1977) ("Despite the failure of any party to address the question of jurisdiction, the district court properly confronted such matter sua sponte. . . . This is so because the federal courts are without power to adjudicate the substantive claims in a lawsuit, absent a firm bedrock of jurisdiction."). Alternatively, instead of dismissing the entire suit, a court may dismiss a dispensable party who destroys diversity jurisdiction pursuant to Federal Rule of Civil Procedure 21. Fed. R. Civ. P. 21; *see Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 832 (1989).

In order to determine whether a party is dispensable and can be dismissed in order to provide the court with subject matter jurisdiction, "the court must determine whether, in equity and good conscience," the action can proceed without the party. Fed. R. Civ. P. 19(b). Four factors are relevant to this determination:

> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
> (2) the extent to which any prejudice could be lessened or avoided by:
> (A) protective provisions in the judgment
> (B) shaping the relief; or
> (C) other measures;
> (3) whether a judgment rendered in the person's absence would be adequate; and

9

(4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

*Id.* The court's decision between wholesale dismissal or dismissal of the non-diverse party should "be made in the light of pragmatic considerations," *id.* advisory committee's note to 1966 amendment, such as efficiency, fairness, and judicial economy, *Zambelli*, 592 F.3d at 421.

Applying this Rule, the Third Circuit has explained "that parties are indispensable if 'in the circumstance of the case [they] must be before the court.'" *Id.* (quoting *Steel Valley Auth. v. Union Switch & Signal Div.*, 809 F.2d 1006, 1011 (3d Cir. 1987)). "In other words, indispensable parties are '[p]ersons who not only have an interest in the controversy, but an interest of such a nature that a final decree cannot be made without either affecting that interest, or leaving the controversy in such a condition that its final termination may be wholly inconsistent with equity and good conscience.'" *Id.* (quoting *Steel Valley*, 809 F.2d at 1011) (internal quotations omitted).

**IV. Discussion**

Defendants' Motion presents two issues. First, the Court must consider whether it can grant relief from its Order dismissing the case based on Rule 60(b)(6). Second, if the Court concludes that it can properly reconsider its Order, the Court must determine whether AVR-Johnstown is a dispensable party that should be dismissed in order to create subject matter jurisdiction.

**A. Defendants have met the Rule 60(b)(6) standard for relief from judgment.**

Defendants filed the present Motion only four days after this Court's Order dismissing the case for lack of subject matter jurisdiction. Thus, this Motion is clearly timely, and the Court must now consider whether Rule 60(b)(6)'s standard for relief from judgment is met.

10

Defendants assert that the Bankruptcy Court's dismissal of the bankruptcy case changed the circumstances of this case so as to justify Rule 60(b)(6) relief. Originally, Defendants opposed dismissing AVR-Johnstown from the case to create diversity because AVR-Johnstown's counterclaim was a "major asset"[6] in AVR-Johnstown's pending bankruptcy case. (ECF No. 92 at 5; ECF No. 97 at 4.) Further, according to Defendants, dismissal of AVR-Johnstown was not necessary, as the bankruptcy case provided another basis for jurisdiction. (*See* ECF No. 93 at 2-3; ECF No. 97 at 4.) However, when the Bankruptcy Court dismissed the bankruptcy case, Defendants contend that this case was "substantially changed" and that the indispensability analysis thus changed. (ECF No. 97 at 4.)

Generally, Rule 60(b)(6) "may not 'be employed simply to rescue a litigant from strategic choices that later turn out to be improvident.'" *Kramer v. Gates*, 481 F.3d 788, 792 (D.C. Cir. 2007) (quoting *Good Luck Nursing Home, Inc. v. Harris*, 636 F.2d 572, 577 (D.C. Cir. 1980)); *see Good Luck Nursing Home*, 636 F.2d at 576 ("And a party that has stipulated to certain facts . . . cannot ordinarily avail itself of rule 60(b) after an adverse judgment has been handed down."). Here, Defendants seemingly made a strategic decision to argue that AVR-Johnstown was indispensable to this case in order to preserve AVR-Johnstown's counterclaims and benefit AVR-Johnstown's bankruptcy case. Rule 60(b)(6) generally cannot be used to revoke a strategic decision and make new arguments after related litigation does not go as planned. Thus, if the Bankruptcy Court's

---

[6] In Defendants' Answer, Affirmative Defenses and Counter-Claims to Plaintiffs' Complaint, Defendants claim that they were damaged in an amount in excess of two million dollars due to Plaintiffs' alleged breaches of contract. (ECF No. 7 ¶¶ 116, 121.) Defendants also claim damages of over $75,000 based on their unjust enrichment claim. (*Id.* ¶ 132.) Thus, Defendants' assertion that AVR-Johnstown's counterclaims were an important asset in the bankruptcy case was logical and supported by the pleadings.

dismissal of the bankruptcy case were the only changed circumstance, Defendants would not be entitled to relief from judgment under Rule 60(b)(6).

However, other significant circumstances in this case give the Court pause. When the Court issued its Memorandum Order on subject matter jurisdiction (ECF No. 93), "both parties agree[d] that AVR-Johnstown [was] an indispensable party that [could not], by itself, be dismissed from this action to cure the defect in diversity" (*id.* at 2). Based on the parties' agreement, the Court *did not analyze* the indispensability of AVR-Johnstown.[7] This lack of analysis is particularly significant because it relates to subject matter jurisdiction, and the Court has independent obligations with regard to subject matter jurisdiction that it does not have with regard to other jurisdictional requirements. *See, e.g., Zambelli*, 592 F.3d at 420 (discussing the court's "continuing obligation to assess its subject matter jurisdiction"). To dismiss this case for lack of subject matter jurisdiction (1) without independently analyzing a way in which subject matter jurisdiction could be saved (2) when the parties no longer agree on this issue (3) after years of litigation is an "extraordinary circumstance" that justifies this Court's reconsideration so as to prevent "an extreme and unexpected hardship" to the parties. *Sawka*, 989 F.2d at 140.

Furthermore, the Court dismissed the case for lack of subject matter jurisdiction immediately upon learning of the Bankruptcy Court's dismissal. This Court made that decision based on its assumption that the indispensability issue had already been resolved. The parties thus did not have time to indicate to the Court whether the Bankruptcy Court's decision changed the circumstances of the case. Therefore, while Plaintiffs are correct in pointing to Rule 60(b)(6)'s

---

[7] Furthermore, based on this Court's decision to refer the case to the Bankruptcy Court, the Court did not need to determine whether AVR-Johnstown was an indispensable party that could be dismissed to create complete diversity.

12

high bar for relief, the Court must also acknowledge that had the Court given the parties an opportunity to readdress indispensability before dismissing the case, Defendants would have been able to argue for the revocation of the aforementioned "strategic decision" without being subjected to Rule 60(b)(6)'s high bar.

The Court thus finds that Defendants have met the Rule 60(b)(6) standard for relief from judgment. The Court will now consider the merits of Defendants' arguments regarding indispensability.

### B. AVR-Johnstown is a dispensable party.

The parties agree that unless the Court dismisses AVR-Johnstown, the Court lacks subject matter jurisdiction over this case because the parties are not completely diverse and the litigation does not involve a federal question. (*See* ECF No. 97 at 1; ECF No. 99 at 2-3.)  Thus, the issue here is whether AVR-Johnstown is a dispensable party such that it can be dismissed from the case to create subject matter jurisdiction.

As explained above, the Court must consider four factors under Rule 19(b) to determine whether AVR-Johnstown is dispensable or indispensable:

> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
> (2) the extent to which any prejudice could be lessened or avoided by:
>   (A) protective provisions in the judgment
>   (B) shaping the relief; or
>   (C) other measures;
> (3) whether a judgment rendered in the person's absence would be adequate; and
> (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Fed. R. Civ. P. 19(b). Upon consideration of these and other relevant factors, the Court concludes that AVR-Johnstown is a dispensable party, as dismissing AVR-Johnstown will not significantly prejudice AVR-Johnstown or the other parties to this litigation.

### 1. Judgment rendered without AVR-Johnstown would not significantly prejudice the parties.

Turning to the first factor, prejudice to the parties if a judgment is rendered in the absence of AVR-Johnstown, Plaintiffs argue that AVR-Johnstown will be prejudiced if it has to litigate its counterclaims in a different court than the other Defendants, as it could be subjected to a holding that is inconsistent with the Court's holding in this case. (ECF No. 99 at 7.) Plaintiffs also argue that they could be subjected to inconsistent rulings on identical state and federal court counterclaims if AVR-Johnstown is dismissed and that they will have to duplicate work to defend the same counterclaims in both federal and state court. (*Id.* at 8.) Further, Plaintiffs raise claim and issue preclusion issues. (*Id.* at 7.) In Defendants' original brief on subject matter jurisdiction (ECF No. 92), Defendants made similar arguments (*see id.* at 6 (arguing that dropping AVR-Johnstown "would only duplicate the amount of work that the litigants must engage in as there would need to be multiple trials")).

First, both parties originally argued that AVR-Johnstown could not be dismissed because if AVR-Johnstown had to litigate its counterclaims in state court, the state and federal courts could reach inconsistent decisions, thereby prejudicing Plaintiffs and AVR-Johnstown. (ECF No. 89 at 7; ECF No. 92 at 6; ECF No. 99 at 7.) Neither Plaintiffs nor Defendants elaborated on this assertion.

The Court fails to see how inconsistent results could arise with regard to Defendants' breach of contract counterclaim if AVR-Johnstown has to litigate in state court while the other

14

Defendants continue to litigate in federal court. The breach of contract counterclaim involves two separate contracts: the Sublease between JHVC and AVR-Johnstown (ECF No. 1-3) and the GPA between JHVC and WVI (ECF No. 1-5). (ECF No. 7 ¶¶ 115, 118-19.) Plaintiffs did not argue at summary judgment that Defendants should be dismissed to the extent they are not parties to these contracts, and this Court thus did not address the issue. (*See* ECF No. 78 at 53 n.39.) However, the Court cannot help but note at this juncture that AVR-Johnstown's breach of contract counterclaim would likely be very different from WVI's breach of contract counterclaim, based on the different contracts to which these Defendants were parties.[8] *See N. Am. Specialty Ins. Co. v. Chichester Sch. Dist.*, No. Civ.A. 99-2394, 2000 WL 1052055, at *24 (E.D. Pa. July 20, 2000) (finding that an entity was not a necessary party because the claims revolved around whether the entities and parties breached *separate* contracts with the counterclaimant).

Further, even if a state court were to reach a decision inconsistent with this Court on either of Defendants' counterclaims,[9] the potential for inconsistent decisions does render a party indispensable. *See Delgado v. Plaza Las Americas, Inc.*, 139 F.3d 1, 3 (1st Cir. 1998) (finding that a

___

[8] Furthermore, with regard to the breach of contract claim involving the GPA, AVR-Johnstown would not be indispensable because "a nonparty to a commercial contract ordinarily is not a necessary party to an adjudication of rights under the contract." *See N. Am. Specialty Ins. Co. v. Chichester Sch. Dist.*, No. Civ.A. 99-2394, 2000 WL 1052055, at *23 (E.D. Pa. July 20, 2000). If a party is not necessary, it cannot be indispensable. *Id.* at *25. Thus, AVR-Johnstown would not be an indispensable party to WVI's breach of contract claim against JHVC.

[9] Plaintiffs do not raise any specific inconsistent decisions that could result, and due to the two distinct contracts with separate parties, the Court is unable to conceptualize any such decisions. Generally, though, one court could find that Plaintiffs breached a contract and the other court could find that Plaintiffs did not breach.

15

party was not necessary under Rule 19(a) even though it faced a federal action and a state action arising from the same incident).[10] According to the First Circuit in *Delgado*:

> "Inconsistent obligations" are not . . . the same as inconsistent adjudications or results. Inconsistent obligations occur when a party is unable to comply with one court's order without breaching another court's order concerning the same incident. Inconsistent adjudications or results, by contrast, occur when a defendant successfully defends a claim in one forum, yet loses on another claim arising from the same incident in another forum. Unlike a risk of inconsistent obligations, a risk that a defendant who has successfully defended against a party may be found liable to another party in a subsequent action arising from the same incident—i.e., a risk of inconsistent adjudications or results—does not necessitate joinder of all of the parties into one action pursuant to Fed.R.Civ.P. 19(a).

*Id.* (internal citations omitted); *see N. Am. Specialty Ins.*, 2000 WL 1052055, at *25. In this case, to the extent inconsistencies could arise between decisions of this Court and a state court, the Court cannot conceive of any way in which Plaintiffs would be "unable to comply with one court's order without breaching another court's order concerning the same incident." *Delgado*, 139 F.3d at 3. If one court finds that Plaintiffs breached a contract and the other court finds Plaintiffs did not breach,[11] Plaintiffs will easily be able to comply with both courts' orders by simply paying the one judgment for breach. Furthermore, if both courts find that Plaintiffs breached but hold Plaintiffs liable to different parties,[12] the two different claims for damages do not give rise to inconsistent obligations—Plaintiffs can pay the damages required by both courts without

---

[10] Although *Delgado* deals with Rule 19(a), which addresses whether a person is a "necessary" party to a lawsuit, the Court finds *Delgado*'s reasoning persuasive to the extent that it discusses why inconsistent *obligations* are more concerning under Rule 19 than inconsistent *decisions*. *See Delgado*, 139 F.3d at 3.

[11] This scenario itself is unlikely because, as explained *supra*, this Court and the state court will likely be dealing with different contracts, as AVR-Johnstown is a party to different contracts than the rest of the Defendants.

[12] *See supra* note 11.

16

breaching the other court's order. Thus, the potential for inconsistent decisions, to the extent it exists, is not the kind of prejudice that would render AVR-Johnstown an indispensable party.

Addressing Plaintiffs' next argument, while the Court recognizes that dropping AVR-Johnstown would require the parties to duplicate efforts in state and federal court, Plaintiffs overlook the fact that the parties have already expended a significant amount of effort litigating this case in federal court. Thus, while dismissing AVR-Johnstown would require relitigating the counterclaims as between AVR-Johnstown and JHVC and would require Plaintiffs to defend the same counterclaims in two different forums, the alternative would require relitigating the *entire case* in state court. At this stage, the parties have completed discovery. (ECF No. 97 at 5.) The Court has resolved dispositive motions. (ECF No. 78.) The case is ready for trial. (ECF No. 97 at 5.) The Court thus fails to see how dismissing the counterclaims and requiring some duplicative work in state and federal court is more prejudicial than dismissing the entire case and forcing the parties to start from the beginning after nearly four years of litigation. *See Newman-Green*, 490 U.S. at 836 (explaining that courts have the authority to dismiss dispensable, non-diverse parties, "particularly when requiring dismissal after years of litigation would impose unnecessary and wasteful burdens on the parties, judges, and other litigants waiting for judicial attention").

Finally, Plaintiffs claim that if a judgment is rendered in this Court without AVR-Johnstown, AVR-Johnstown could be precluded by the doctrines of *res judicata* and collateral estoppel from bringing its counterclaims in state court. "Generally, if preclusion principles could be used to impair the absent party's interest, that party is required in light of the first factor." *See RAD Mfg., L.L.C. v. Advanced Fabrication Serv., Inc.*, NO. 3:16-2138, 2017 WL 2653169, at *7 (M.D. Pa. June 20, 2017). However, AVR-Johnstown, the counterclaiming party and thus the party to

17

whom preclusion would apply, is not concerned with this risk—AVR-Johnstown does not mention preclusion in its briefing and is willing to be dismissed as a party and to attempt to bring a separate lawsuit in state court. Furthermore, Plaintiffs failed to identify the elements of these doctrines or how they apply to this case. *See Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.*, 11 F.3d 399, 409 (3d Cir. 1993) ("Mere presentation of an argument that issue preclusion is possible is not enough . . . . Rather, it must be shown that some outcome of the federal case that is reasonably likely can preclude the absent party with respect to an issue material to the absent party's rights or duties under standard principles governing the effect of prior judgments."). Thus, the Court does not find Plaintiffs' preclusion argument persuasive.

Aside from Plaintiffs' concern with preclusion, the parties have not identified any reasons why AVR-Johnstown would be unable to bring its counterclaims in state court. In fact, AVR-Johnstown asserts that it can bring the counterclaims in state court and thus that it will not be prejudiced if this Court dismisses it.[13] (ECF No. 97 at 5); *see Zambelli*, 592 F.3d at 422 (finding a party dispensable when "[f]ull relief [was] . . . available from both parties, albeit in separate forums").

Thus, based on the above discussion, the Court finds that the first factor of Rule 19(b) favors dismissing AVR-Johnstown, as a judgment rendered without AVR-Johnstown would not significantly prejudice AVR-Johnstown or Plaintiffs—Plaintiffs are unlikely to be subjected to inconsistent obligations, and AVR-Johnstown claims it can refile its counterclaims in state court.

---

[13] While the Court has concerns regarding the statute of limitations, if AVR-Johnstown is not concerned with such issues, the Court will not *sua sponte* consider them.

## 2. The parties have not identified ways in which prejudice could be lessened by shaping the judgment.

With regard to the second factor of Rule 19(b), the parties have not pointed to protective provisions or other measures that could help avoid or lessen prejudice as a result of AVR-Johnstown's dismissal. However, because the Court finds that little prejudice would result from dismissing AVR-Johnstown and allowing the rest of the case to proceed, this factor is not significant to this analysis.

## 3. Judgment rendered without AVR-Johnstown would be adequate.

The third factor involves considering whether a judgment rendered without AVR-Johnstown would be adequate. "[T]his element allows the court to consider whether the relief it grants will prove an adequate remedy from the plaintiff." *Gen. Refractories Co. v. First State Ins. Co.*, 500 F.3d 306, 320-21 (3d Cir. 2007). Furthermore, this factor "refer[s] to [the] public stake in settling disputes by wholes, whenever possible." *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 111 (1968); *Gen. Refractories*, 500 F.3d at 321.

The public interest in settling disputes by wholes clearly would not be promoted by dismissing AVR-Johnstown and forcing AVR-Johnstown to pursue its claims in a separate lawsuit. Yet, even in AVR-Johnstown's absence, all of Plaintiffs' claims against Defendants will survive and remain in this litigation, as well as the other Defendants' counterclaims. The Court thus cannot conceive of any way in which a judgment rendered without AVR-Johnstown would otherwise be inadequate.

#### 4. Plaintiffs would have an adequate remedy if the action were dismissed.

The fourth factor is whether Plaintiffs would have an adequate remedy if the action were completely dismissed for lack of subject matter jurisdiction. Under 42 Pa. Cons. Stat. § 5103(b), if this Court dismissed the case for lack of subject matter jurisdiction, Plaintiffs could refile the action in state court and avoid any statute of limitations issues. Thus, Plaintiffs would have an adequate remedy if the action were dismissed.

### 5. Other important considerations weigh in favor of dismissing AVR-Johnstown.

The Rule 19(b) factors therefore weigh in favor of dismissing AVR-Johnstown as dispensable. However, the Court must also address a few other arguments that do not clearly fit into the above factors. Plaintiffs argue that "AVR-Johnstown's Operating Agreement remains a central part of this litigation, as Plaintiffs' breach of contract claim continues as a claim for various breaches of the Operating Agreement [of AVR-Johnstown]." (ECF No. 99 at 6.) According to Plaintiffs, "[t]here is no dispute that a party has a substantial interest in its own Operating Agreement." (*Id.*) Plaintiffs then cite to this Court's decision in *Hearing Lab Tech., Inc. v. Hearing Instruments, Inc.,* for the proposition that "[p]arties to a contract at the heart of a dispute are considered necessary parties." (ECF No. 99 at 7); *Hearing Lab Tech., Inc. v. Hearing Instruments,* CIVIL ACTION NO. 16-221, 2017 WL 3208676, at *3 (W.D. Pa. July 27, 2017) (Gibson, J.).

However, *Hearing Lab*'s conclusion does not govern the present case. First, the Court concluded in its Memorandum Opinion on summary judgment that to the extent Plaintiffs' claims for breach of contract were against AVR-Johnstown, they were dismissed. (ECF No. 78 at 16-17.) The Court fails to see how AVR-Johnstown is indispensable based on a contract governing its

operations when all of the claims regarding that contract against AVR-Johnstown were specifically dismissed. Moreover, *Hearing Lab* considered whether two non-parties were necessary under Rule 19(a). While this analysis is closely related to Rule 19(b)'s indispensability factors, the analyses are not identical. Further, a party can be both necessary and dispensable. *See generally HB Gen. Corp. v. Manchester Partners, L.P.*, 95 F.3d 1185 (3d Cir. 1996) (concluding that a party was necessary but dispensable). Therefore, assuming AVR-Johnstown would be "necessary" under Rule 19(a) pursuant to *Hearing Lab*, it would not follow that AVR-Johnstown is automatically indispensable. Plaintiffs' reliance on *Hearing Lab* is thus misplaced.

Furthermore, regarding Plaintiffs' general assertion that AVR-Johnstown is indispensable because its Operating Agreement is at the heart of the litigation, the fact that an entity is a party to its Operating Agreement "does not . . . mandate a finding that it is indispensable." *See Second State Enters., Inc. v. Mid-Atl. Invs., LLC*, Civil Action No. 1:14-CV-00433, 2014 WL 4091846, at *4 (M.D. Pa. Aug. 18, 2014). In fact, in spite of the centrality of AVR-Johnstown's Operating Agreement to this case, the Court has been unable to identify ways in which Plaintiffs and AVR-Johnstown would be prejudiced if AVR-Johnstown were dismissed. Thus, Plaintiffs' argument regarding the Operating Agreement does not outweigh the Court's prior consideration of the Rule 19(b) factors.

## V.    Conclusion

In sum, the Court finds that AVR-Johnstown is a dispensable party to this litigation. The Court recognizes that this case is a close call, and the Court does not make this decision lightly. However, the parties have been litigating this dispute for nearly four years and have spent significant time and resources on this case. "[C]onsiderations of efficiency, fairness, and judicial

21

economy [thus] weigh against a wholesale dismissal of the action at this stage." *Zambelli*, 592 F.3d at 420-21. Based on these considerations, as well as the factors listed in Rule 19(b), the Court will **GRANT** Defendants' Motion for Reconsideration (ECF No. 96). The Court will **VACATE** its Order (ECF No. 95) dismissing this case for lack of subject matter jurisdiction and will **DISMISS** AVR-Johnstown as a counterclaimant without prejudice to asserting its claims in state court.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

SAMIR HADEED, MD, and )  Case No. 3:15-cv-22
JOHNSTOWN HEART AND VASCULAR )
CENTER, INC., )  JUDGE KIM R. GIBSON
)
Plaintiffs, )
)
v. )
)
ADVANCED VASCULAR RESOURCES )
OF JOHNSTOWN, LLC, AVR )
MANAGEMENT, LLC, WASHINGTON )
VASCULAR INSTITUTE, LLC, and )
MUBASHAR CHOUDRY, MD, )
)
Defendants. )

## ORDER

NOW, this __13th__ day of November, 2018, upon consideration of Defendants' Motion

for Reconsideration (ECF No. 96) and for the reasons set forth in the Memorandum Opinion

accompanying this Order, it is **HEREBY ORDERED** that Defendants' Motion for Reconsideration

(ECF No. 96) is **GRANTED.** The Court **VACATES** its Order dismissing this case for lack of

subject matter jurisdiction (ECF No. 95) and **DISMISSES** Advanced Vascular Resources of

Johnstown, LLC from this lawsuit without prejudice to asserting its claims in state court.

**BY THE COURT:**

**KIM R. GIBSON**
**UNITED STATES DISTRICT JUDGE**

23