IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SAMIR HADEED, MD, and<br>JOHNSTOWN HEART AND VASCULAR<br>CENTER, INC., | )<br>)<br>)<br>) | No. 3:15-cv-22<br><br>JUDGE KIM R. GIBSON |
| Plaintiffs, | )<br>) | |
| v. | )<br>) | |
| ADVANCED VASCULAR RESOURCES<br>OF JOHNSTOWN, LLC; AVR<br>MANAGEMENT, LLC; WASHINGTON<br>VASCULAR INSTITUTE, LLC; and<br>MUBASHAR CHOUDRY, MD, | )<br>)<br>)<br>)<br>)<br>) | |
| Defendants. | ) | |

MEMORANDUM OPINION

I.  Introduction

Pending before the Court are Plaintiff/Counter-Defendant Johnstown Heart and Vascular Center, Inc. ("JHVC") and Counter-Defendant Samir Hadeed, MD's (collectively, "Plaintiffs") Motions *in Limine* (ECF No. 119). These Motions have been fully briefed and are ripe for disposition. (*See* ECF Nos. 120, 121, 122, 123, 128, 129, 130, 131.)

This case arises from disputes over the operation of a vascular services center located in Johnstown, Pennsylvania. In short, Dr. Hadeed and JHVC entered into a series of contracts with Defendants/Counter-Plaintiffs AVR Management, LLC ("AVR Management") and Washington Vascular Institute, LLC ("WVI") (collectively, "Defendants") by which Plaintiffs would operate the "medical side" of the vascular services center and Defendants would manage the "business side" of the center. The present case arose because Plaintiffs and Defendants argue that the other side failed to comply with the duties imposed by these contracts.

For the reasons that follow, Plaintiffs' Motion to Preclude/Limit the Introduction of Evidence and/or Testimony Relating to Monetary Damages, Plaintiffs' Motion to Preclude the Introduction of Evidence and/or Testimony of Plaintiffs' Alleged Breach of the Sublease, and Plaintiffs' Motion to Preclude the Introduction of Evidence and/or Testimony of Plaintiffs' Alleged Breach of the Washington Vascular Institute Group Physician Agreement are **DENIED**. The Court will defer ruling on Plaintiffs' Motion to Preclude the Report and Testimony of John W. (Jack) Teitz until a *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), hearing is held.

## II.     Background[1]

The present case arises from various disputes related to the operation of Advanced Vascular Resources of Johnstown ("AVR-Johnstown"),[2] a limited liability company created to operate and manage a vascular center in Johnstown, Pennsylvania. (ECF No. 78 at 4.)

Advanced Vascular Resources, LLC ("AVR, LLC")[3] was formed by Mubashar Choudry, MD to develop vascular facilities on a national level. (*Id.*) Dr. Hadeed and JHVC, the entity through which Dr. Hadeed's cardiovascular practice is conducted, reached an agreement with AVR, LLC to open a vascular lab in Johnstown, which would become AVR-Johnstown. (*Id.*) To foster the development and operation of vascular facilities across the country, Dr. Choudry also formed AVR Management to oversee the management of AVR, LLC's vascular labs and WVI to

---

[1] This Background is an abbreviated version of the factual discussion in this Court's Memorandum Opinion on Plaintiffs' Motion for Summary Judgment and Defendants' Motion for Judgment on the Pleadings and Motion for Summary Judgment (ECF No. 78). Because the parties are familiar with the complicated factual and procedural history of this case, the Court will not go into great detail here.
[2] AVR-Johnstown is no longer a party to this action. (*See* ECF No. 100.)
[3] AVR, LLC is not a party to the present action but is an owner of AVR-Johnstown and AVR Management. (ECF No. 78 at 4 n.2.)

2

oversee the compensation for JHVC. (*Id.*) Numerous contracts were executed to govern the relationships between the various parties. (*Id.* at 4-5.)

After opening, AVR-Johnstown was an immediate success. (*Id.* at 5.) However, complications soon arose with cash flow, timely bill paying, insurance credentialing, and employee salary and benefit payments. (*Id.* at 5-6.)

After encountering these problems, JHVC terminated some of the parties' agreements. (*Id.* at 6-7.) Shortly thereafter, the parties' business relationship ended as a practical matter. (*Id.*) Plaintiffs changed the locks on the vascular center premises and ran a profitable business at the same physical location without Defendants' meaningful involvement. (*Id.*)

Plaintiffs then initiated this lawsuit on January 23, 2015. (ECF No. 1.) In essence, the Complaint alleges severe mismanagement of AVR-Johnstown by Defendants.[4] (*See id.* ¶¶ 44-64.) The Complaint is divided into five counts: (1) breach of contract based on Defendants' mismanagement of AVR-Johnstown; (2) an accounting; (3) partition/dissolution of AVR-Johnstown; (4) breach of contract based on Defendants' failure to pay Plaintiffs' wages; and (5) fraudulent misrepresentation. (*Id.*)

Defendants denied all liability and brought five counterclaims against Plaintiffs: (1) breach of contract based on a sublease between JHVC and AVR-Johnstown (the "Sublease") and JHVC's Group Physician Agreement (the "GPA") with WVI; (2) tortious interference with contractual relations; (3) conversion; (4) unjust enrichment; and (5) breach of fiduciary duty. (ECF No. 10 ¶¶ 114-36.)

---

[4] When the Complaint was filed, AVR-Johnstown and Dr. Choudry were also named as Defendants. (*See* ECF No. 1.) They were later dismissed as Defendants. (*See* ECF Nos. 78, 100.)

3

On October 17, 2016, Plaintiffs filed a Motion for Summary Judgment (ECF No. 40) and Defendants filed a Motion for Judgment on the Pleadings and Motion for Summary Judgment on Plaintiff's Complaint (ECF No. 44). After extensive briefing, the Court issued a Memorandum Opinion and Order on these Motions. (*See* ECF No. 78.) While the Court will not give a detailed synopsis of its holding, the Court notes that after deciding the parties' Motions, the following claims remained: (1) JHVC's breach of contract claim based on AVR Management's mismanagement of AVR-Johnstown in violation of AVR-Johnstown's operating agreement (the "Operating Agreement"), with an accounting as a potential remedy for this breach; (2) JHVC's breach of contract claim against WVI; (3) AVR-Johnstown, AVR Management, and WVI's counterclaim against JHVC for breach of contract; and (4) AVR-Johnstown, AVR Management, and WVI's counterclaim for unjust enrichment against JHVC and Dr. Hadeed. (*See generally id.*)

Then, on November 13, 2018, this Court dismissed AVR-Johnstown from this lawsuit to restore subject-matter jurisdiction. (ECF No. 100.)

Plaintiffs filed the present Motions on February 8, 2019. Trial is scheduled to begin on July 8, 2019.

### III. Legal Standard for Motions *in Limine*

"[A] motion *in limine* is a pretrial motion which requests that the Court prohibit opposing counsel from referring to or offering evidence on matters prejudicial to the moving party." *Smith v. Allstate Ins. Co.*, 912 F. Supp. 2d 242, 246 (W.D. Pa. 2012) (Gibson, J.); *Emcore Corp. v. Optium Corp.*, No. 7-326, 2009 WL 3381809, at *1 (W.D. Pa. Oct. 16, 2009). "[M]otions *in limine* narrow the evidentiary issues for trial and eliminate unnecessary trial interruptions. *See Smith*, 912 F. Supp. 2d at 246 (citing *Emcore Corp.*, 2009 WL 3381809, at *1).

4

A court may exercise its discretion and decide to rule on motions *in limine* on evidentiary issues in appropriate cases. *See In re Japanese Elec. Pros. Antitrust Litig.*, 723 F.2d 238, 260 (3d Cir. 1983). A "trial court should exclude evidence on a motion *in limine* only when the evidence is clearly inadmissible on all potential grounds." *Crestwood Membranes, Inc. v. Constant Servs., Inc.*, No. 3:15-cv-537, 2018 WL 490547, at *1 (M.D. Pa. Jan. 19, 2018) (quoting *United States v. Tartaglione*, 228 F. Supp. 3d 402, 406 (E.D. Pa. 2017)).

## IV. Discussion

Plaintiffs filed four Motions *in Limine* in this case. (*See* ECF No. 119.)

Plaintiffs' first Motion argues that Defendants' damages expert, John W. (Jack) Teitz, should be precluded from testifying and that Defendants should be precluded from introducing his expert report at trial.

Plaintiffs' second Motion seeks to preclude the introduction of evidence relating to Defendants' money damages.

Plaintiffs' third Motion addresses Defendants' counterclaim for breach of the Sublease. Plaintiffs explain that the Sublease is an agreement between JHVC and AVR-Johnstown and that Defendants AVR Management and WVI were not parties to the Sublease. Plaintiffs thus argue that Defendants should be precluded from introducing evidence related to Plaintiffs' breach of the Sublease because such evidence is not relevant and is likely to cause confusion.

Finally, Plaintiffs' fourth Motion seeks to preclude the introduction of evidence related to Plaintiffs' alleged breach of the GPA as to AVR Management's breach of contract claim, as AVR Management was not a party to the GPA.

5

### A. Plaintiffs' Motion to Preclude the Report and Testimony of John W. (Jack) Teitz

Plaintiffs first seek to preclude the report and testimony of Mr. Teitz. Mr. Teitz was retained to provide an expert opinion on the calculation of net profit amounts owed to Defendants. (ECF No. 125 at 2.)

The Court finds it necessary to hold a *Daubert* hearing on whether the report and proposed testimony of Mr. Teitz meet the requirements of the Federal Rules of Evidence. The Court will thus schedule a *Daubert* hearing and will defer resolving this Motion until the hearing is held.

### B. Plaintiffs' Motion to Preclude/Limit the Introduction of Evidence and/or Testimony Relating to Monetary Damages

#### 1. The Parties' Arguments

Plaintiffs next seek to preclude the introduction of evidence related to Defendants' monetary damages, including Plaintiffs' income tax returns and evidence of Plaintiffs' current financial status. (ECF No. 119 ¶ 129.) Plaintiffs explain that "[t]he revenues and expenses alleged to be at issue are incredibly complicated, and require an analysis and understanding of complex medical procedures and facilities and insurance billing and reimbursement practices and systems." (*Id.* ¶ 120.) According to Plaintiffs, these expenses and systems are beyond the knowledge of a lay juror and thus require the testimony of a qualified expert.[5] (*Id.* ¶¶ 121-31.) Plaintiffs also argue that evidence of Defendants' monetary damages is irrelevant and unduly prejudicial. (*Id.* ¶¶ 128-29, 138-39.)

---

[5] This argument appears to depend on the assumption that the Court would exclude the report and testimony of Mr. Teitz. However, as explained above, the Court declines to make a decision as to the admissibility of Mr. Teitz's report and proposed testimony until a *Daubert* hearing is held.

6

In response, Defendants characterize Plaintiffs' argument as a "complain[t] that the damages caused by [Plaintiffs'] conduct cannot be exactly quantified." (ECF No. 129 at 3.) Defendants assert that the damages caused by Plaintiffs can be determined based on the evidence. (*Id.*) According to Defendants, an expert witness is not required to establish damages because "there is nothing so complicated about the concepts of revenue and expense that the jury cannot understand." (ECF No. 127 ¶¶ 118, 120.) The jury should be able to reach a conclusion as to damages without calculating reimbursements from different procedures—the jury simply has to look at the general financial condition of the entities. (*Id.* ¶ 122.) Defendants also argue that at the very least, the Court should defer deciding this issue until all the evidence has been presented. (*Id.* ¶ 120.)

### 2. Legal Standard

"As a general principle, '[e]xpert evidence is not necessary . . . if all the primary facts can be accurately and intelligibly described to the jury, and if they, as [persons] of common understanding, are as capable of comprehending the primary facts and of drawing correct conclusions from them as are witnesses possessed of special or peculiar training of the subject under investigation.'" *Oddi v. Ford Motor Co.*, 234 F.3d 136, 159 (3d Cir. 2000) (alterations in original); *Donaldson v. Lensbouer*, CIVIL ACTION NO. 3:15-63, 2017 WL 5634130, at *5 (W.D. Pa. Nov. 21, 2017) (Gibson, J.) (citing *Oddi*, 234 F.3d at 159; *Yoder v. Sportsman's Guide, Inc.*, No. 2:14-cv-937, 2015 WL 7009547, at *11-12 (W.D. Pa. Nov. 12, 2015)); *see Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*, Civil Action No. 09-290, 2012 WL 6562221, at *16 (W.D. Pa. Dec. 15, 2012) ("[E]xpert testimony is not permitted if it consists of drawing simple inferences 'from uncomplicated facts that serve only to buttress [a party's] theory of the case.'" (quoting *In re*

*Rezulin*, 309 F. Supp. 2d 531, 551 (S.D.N.Y. 2004))); *Fellner v. Supreme Corp.*, Civ. A. No. 92-3680, 1995 WL 79787, at *9 (D.N.J. Feb. 21, 1995) ("[I]f a jury is capable of understanding the subject matter through its own knowledge and experience, expert testimony is not admissible because it will not assist the trier of fact. It is only when the jury is incapable of making sense of the underlying facts that expert opinion is admissible." (citing Fed. R. Evid. 702)).

However, if an issue is "beyond the ken of a lay jury," expert testimony is required. *See McMunn v. Babcock & Wilcox Power Generation Grp.*, 869 F.3d 246, 267 (3d Cir. 2017).

### 3. Analysis

The Court declines to decide this issue at this time and will thus **DENY** the Motion without prejudice. The Court is hesitant to determine whether Defendants' presentation of damages requires expert testimony without observing and evaluating the presentation of damages. Deferring this issue is particularly appropriate considering that Plaintiffs seek to preclude a large category of evidence, some of which may be relevant to issues other than damages. *See Leonard v. Stemtech Health Scis.*, 981 F. Supp. 2d 273, 276 (D. Del. 2013) ("Evidentiary rulings, especially ones that encompass broad classes of evidence, should generally be deferred until trial to allow for the resolution of questions of foundation, relevancy, and potential prejudice in proper context."). Because a "trial court should exclude evidence on a motion *in limine* only when the evidence is clearly inadmissible on all potential grounds," the Court will not exclude Defendants' evidence of damages at this time. *Crestwood Membranes, Inc. v. Constant Servs., Inc.*, No. 3:15-cv-537, 2018 WL 490547, at *1 (M.D. Pa. Jan. 19, 2018) (quoting *United States v. Tartaglione*, 228 F. Supp. 3d 402, 406 (E.D. Pa. 2017)); *see also Frintner v. TruePosition*, 892 F. Supp. 2d 699, 707

(E.D. Pa. 2012) (explaining that "if the context of trial would provide clarity," the Court may defer the issues raised by motions *in limine* until trial).

### C. Plaintiffs' Motion to Preclude the Introduction of Evidence and/or Testimony of Plaintiffs' Alleged Breach of the Sublease

#### 1. The Parties' Arguments

In their third Motion, Plaintiffs address Defendants' counterclaim for breach of the Sublease, which was an agreement between JHVC and AVR-Johnstown. Plaintiffs explain that in its Memorandum Opinion and Order on the parties' Motions for Summary Judgment, this Court allowed Defendants—which included AVR-Johnstown—to proceed on their counterclaim for breach of contract as to the Sublease. *See Hadeed v. Advanced Vascular Res. of Johnstown, LLC*, Case No. 3:15-cv-22, 2017 WL 4998663, at *26 (W.D. Pa. Oct. 30, 2017). However, AVR-Johnstown is no longer a party to this case. Plaintiffs argue that because AVR-Johnstown is no longer a party and because AVR Management and WVI are not parties to the Sublease, evidence or testimony related to the Sublease and Plaintiffs' alleged breach of the Sublease should be precluded from introduction at trial. (ECF No. 119 ¶¶ 142-45.) Plaintiffs assert that the introduction of such evidence is not relevant, is prejudicial, and is likely to cause confusion. (*Id.* ¶ 146.)

In response, Defendants do not dispute that AVR Management and WVI are not parties to the Sublease. Instead, Defendants argue that evidence of the breach of the Sublease is still relevant to the case because (1) the breach is integral to this case's factual background (and particularly to an understanding of the various agreements governing the parties' relationship), (2) the Sublease is "part and parcel of the various other agreements entered into by the parties,"

9

and (3) the breach of the Sublease relates to Defendants' defenses and unjust enrichment counterclaim. (ECF No. 127 ¶ 144.)

### 2. Analysis

The Court agrees that the allegations surrounding the breach of the Sublease are relevant even though the remaining Defendants were not parties to the Sublease.

First, Plaintiffs' alleged breach of the Sublease is relevant to Defendants' breach of Sublease counterclaim. Regardless of whether AVR Management and WVI were parties to the Sublease, a counterclaim for breach of the Sublease remains as to Defendants because Plaintiffs failed to seek summary judgment on this basis. *See Hadeed*, 2017 WL 4998663, at *26 & n.39 ("The Court notes that Plaintiffs did not provide arguments in favor of or ask the Court to grant summary judgment such that Defendants other than Choudry are dismissed from the counterclaims under the Sublease or the GPA. The Court declines to consider whether all three remaining Defendants are appropriate counter-claimants under both of these agreements *sua sponte*."). By attempting to preclude evidence of Plaintiffs' breach because Defendants were not parties to the Sublease, Plaintiffs appear to essentially seek dismissal of the counterclaim for breach of the Sublease. A motion *in limine* is not the appropriate vehicle for this challenge.

Moreover, the alleged breach of the Sublease is relevant to Defendants' defenses. One of Plaintiffs' claims in this case is for breach of the Operating Agreement based on AVR Management's reckless mismanagement of AVR-Johnstown. *See Hadeed*, 2017 WL 4998663, at *7-9; (ECF No. 110 at 3). However, Defendants assert in their Pretrial Statement (ECF No. 112) that Plaintiffs' wrongful termination of the Sublease and changing of the locks to AVR-Johnstown's facility prevented AVR Management from being able to manage the business affairs of AVR-

10

Johnstown. (*Id.* at 5-6; *see also* ECF No. 130 ¶ 2). It thus appears that Plaintiffs' alleged breach of the Sublease is relevant to Defendants' defense against Plaintiffs' claim of mismanagement.

The Court will thus **DENY** Plaintiffs' Motion to Preclude the Introduction of Evidence and/or Testimony of Plaintiffs' Alleged Breaches of the Sublease and Amendment to Master Lease. Plaintiffs' contention is best raised pursuant to Federal Rule of Civil Procedure 12 or 50, not through a motion *in limine*.

### D. Plaintiffs' Motion to Preclude the Introduction of Evidence and/or Testimony of Plaintiffs' Alleged Breach of the Washington Vascular Institute Group Physician Agreement

#### 1. The Parties' Arguments

In its final Motion, Plaintiffs seek to preclude the introduction of evidence of Plaintiffs' alleged breach of the GPA as it relates to AVR Management. (ECF No. 119 ¶ 152.) Plaintiffs explain that Plaintiffs' alleged breach of the GPA is irrelevant as to AVR Management because the GPA was an agreement between JHVC and WVI—AVR Management was not a party to the GPA. (*Id.* ¶¶ 151-52.)

Defendants respond that Plaintiffs' breach of the GPA is relevant.

#### 2. Analysis

The Court finds Plaintiffs' alleged breach of the GPA to be relevant to Defendants' breach of contract counterclaim. Although AVR Management was not a party to the GPA, a breach of the GPA counterclaim remains as to both AVR Management and WVI because Plaintiffs failed to seek summary judgment on this basis. *See Hadeed*, 2017 WL 4998663, at *26 & n.39. Defendants

11

are thus entitled to present evidence relevant to their counterclaim. Plaintiffs' contention is best raised pursuant to Federal Rule of Civil Procedure 12 or 50, not through a motion *in limine*.

The Court will thus **DENY** Plaintiffs' Motion to Preclude the Introduction of Evidence and/or Testimony of Plaintiffs' Alleged Breaches of the Washington Vascular Institute Group Physician Agreement.

## V.  Conclusion

For the reasons explained above, the Court will defer ruling on Plaintiffs' Motion to Preclude the Report and Testimony of John W. (Jack) Teitz until a *Daubert* hearing on this Motion is held. The Court will **DENY** Plaintiffs' Motion *in Limine* to Preclude/Limit the Introduction of Evidence and/or Testimony Relating to Monetary Damages, Motion *in Limine* to Preclude the Introduction of Evidence and/or Testimony of Plaintiffs' Alleged Breaches of the Sublease and Amendment to Master Lease, and Motion *in Limine* to Preclude the Introduction of Evidence and/or Testimony of Plaintiffs' Alleged Breaches of the Washington Vascular Institute Group Physician Agreement.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SAMIR HADEED, MD, and<br>JOHNSTOWN HEART AND VASCULAR<br>CENTER, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>ADVANCED VASCULAR RESOURCES<br>OF JOHNSTOWN, LLC, AVR<br>MANAGEMENT, LLC, WASHINGTON<br>VASCULAR INSTITUTE, LLC, and<br>MUBASHAR CHOUDRY, MD,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 3:15-cv-22<br><br>JUDGE KIM R. GIBSON |

## ORDER

NOW, this 24th day of April, 2019, upon consideration of Plaintiff/Counter-Defendant Johnstown Heart and Vascular Center, Inc. and Counter-Defendant Samir Hadeed, MD's Motions *in Limine* (ECF No. 119) and Defendants/Counter-Plaintiffs AVR Management, LLC and Washington Vascular Institute, LLC's responses thereto, and for the reasons set forth in the Memorandum Opinion accompanying this Order, it is **HEREBY ORDERED** that:

1. Plaintiffs' Motion *in Limine* to Preclude/Limit the Introduction of Evidence and/or Testimony Relating to Monetary Damages is **DENIED**;

2. Plaintiffs' Motion *in Limine* to Preclude the Introduction of Evidence and/or Testimony of Plaintiffs' Alleged Breaches of the Sublease and Amendment to Master Lease is **DENIED**; and

3. Plaintiffs' Motion *in Limine* to Preclude the Introduction of Evidence and/or Testimony of Plaintiffs' Alleged Breaches of the Washington Vascular Institute Group Physician Agreement is **DENIED**.

It is **FURTHER ORDERED** that, upon consideration of Plaintiffs' Motion to Preclude the Report and Testimony of John W. (Jack) Teitz, the Court finds it necessary to hold a *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), hearing on whether the report and proposed testimony of Mr. Teitz meet the requirements of the Federal Rules of Evidence. A *Daubert* hearing on Plaintiffs' Motion is scheduled for **Monday, June 10, 2019 at 10 a.m.** in Courtroom A, 319 Washington Street, Johnstown, PA 15901.

                                         **BY THE COURT:**

                                         **KIM R. GIBSON**
                                         **UNITED STATES DISTRICT JUDGE**