IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHNSTOWN HEART AND VASCULAR CENTER, INC., | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | No. 3:15-cv-22 |
| | | JUDGE KIM R. GIBSON |
| Plaintiff, | | |
| v. | | |
| AVR MANAGEMENT, LLC, and WASHINGTON VASCULAR INSTITUTE, LLC, | | |
| Defendants and Counter-Plaintiffs, | | |
| v. | | |
| SAMIR HADEED, MD, and JOHNSTOWN HEART AND VASCULAR CENTER, INC., | | |
| Counter-Defendants.[1] | | |

## MEMORANDUM OPINION

I.  Introduction

Pending before the Court is Plaintiff/Counter-Defendant Johnstown Heart and Vascular Center, Inc. ("JHVC") and Counter-Defendant Samir Hadeed, MD's (collectively, "Plaintiffs") *Daubert* Motion to Preclude the Report and Testimony of John W. (Jack) Teitz (ECF No. 119 at 5-19). This Motion has been fully briefed and is ripe for disposition. (*See* ECF Nos. 120, 128, 152, 153.)

---

[1] The Court has revised the caption to match the docket because the unrevised caption was no longer accurate and caused confusion in attempting to understand and resolve the issues in the case.

This case arises from disputes over the operation of a vascular center located in Johnstown, Pennsylvania. In short, Dr. Hadeed and JHVC entered into a series of contracts with Defendants/Counter-Plaintiffs AVR Management, LLC ("AVR Management") and Washington Vascular Institute, LLC ("WVI") (collectively, "Defendants") by which Plaintiffs would operate the "medical side" of the vascular center and Defendants would manage the "business side" of the center. Plaintiffs and Defendants argue that the other side failed to comply with the duties imposed by these contracts.

For the reasons that follow, Plaintiffs' *Daubert* Motion to Preclude the Report and Testimony of John W. (Jack) Teitz (ECF No. 119 at 5-19) is **GRANTED**.

II. Background[2]

The present case arises from various disputes related to the operation of Advanced Vascular Resources of Johnstown ("AVR-Johnstown"), a limited liability company created to operate and manage a vascular center in Johnstown, Pennsylvania. (ECF No. 78 at 4.)

Advanced Vascular Resources, LLC ("AVR, LLC")[3] was formed by Mubashar Choudry, MD to develop vascular facilities on a national level. (*Id.*) Dr. Hadeed and JHVC, the entity through which Dr. Hadeed's cardiovascular practice is conducted, reached an agreement with AVR, LLC to open a vascular lab in Johnstown, which would become AVR-Johnstown. (*Id.*) To foster the development and operation of vascular facilities across the country, Dr. Choudry also

---

[2] This Background is an abbreviated version of the factual discussion in this Court's Memorandum Opinion on Plaintiffs' Motion for Summary Judgment and Defendants' Motion for Judgment on the Pleadings and Motion for Summary Judgment (ECF No. 78). Because the parties are familiar with the complicated factual and procedural history of this case, the Court will not go into great detail here.

[3] AVR, LLC is not a party to the present action but is an owner of AVR-Johnstown and AVR Management. (ECF No. 78 at 4 n.2.)

2

formed AVR Management to oversee the management of AVR, LLC's vascular labs and WVI to oversee the compensation for JHVC. (*Id.*) Numerous contracts were executed to govern the relationships between the various parties. (*Id.* at 4-5.)

After opening, AVR-Johnstown was an immediate success. (*Id.* at 5.) However, complications soon arose with cash flow, timely bill paying, insurance credentialing, and employee salary and benefit payments. (*Id.* at 5-6.)

After encountering these problems, JHVC terminated some of the parties' agreements. (*Id.* at 6-7.) Shortly thereafter, the parties' business relationship ended as a practical matter. (*Id.*) Plaintiffs changed the locks on the vascular-center premises and ran a profitable business at the same physical location without Defendants' meaningful involvement. (*Id.*)

Plaintiffs then initiated this lawsuit on January 23, 2015. (ECF No. 1.) In essence, the Complaint alleges severe mismanagement of AVR-Johnstown by Defendants.[4] (*See id.* ¶¶ 44-64.) The Complaint is divided into five counts: (1) breach of contract based on Defendants' mismanagement of AVR-Johnstown; (2) an accounting; (3) partition/dissolution of AVR-Johnstown; (4) breach of contract based on Defendants' failure to pay Plaintiffs' wages; and (5) fraudulent misrepresentation. (*Id.*)

Defendants denied all liability and brought five counterclaims against Plaintiffs: (1) breach of contract based on a sublease between JHVC and AVR-Johnstown (the "Sublease") and JHVC's Group Physician Agreement (the "GPA") with WVI; (2) tortious interference with

---

[4] When the Complaint was filed, AVR-Johnstown and Dr. Choudry were also named as Defendants. (*See* ECF No. 1.) The claims against them were later dismissed. (*See* ECF Nos. 78, 100.)

3

contractual relations; (3) conversion; (4) unjust enrichment; and (5) breach of fiduciary duty. (ECF No. 10 ¶¶ 114-36.)

On October 17, 2016, Plaintiffs filed a Motion for Summary Judgment (ECF No. 40) and Defendants filed a Motion for Judgment on the Pleadings and Motion for Summary Judgment on Plaintiff's Complaint (ECF No. 44). After extensive briefing, the Court issued a Memorandum Opinion and Order on these Motions. (ECF No. 78.) After deciding the parties' Motions, the following claims remained: (1) JHVC's breach-of-contract claim based on AVR Management's mismanagement of AVR-Johnstown in violation of AVR-Johnstown's operating agreement (the "Operating Agreement"), with an accounting as a potential remedy for this breach; (2) JHVC's breach-of-contract claim against WVI; (3) AVR-Johnstown, AVR Management, and WVI's counterclaim against JHVC for breach of contract; and (4) AVR-Johnstown, AVR Management, and WVI's counterclaim for unjust enrichment against JHVC and Dr. Hadeed. (*See generally id.*)

After the Court decided the parties' Motions for Summary Judgment, AVR-Johnstown filed for bankruptcy. (*See* ECF No. 93 at 2-3.)

Then, on January 2, 2018, the Court issued a Memorandum Order *sua sponte* noting an apparent lack of complete diversity between the parties and ordering the parties to brief whether this Court possessed subject-matter jurisdiction and whether AVR-Johnstown could be dismissed as a dispensable party. (ECF No. 88 at 1-2.) The Court noted that the citizenship of an LLC is determined by the citizenship of its members and, thus, AVR-Johnstown's citizenship is determined by the citizenship of its members. (*Id.* at 1.) The Court indicated that JHVC is a member of AVR-Johnstown. (*Id.* at 2.) Because JHVC is a citizen of Pennsylvania, AVR-

Johnstown would also be a citizen of Pennsylvania. (*Id.*) Therefore, based on the information before the Court, there would not be complete diversity between Plaintiffs and Defendants. (*Id.*)

The parties concluded that there was not complete diversity between Plaintiffs and Defendants and that AVR-Johnstown was an indispensable party. (ECF No. 93 at 2.) Therefore, the Court issued a Memorandum Order on January 17, 2018, concluding that the Court could not cure the lack of diversity by dismissing AVR-Johnstown. (*Id.*) However, the Court agreed with Defendants that 28 U.S.C. § 1334 provided this Court with a basis for subject-matter jurisdiction. (*Id.* at 2-3.) The Court thus referred the case to the Bankruptcy Court. (*Id.* at 3.)

On September 24, 2018, the Bankruptcy Court dismissed AVR-Johnstown's bankruptcy case, finding that the case was commenced without the requisite corporate authority. *See In re Advanced Vascular Res. of Johnstown, LLC*, 590 B.R. 323, 328 (Bankr. W.D. Pa. Sept. 24, 2018). This Court thus withdrew its referral of the case to the Bankruptcy Court. (ECF No. 94.) On the same day, the Court dismissed this case for lack of subject-matter jurisdiction, as there was no longer any basis for jurisdiction under 28 U.S.C. § 1334 and complete diversity was still lacking between the parties. (ECF No. 95.)

Four days after the dismissal, Defendants filed a Motion for Reconsideration and corresponding Brief in Support (ECF Nos. 96, 97). In their Brief, Defendants argued that AVR-Johnstown was a dispensable party that should be dismissed in order to restore complete diversity. (ECF No. 97 at 3.) Plaintiffs disagreed and claimed that AVR-Johnstown was an indispensable party. (ECF No. 99.)

On November 13, 2018, this Court dismissed AVR-Johnstown from this lawsuit to restore subject-matter jurisdiction. (*See* ECF No. 100.)

Plaintiffs filed the present Motion on February 8, 2019. The Court held a *Daubert* hearing on June 10, 2019. Trial is scheduled to begin on September 3, 2019.

## III. Legal Standards

### A. Motions *in Limine*

"[A] motion *in limine* is a pretrial motion which requests that the Court prohibit opposing counsel from referring to or offering evidence on matters prejudicial to the moving party." *Smith v. Allstate Ins. Co.*, 912 F. Supp. 2d 242, 246 (W.D. Pa. 2012) (Gibson, J.); *Emcore Corp. v. Optium Corp.*, No. 7-326, 2009 WL 3381809, at *1 (W.D. Pa. Oct. 16, 2009). Motions *in limine* narrow the evidentiary issues for trial and eliminate unnecessary trial interruptions. *See Smith*, 912 F. Supp. 2d at 246 (quoting *Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1069 (3d Cir. 1990)).

A court may exercise its discretion and decide to rule on motions *in limine* on evidentiary issues in appropriate cases. *See In re Japanese Elec. Prods. Antitrust Litig.*, 723 F.2d 238, 260 (3d Cir. 1983). A "trial court should exclude evidence on a motion *in limine* only when the evidence is clearly inadmissible on all potential grounds." *Crestwood Membranes, Inc. v. Constant Servs., Inc.*, No. 3:15-cv-537, 2018 WL 490547, at *1 (M.D. Pa. Jan. 19, 2018) (quoting *United States v. Tartaglione*, 228 F. Supp. 3d 402, 406 (E.D. Pa. 2017)).

### B. Rule 702

When a party seeks to admit expert testimony, the Court must make a preliminary determination that the requirements of Federal Rule of Evidence 702 have been met. *Magistrini v. One Hour Martinizing Dry Cleaning*, 68 F. App'x 356, 356 (3d Cir. 2003) (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592 (1993)).

Under Rule 702:

6

> [A] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702(a); *see also United States v. Walker*, 657 F.3d 160, 175 (3d Cir. 2011).

The Third Circuit has interpreted Rule 702 as having three major requirements. *Yoder v. Sportsman's Guide, Inc.*, No 2:14-cv-937, 2015 WL 7009547, at *6 (W.D. Pa. Nov. 12, 2015) (citing *Pineda v. Ford Motor Co.*, 520 F.3d 237, 244 (3d Cir. 2008); *Kannankeril v. Terminex Int'l, Inc.*, 128 F.3d 802, 806 (3d Cir. 1997)). First, the proffered witness must be qualified as an expert. *Pineda*, 520 F.3d at 244. Second, the expert must testify about matters requiring scientific, technical, or specialized knowledge and base his or her opinions on reliable processes and techniques. *Id.; In re Paoli R.R. Yard Litig.*, 35 F.3d 717, 742 (3d Cir. 1994). Third, the expert's testimony must assist the trier of fact. *Pineda*, 520 F.3d at 244.

First, the qualification prong "requires that the witness possess specialized expertise." *Id.* (citing *Schneider ex rel. Estate of Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003)); *Daubert*, 509 U.S. at 592-93. The Third Circuit has interpreted this requirement liberally. *Schneider*, 320 F.3d at 404 (citing *Paoli*, 35 F.3d at 741).

"The second requirement is that of reliability." *Meadows v. Anchor Longwall & Rebuild, Inc.*, 306 F. App'x 781, 788 (3d Cir. 2009) (citing *Daubert*, 509 U.S. at 589). The Third Circuit has identified several factors for courts to consider in making the reliability determination:

> (1) whether a method consists of a testable hypothesis; (2) whether the method has been subject to peer review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's

7

operation; (5) whether the method is generally acceptable; (6) the relationship of the technique to methods which have been established to be reliable; (7) the qualifications of the expert witness testifying based on the methodology; and (8) the non-judicial uses to which the method has been put.

*Id.* (citing *Paoli*, 35 F.3d at 742 n.8).

The reliability inquiry is flexible, and the relevance of each factor depends on the nature of the issues and the subject of the testimony. *See Kuhmo Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999). The reliability inquiry is designed "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* at 152. "The analysis of the conclusions themselves is for the trier of fact when the expert is subject to cross-examination." *In re TMI Litig.*, 193 F.3d 613, 665 (3d Cir. 1999).

The third element—that the expert's testimony would assist the trier of fact—"goes primarily to relevance."[5] *Meadows*, 306 F. App'x at 790 (quoting *Lauria v. Amtrak*, 145 F.3d 593, 599 (3d Cir. 1998)). This third element is referred to as the "fit" requirement. *See Daubert*, 509 U.S. at 591. "The standard for the factor is not high; it is met where there is a clear 'fit' connecting the issue in the case with the expert's opinion that will aid the jury in determining an issue in the case." *Meadows*, 306 F. App'x at 790 (citing *Lauria*, 145 F.3d at 600); *see also In re TMI Litig.*, 193 F.3d at 670 ("[A]dmissibility depends, in part, on a connection between the expert opinion offered and the particular disputed factual issues in the case."). "[E]xpert testimony based on assumptions lacking factual foundation in the record is properly excluded under the fit

---

[5] "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401.

8

requirement." *Meadows*, 306 F. App'x at 790 (citing *Stecyk v. Bell Helicopter Textron, Inc.*, 295 F.3d 408, 414 (3d Cir. 2002)).

## IV. Discussion

In the present Motion, Plaintiffs seek to preclude the report and testimony of Mr. Teitz. Defendants retained Mr. Teitz to provide an expert opinion on the calculation of net-profit amounts owed to Defendants. (ECF No. 125 at 2.) Plaintiffs make three main arguments in support of this Motion based on (1) relevance and fit; (2) reliability; and (3) unfair prejudice. The Court finds that Mr. Teitz's report must be excluded because it does not fit with the issues of this case. Therefore, the Court will not address Plaintiffs' alternative arguments.

### A. The Parties' Arguments

Plaintiffs challenge the "fit" prong of Rule 702 by asserting that the expert report is irrelevant because Mr. Teitz essentially calculates the damages of non-party AVR, LLC. (ECF No. 119 ¶¶ 40-44, 53; ECF No. 153 at 6.)

In the report, Mr. Teitz concludes that Plaintiffs owe "AVR/AVRJ" $6.9 million in net profits under the Operating Agreement. (ECF No. 119 ¶¶ 37-38; ECF No. 125 at 6.) Mr. Teitz states that he uses the abbreviation "AVR" to refer to AVR Management and "AVRJ" to refer to AVR-Johnstown. (ECF No. 119 ¶ 39.) The Operating Agreement provides that distributions shall be made to members of the Operating Agreement. (ECF No. 125 at 49.) The members include AVR, LLC and JHVC. (*Id.* at 66.) As Plaintiffs point out, AVR, LLC is not a party to the present lawsuit. (ECF No. 119 ¶ 53.) Thus, according to Plaintiffs, Mr. Teitz's conclusion that they owe $6.9 million in damages pursuant to the Operating Agreement's distribution scheme is really an opinion regarding the damages owed to non-party AVR, LLC. Mr. Teitz's opinion does not

9

address the damages owed to Defendants AVR Management and WVI, who are not parties to the Operating Agreement and are not entitled to distributions under the Operating Agreement. (*Id.*; ECF No. 120 at 3; ECF No. 153 at 6-7.)

Plaintiffs also identify an error with the facts underlying Mr. Teitz's expert report.[6] (ECF No. 119 ¶¶ 77-94; ECF No. 153 at 10.) Mr. Teitz calculated damages owed to Defendants based in part on JHVC's 2012 and 2013 revenue. (ECF No. 125 at 7.) However, the Operating Agreement was not executed until November 2013 and AVR-Johnstown did not begin its operations until April 2014. (ECF No. 153 at 10.) Plaintiffs argue that it was an error to include JHVC's 2012 and 2013 revenue in the calculation of net profit that Plaintiffs allegedly owe Defendants because AVR-Johnstown was not in operation at that point. (*Id.* at 10-11.) Mr. Teitz agreed on cross-examination that if there was no agreement in place in 2012 and 2013, then the revenue from those years should not have been included in his damages calculation. (ECF No. 151 at 43:23-44:17.)

In response, Defendants contend that Mr. Teitz's opinion is relevant to the extent of Plaintiffs' unjust enrichment—one of Defendants' remaining claims in this matter. (ECF No. 127 ¶¶ 37-41, 45; ECF No. 152 at 9-10.) Defendants argue that Plaintiffs were unjustly enriched "by the amount that they obtained over and above that than [*sic*] which they were contractually entitled," which Mr. Teitz addresses. (ECF No. 127 ¶ 47.)

Defendants further assert that report is relevant to the calculation of damages for Plaintiffs' alleged breaches of the Sublease and GPA. (ECF No. 152 at 9.)

---

[6] Although Plaintiffs address this factual issue in the "reliability" portion of their Motion, the Court finds that issues with unsupported assumptions are best addressed under the fit element. *See Meadows*, 306 F. App'x at 790 ("[E]xpert testimony based on assumptions lacking factual foundation in the record is properly excluded [under the fit element of Rule 702].").

10

Finally, Defendants agree that the report contains factual errors. However, Defendants believe that they should be able to amend the report so as to correct these errors.[7] (ECF No. 152 at 7-8.)

## B. Analysis

The Court agrees with Plaintiffs that the expert report must be excluded on fit grounds because it essentially calculates the losses owed to non-parties. Further, the Court finds that the report is likely to confuse or mislead the jury and must be excluded under Rule 403 because the report distorts the parties involved in this lawsuit and the claims they bring.

The expert report provides a "calculation of Net Profit amounts and other related amounts still owed to AVR Management, LLC (AVR) and Advanced Vascular Resources of Johnstown, LLC (AVRJ) et al" from Plaintiffs. (ECF No. 125 at 2.) The calculation of the net profits owed to Defendants is based on JHVC's profits from 2012 through 2018, split according to the terms of the Operating Agreement. (*Id.* at 2-3.) The report asserts that, under the Operating Agreement, the first $1.2 million of AVR-Johnstown's net profits were supposed to be split 97%/3% between "AVR" and JHVC and after that, JHVC would receive 55% of the net profits and "AVR/AVRJ" would receive 45% of the net profits. (*Id.* at 3.) According to the report, "the amount of **Net Profits** from this joint-venture that were actually paid AVRJ, AVR and Dr. Mubashar Choudry **remain at $0.**" (*Id.* at 5.) Mr. Teitz calculates the net profits owed to "AVRJ/AVR" under the

---

[7] Defendants attached a revised version of the expert report when they submitted their post-hearing briefing. (*See* ECF No. 152 at 8; ECF No. 152-1.) Defendants claim that the revised report is "substantially similar" to the original report and simply reduces the damages calculation based on some of the issues raised at the *Daubert* hearing. (ECF No. 152 at 8-9.) Defendants argue that permitting the report's revision will not prejudice Plaintiffs because the manner of calculation has not changed and the revisions result in the claimed damages being reduced. (*Id.* at 9.)

Operating Agreement as over $6.9 million. (*Id.* at 6-7.)

However, the report fails to acknowledge that the Operating Agreement provided for profit-sharing between *AVR, LLC and JHVC*, not between AVR Management and JHVC. (*Id.* at 49, 66.) And there is no claim in the present lawsuit by AVR, LLC against JHVC for distributions under the Operating Agreement.[8] Instead, Defendants' only remaining claims are for unjust enrichment and breach of the Sublease and GPA. Defendants argue that Mr. Teitz's report is relevant to these claims.

At the *Daubert* hearing, Defendants explained that Mr. Teitz determined the profitability of JHVC in order to show "what should've flowed through to the other members from the operation or . . . what the Plaintiffs received as far as unjust enrichment." (ECF No. 151 at 5:1-4.) But if Plaintiffs were unjustly enriched by $6.9 million in net profits because they did not properly distribute those profits under the Operating Agreement, they were enriched *at the expense of AVR, LLC*, to whom the profits were to be paid under the Operating Agreement. Plaintiffs were not unjustly enriched at the expense of Defendants AVR Management and WVI, who were not entitled to distributions under the Operating Agreement and therefore did not confer any benefit on Plaintiffs by not being paid distributions. *See iRecycleNow.com v. Starr Indem. & Liab. Co.*, 674 F. App'x 161, 162 (3d Cir. 2017) (citing *AmeriPro Search, Inc. v. Fleming Steel Co.*, 787 A.2d 988, 991 (Pa. Super. Ct. 2001)) (explaining that the first element of a claim for unjust enrichment under Pennsylvania law is that the party asserting the claim conferred a benefit on the party defending

---

[8] In fact, there is no claim in the present lawsuit by AVR, LLC at all—AVR, LLC has never been a party to this lawsuit.

12

against the claim). Mr. Teitz's report would simply not assist the jury in calculating unjust-enrichment damages for AVR Management and WVI.[9]

The report may have some relevance to the calculation of damages for Defendants' breach-of-contract counterclaim to the extent the claim is based on the alleged breach of the GPA's non-compete provision.[10] The breach-of-contract claim under the GPA is governed by Maryland law. (ECF No. 78 at 43 & n.31.) Under Maryland law, "[e]xpectancy damages for breach of a covenant not to compete generally are the profits that would have been realized had no breach occurred." *Fowler v. Printers II, Inc.*, 598 A.2d 794, 806 (Md. Ct. Spec. App. 1991). In this case, the report does calculate JHVC's profits during the years that Defendants allege JHVC was in breach of the non-compete provision, which would likely be relevant to a calculation of WVI's damages. However, in spite of the general relevance of JHVC's net profits to the breach-of-contract counterclaim, the report still does not "fit" the breach-of-contract counterclaim because the report does not mention WVI or the non-competition agreement.[11] Instead, the report purportedly

---

[9] The cover of the report indicates that the report was prepared for the bankruptcy cases related to this matter, as opposed to being prepared for the present case. And Mr. Teitz's work generally relates to companies that are in distress or in bankruptcy proceedings. (ECF No. 151 at 10:20-11:8, 14:16-22.) While these facts do not make the report irrelevant to this proceeding, they do explain the lack of fit between the report and this case.

[10] Defendants explain that Mr. Teitz's calculations relate to the breach of the non-compete provision because:

> Dr. Hadeed and Johnstown Heart and Vascular had no ability to operate this type of vascular center within a 30-mile location of where AVR of Johnstown was to operate. So therefore, all of the proceeds that he received out of the operation of that business model our argument is that he unjustly enriched himself to the detriment of Washington Vascular Institute that held the non-compete for the benefit of the entity.

(ECF No. 151 at 5:17-25.)

[11] Further, while Defendants appeared to argue at the *Daubert* hearing that the report is relevant because "AVR" is a beneficiary of the non-competition agreement (*see* ECF No. 151 at 24:16-8), the abbreviation "AVR" in the GPA refers to non-party AVR-Johnstown, not AVR Management. (*See* ECF No. 119-4 at 1, 16.)

13

calculates net profits owed to "AVR"[12] and non-party AVR-Johnstown under the Operating Agreement. (ECF No. 125 at 1.) There is thus no clear fit connecting WVI's breach-of-contract counterclaim with Mr. Teitz's report.

In fact, rather than assisting the jury in calculating the damages in this case, the Court finds that there is a substantial danger that the report would confuse and mislead the jury. Therefore, the Court will also exclude the report under Rule 403. *See Daubert*, 509 U.S. at 595 (explaining that "a judge assessing a proffer of expert scientific testimony under Rule 702 should also be mindful of other applicable rules," including Rule 403); *United States v. Mills*, Crim. No. 17-122, 2019 WL 2464782, at *4 (W.D. Pa. June 13, 2019) (Fischer, J.) (excluding expert evidence under Rule 403 due to the evidence's danger of confusing the issues, misleading the jury, and wasting time); *Dedicated Logistics, Inc. v. Pa. Power Co.*, Civil Action No. 11-1153, 2015 WL 3385885, at *1 (W.D. Pa. May 21, 2015) (Fischer, J.) ("[R]elevant evidence, expert or otherwise, may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, undue delay, waste of time, or needless presentation of cumulative evidence." (citing Fed. R. Evid. 403)). Rule 403 states that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. The Court finds that the report and Mr. Teitz's corresponding testimony would confuse the issues involved in this case and mislead the jury because the report distorts the parties involved in this lawsuit and the claims

---

[12] The report does not fit with the breach-of-contract counterclaim regardless of whether "AVR" in the report refers to Defendant AVR Management or non-party AVR, LLC because neither AVR Management nor AVR, LLC is a party to the GPA.

they bring. Mr. Teitz's report purports to calculate the damages in this case but in reality calculates damages owed to non-party AVR, LLC under a breach-of-contract-type claim that was never asserted. Furthermore, to the extent the report relates to the calculation of damages on WVI's breach-of-contract claim, the report is misleading in that it does not mention WVI, the GPA, or the non-competition agreement, and instead focuses on entities that were not parties to this agreement.

Finally, "expert testimony based on assumptions lacking factual foundation in the record is properly excluded under the fit requirement." *Meadows*, 306 F. App'x at 790 (citing *Stecyk v. Bell Helicopter Textron, Inc.*, 295 F.3d 408, 414 (3d Cir. 2002)). Here, Mr. Teitz's calculation of damages owed to Defendants is based in part on JHVC's 2012 and 2013 revenue. (ECF No. 125 at 7.) But the Operating Agreement was not executed until November 2013 and AVR-Johnstown did not begin its operations until April 2014. (ECF No. 153 at 10.) Plaintiffs argue that it was an error to include JHVC's 2012 and 2013 revenue in the calculation of AVR-Johnstown's net profit that Plaintiffs allegedly owe Defendants because AVR-Johnstown was not in operation at that point. (*Id.* at 10-11.) Mr. Teitz agreed on cross-examination that if there was no agreement in place in 2012 and 2013, then the revenue from those years should not have been included in his damages calculation. (ECF No. 151 at 43:23-44:17.) And in Defendants' briefing, Defendants agree that the 2012 and 2013 revenues should not have been included in the damages calculation. (ECF No. 152 at 7.) Because there is no dispute that Mr. Teitz's report and calculations are based

on an assumption with no factual foundation—that the Operating Agreement's profit-sharing arrangement applied in 2012 and 2013—the report must be excluded under the fit element.[13] [14]

---

[13] Defendants argue that this issue can be resolved by amending the expert report. (ECF No. 152 at 8.) Defendants cite to no legal authority to support the proposition that they should be permitted to amend their expert report to address the arguments raised by Plaintiffs in their Motion and at the *Daubert* hearing. And Defendants did not file a motion for leave to amend their expert report—they simply attached an amended expert report to their briefing. *See* Practices and Procedures of Judge Kim R. Gibson at Part I.A, http://www.pawd.uscourts.gov/sites/pawd/files/JG-Practices-Procedures.pdf (revised Aug. 23, 2017) ("Communication with the Court should be in the form of motions . . . , accompanied by a proposed order specifying the relief requested."). The amended report submitted by Defendants (*see* ECF No. 152-1) excludes JHVC's 2012 and 2013 revenue from the damages calculation, but does not resolve the other "fit" issues discussed above and therefore must still be excluded. Moreover, the Court finds that, after considering the factors articulated by the Third Circuit, *see Nicholas v. Pa. State. Univ.*, 227 F.3d 133, 148 (3d Cir. 2000), Defendants' failure to comply with Federal Rule of Civil Procedure 26(e) necessitates the exclusion of the amended report pursuant to Rule 37(c)(1), particularly considering that Defendants have known the bases upon which Plaintiffs object to the report since at least February 2019, when Plaintiffs filed the present Motion *in Limine*, but Defendants did not file the amended report until July 3, 2019, only two months before the two-week trial is to begin. The Court notes that allowing Defendants to amend the report would prejudice Plaintiffs in that they would need to expend time and resources evaluating whether the changes Defendants made to the expert report raise new issues and may need to challenge the new report, but would have limited time to do so based on the impending trial. *See Buddy's Plant Plus Corp. v. Centimark Corp.*, Civil Action No. 10-670, 2012 WL 5254910, at *3 (W.D. Pa. Octo. 24, 2012) ("In cases where the timeliness of disclosing expert identities and reports is at issue, exclusion is proper only where the trial date is fast approaching."). Furthermore, the Court finds it significant that Defendants' original expert report was extremely untimely. Pursuant to the Court's final scheduling order in this matter, the parties were supposed to file their expert reports by July 4, 2016. (*See* ECF No. 37.) Expert discovery was to be completed by September 5, 2016, and motions for summary judgment were due on October 17, 2016. (*See id.*) Defendants declined to file an expert report before these deadlines. The parties filed their summary-judgment motions, the Court issued its decision (*see* ECF No. 78), and Defendants apparently would have proceeded to trial without an expert. However, the matter was referred to the Bankruptcy Court, and Defendants then filed Mr. Teitz's expert report pursuant to the Bankruptcy Court's deadlines. (ECF No. 127 ¶ 99.) When the case ultimately came back to this Court, as described above, Defendants simply utilized the report prepared for the bankruptcy case in this case, in spite of the fact that this case's expert deadlines had long since passed. The Court will not allow Defendants to file an amended expert report one month before trial when Defendants' initial expert report was so untimely.

[14] The Court believes that the report is based on other assumptions with no factual foundation in the record. For example, the report's treatment of Dr. Hadeed's salary is based on Mr. Teitz's "random" choice to include 50% of Dr. Hadeed's salary in his calculation of adjusted net income. (ECF No. 151 at 39:9-40:7.) However, Mr. Teitz admitted that Dr. Hadeed's salary was $450,000 and that this salary would not have been subject to distribution as part of the adjusted net income. (*Id.* at 39:3-8.) Therefore, only compensation Dr. Hadeed received in excess of $450,000 should have been added into the adjusted net income and subjected to distributions. (*Id.* at 43:14-22.) Mr. Teitz's amended report purportedly corrects this error. (*See* ECF No. 152-1 at 7.) The Court will not address every assumption in Mr. Teitz's report that lacks factual foundation, based on the discussion above.

In summary, the Court finds that Mr. Teitz's expert report does not meet Rule 702's fit requirement. The report does not clearly connect to the parties and claims asserted in this case and, if admitted, would likely confuse the issues and mislead the jury. Therefore, under Rules 403 and 702, the Court will exclude Mr. Teitz's expert report and testimony.

## V.     Conclusion

In conclusion, Mr. Teitz's report does not meet Rule 702's "fit" requirement and is likely to confuse the issues of the case and mislead the jury. Thus, the Court will **GRANT** Plaintiffs' Motion to Preclude the Report and Testimony of John W. (Jack) Teitz pursuant to Rules 702 and 403 of the Federal Rules of Evidence.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| JOHNSTOWN HEART AND VASCULAR CENTER, INC., | ) ) ) | No. 3:15-cv-22 |
|---|---|---|
| | ) | JUDGE KIM R. GIBSON |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| AVR MANAGEMENT, LLC, and WASHINGTON VASCULAR INSTITUTE, LLC, | ) ) ) ) | |
| Defendants and Counter-Plaintiffs, | ) ) ) | |
| v. | ) ) | |
| SAMIR HADEED, MD, and JOHNSTOWN HEART AND VASCULAR CENTER, INC., | ) ) ) ) | |
| Counter-Defendants. | ) ) | |

## ORDER

NOW, this 6th day of August, 2019, upon consideration of Plaintiff/Counter-Defendant Johnstown Heart and Vascular Center, Inc. and Counter-Defendant Samir Hadeed, MD's Motion to Preclude the Report and Testimony of John W. (Jack) Teitz (ECF No. 119) and Defendants/Counter-Plaintiffs AVR Management, LLC and Washington Vascular Institute, LLC's response thereto, and for the reasons set forth in the Memorandum Opinion accompanying this

Order, it is **HEREBY ORDERED** that Plaintiffs' Motion is **GRANTED**.

BY THE COURT:

_____
KIM R. GIBSON
UNITED STATES DISTRICT JUDGE